UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ANTHONY CUSAMANO,

                              Plaintiff,

                                                              9:06-CV-0623
v.                                                            (LEK/GHL)

MR. SOBEK, Correctional Officer,
MR. McADAM, Correctional Officer,
MR. CUSHMAN, Correctional Officer,
MR. SNYDER, Correctional Sergeant,
MR. EMRICH, Correctional Officer,
MR. SHERIDAN, Correctional Officer,
MR. CORNELIUS, Correctional Officer,
JOHN DOE # 1, Correctional Officer,
JOHN DOE # 2, Correctional Officer,
JOHN DOE # 3, Correctional Officer,
MR. DON, Correctional Lieutenant,
J. WILLIAMS, Deputy Superintendent,
DR. ROBERT KASULKE, Medical Director,

                              Defendants.
_____

APPEARANCES:                                          OF COUNSEL:

ANTHONY CUSAMANO
   Plaintiff, *Pro Se*
520 Gates Avenue, Apt. #B6
Brooklyn, NY 11216

HON. ANDREW M. CUOMO                                   JAMES SEAMAN, ESQ.
Attorney General for the State of New York            Assistant Attorney General
   Counsel for Defendants
The Capitol
New York, NY 12224

GEORGE H. LOWE, United States Magistrate Judge

## REPORT-RECOMMENDATION

This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. §§ 1983 and 1985, has been referred to me for Report and Recommendation by the Honorable Lawrence E. Kahn, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).

Generally, Anthony Cusamano ("Plaintiff"), alleges that, between about January 6, 2005, and about May 13, 2005, at Gouverneur Correctional Facility ("Gouverneur C.F."), thirteen employees of the New York State Department of Correctional Services ("DOCS") violated his rights under the First, Eighth and Fourteenth Amendments by, *inter alia*, assaulting him, filing false misbehavior reports against him, denying him due process of law at his disciplinary hearings, subjecting him to cruel-and-unusual prison conditions while in disciplinary confinement, harassing him, being deliberately indifferent to his serious medical needs, and denying him access to the courts.  (*See generally* Dkt. No. 1 [Plf.'s Compl.].)

Currently pending before the Court is Defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56.  (Dkt. No. 39.)  Also pending are three cross-motions filed by Plaintiff: (1) a cross-motion for summary judgment; (2) a cross-motion for an Order to compel discovery (and, implicitly, an Order staying the Court's decision regarding Defendants' motion for summary judgment pending Plaintiff's receipt of that discovery); and (3) a cross-motion for leave to amend his Complaint.  (Dkt. No. 42.)  For the reasons that follow, I recommend that Defendants' motion be granted in part and denied in part; and I recommend that Plaintiff's three cross-motions be denied.

1

## TABLE OF CONTENTS

I.     BACKGROUND.................................................................................................3
       A.     Summary of Plaintiff's Complaint............................................................3
       B.     Summary of Defendants' Motion...........................................................12
       C.     Summary of Plaintiff's Cross-Motions..................................................14

II.    APPLICABLE LEGAL STANDARDS...........................................................14
       A.     Legal Standard Governing Motions for Summary Judgment............14
       B.     Legal Standard Governing Motion to Dismiss.....................................23

III.   ANALYSIS OF DEFENDANTS' MOTION.....................................................32
       A.     Plaintiff's Excessive-Force and Failure-to-Protect Claims................32
       B.     Plaintiff's Conspiracy Claim...................................................................41
       C.     Plaintiff's Claims Against Defendant Cushman...................................45
       D.     Plaintiff's False-Misbehavior-Report Claims......................................46
       E.     Plaintiff's Retaliation Claim Against Defendant Emrich...................49
       F.     Plaintiff's Retaliation Claim Against Defendant Sobek.....................56
       G.     Plaintiff's Procedural Due Process Claims...........................................58
       H.     Plaintiff's Inadequate-Prison-Conditions Claim.................................74
       I.     Plaintiff's Harassment Claim.................................................................79
       J.     Plaintiff's Inadequate-Medical-Care Claim.........................................85
       K.     Plaintiff's Access-to-Courts Claim Against Defendant Cornelius......91
       L.     Plaintiff's Remaining Access-to-Courts Claims...................................95
       M.    Doctrine of Qualified Immunity.............................................................99
       N.     Denial of Any Request to Supplement Record During Appeal..........100

IV.   ANALYSIS OF PLAINTIFF'S CROSS-MOTIONS......................................102
       A.     Plaintiff's Request for an Order Granting Him Summary Judgment..............102
       B.     Plaintiff's Request for an Order to Compel Discovery.......................103
       C.     Plaintiff's Request for Leave to Amend His Complaint......................106
       D.     Sanction for Making Misrepresentations to Court..............................111

I.      **BACKGROUND**

A.      **Summary of Plaintiff's Complaint**

Before summarizing the claims asserted in Plaintiff's Complaint, a few words are

necessary about my construction of those claims.  In construing Plaintiff's claims, I afford his

Complaint the liberal construction that all pleadings must be afforded under Fed. R. Civ. P. 8.

*See* Fed. R. Civ. P. 8(f) ("All pleadings shall be so construed as to do substantial justice.").  It is

true that generally the pleadings of *pro se* litigants are construed with even more liberality than is

required under Fed. R. Civ. P. 8.[1]  The rationale for extending this special liberality to the

pleadings of *pro se* litigants is that, generally, *pro se* litigants are unfamiliar with legal

terminology and the litigation process.  For this reason, "[t]here are circumstances where an

overly litigious inmate, who is quite familiar with the legal system and with pleading

requirements, may not be afforded [the] special [liberality or] solicitude" that is normally

afforded *pro se* litigants.[2]  For example, on several occasions, the Second Circuit has, quite

appropriately in my opinion, diminished the special liberality normally afforded to a *pro se*

---

[1]      *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("[A] *pro se* complaint . . . must be
held to less stringent standards than formal pleadings drafted by lawyers . . . .") [internal
quotation marks and citation omitted]; *McEachin v. McGinnis*, 357 F.3d 197, 200 (2d Cir. 2004)
("[W]hen the plaintiff proceeds *pro se*, . . . a court is obliged to construe his pleadings liberally,
particularly when they allege civil rights violations.") [citation omitted]; *Cruz v. Gomez*, 202 F.3d
593, 597 (2d Cir. 2000) ("[C]ourts must construe *pro se* pleadings broadly, and interpret them to
raise the strongest arguments that they suggest.") [internal quotation marks and citation omitted];
*Boddie v. Schnieder*, 105 F.3d 857, 860 (2d Cir.1997) ("In evaluating whether a plaintiff has met
the[] requirements [under Rule 12(b)(6)], we hold complaints prepared *pro se* 'to less stringent
standards than formal pleadings drafted by lawyers.'") [quoting *Haines v. Kerner*, 404 U.S. 519,
520 (1972)]).

[2]      *Koehl v. Greene*, 06-CV-0478, 2007 WL 2846905, at *3 & n.17 (N.D.N.Y. Sept.
26, 2007) (Kahn, J., adopting Report-Recommendation) [citations omitted].

3

litigant's pleadings, and/or indicated the acceptability of such a diminishment, due to the *pro se* litigant's extraordinary litigation experience.[3]  In addition to being unnecessary, I believe that an extension of special liberality to the pleadings of extraordinarily experienced *pro se* litigants would tilt the scales of justice unfairly in favor of the *pro se* litigant and against his opponents.[4]

Here, a review of on-line databases, including the Federal Judiciary's Public Access to Court Electronic Records ("PACER") System, reveals that, before he signed his Complaint in this action on May 1, 2006, Plaintiff–who has used at least three aliases[5]–had filed at least four

---

[3]        *See*, *e.g.*, *Johnson v. Eggersdorf*, 8 F. App'x 140, 143 (2d Cir. 2001) (unpublished opinion), *aff'g*, 97-CV-0938, Decision and Order (N.D.N.Y. filed May 28, 1999) (Kahn, J.), *adopting*, Report-Recommendation, at 1, n.1 (N.D.N.Y. filed Apr. 28, 1999) (Smith, M.J.); *Johnson v. C. Gummerson*, 201 F.3d 431, at *2 (2d Cir. 1999) (unpublished opinion), *aff'g*, 97-CV-1727, Decision and Order (N.D.N.Y. filed June 11, 1999) (McAvoy, J.), *adopting*, Report-Recommendation (N.D.N.Y. filed April 28, 1999) (Smith, M.J.); *Davidson v. Flynn*, 32 F.3d 27, 31 (2d Cir. 1994); *see also Raitport v. Chem. Bank*, 74 F.R.D. 128, 133 (S.D.N.Y. 1977) [citing *Ackert v. Bryan*, No. 27240 (2d Cir. June 21, 1963) (Kaufman, J., concurring).

[4]        *Standley v. Dennison*, 05-CV-1033, 2007 WL 2406909, at *7, n.34 (N.D.N.Y. Aug. 21, 2007) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Edwards*, 2007 WL 748442, at *2; *Sledge*, 2007 WL 951447, at *3; *see also Hussein*, 1991 WL 221033, at *4 (concluding that experienced *pro se* litigant should no longer be afforded special leniency because continuing to afford him such leniency would be unfair to "numerous attorneys," whose time and energy had already been consumed by plaintiff); Jessica Case, "Pro se Litigants at the Summary Judgment Stage: Is Ignorance of the Law an Excuse?" 90 *Ky. L.J.* 701, 735-740 (Spring 2001) (discussing how extending special leniency to *pro se* litigants in some circumstances "distorts the adversarial system and the role of trial judges") [citing cases]; Julie M. Bradlow, "Procedural Due Process Rights of *Pro se* Civil Litigants," 55 *U. Chi. L. Rev*. 659, 672 (Spring 1988) (discussing how "extending too much procedural leniency to a *pro se* litigant risks undermining the impartial role of the judge in the adversary system") [citations omitted].

[5]        In filings made after the filing of his Complaint, Plaintiff has stated that his name of record in this action, "Anthony Cusamano," is not his "true name," which is "Michael Bonano."  (*See*, *e.g.*, Dkt. Nos. 22, 31, 43, 44, 45.)  He has also acknowledged that he has also been known as "Michael Santangelo."  (Dkt. No. 34.)  These assertions are supported by the New York State Department of Correctional Services' records regarding Plaintiff, as well as a multitude of other court actions filed by Plaintiff, in which he has used (or acknowledged the use of) these names, as well as the name "Anthony Armatullo."  *See*, *e.g.*, N.Y.S. DOCS "Inmate

other federal or state court actions or appeals.[6]  Moreover, Plaintiff has adduced a sworn

assertion establishing that, when he drafted his Complaint, he was a certified paralegal, having

worked as a law clerk in the Gouverneur C.F. Law Library.[7]  No doubt due to his familiarity with

legal terminology and the litigation process, he himself describes the allegations of his Complaint

as having "been set forth in a consistent, coherent and credible manner."  (Dkt. No. 42, Part 3, at

2 [Plf.'s Opp. Memo. of Law].)  Indeed, he goes so far as to state that he "articulates [himself] as

coherently as [does his] adversary–if not more so."  (*Id.* at 12.)

     Under the circumstances, I hesitate somewhat to afford Plaintiff's Complaint the full

measure of special liberality normally afforded to the pleadings of inexperienced *pro se* litigants,

since doing so would appear to risk tilting the playing field in his favor and against Defendants.

(For example, reading certain claims into Plaintiff's Complaint at this late stage of the

---

Locator Service" http://www.docs.state.ny.us/ [last visited Aug. 28, 2008]; *Armatullo v. Vasquez*, 03-CV-8189 (S.D.N.Y.); *Armatullo v. Taylor*, 04-CV-5357 (S.D.N.Y.); *Armatullo v. Taylor*, 04-CV-0654 (N.D.N.Y.); *Cusamano v. Donelli*, 06-CV-6047 (S.D.N.Y.) (acknowledging, in Plaintiff's court submissions, that his "true name" is "Michael Bonano"); *Cusamano v. Carlsen*, 08-CV-0422 (N.D.N.Y.) (acknowledging, in Plaintiff's court submissions, that his "true name" is "Michael Bonano"); *Cusamano v. Carlsen*, 08-CV-0755 (N.D.N.Y.) (acknowledging, in Plaintiff's court submissions, that his "true name" is "Michael Bonano"); *Cusamano v. Alexander*, 08-CV-0781 (N.D.N.Y.) (acknowledging, in Plaintiff's court submissions, that his "true name" is "Michael Bonano"); *Cusamano v. Bullock*, 08-CV-2327 (E.D.N.Y.) (acknowledging, in Plaintiff's court submissions, that his "true name" is "Michael Bonano"); *Santangelo v. Bailey*, 08-CV-4556, (S.D.N.Y.).

[6]    *See Armatullo v. Vasquez*, 03-CV-8189, Order of Dismissal (S.D.N.Y. filed Oct. 16, 2003) (Mukasey, J.) (*sua sponte* dismissing prisoner civil rights action for failure to state claim pursuant to 28 U.S.C. § 1915[e][2]); *Cusamano v. Atlas*, 769 N.Y.S.2d 443 (N.Y.S. App. Div. 3d Dept. 2003) (dismissing Article 78 proceeding); *Armatullo v. Taylor*, 04-CV-5357, Petition (S.D.N.Y. filed July 9, 2004) (habeas corpus proceeding); *Armatullo v. Taylor*, 04-CV-0654, Petition (N.D.N.Y. filed June 8, 2004) (habeas corpus proceeding subsequently transferred to Southern District of New York, where it was filed as *Armatullo v. Taylor*, 04-CV-7821).

[7]    (Dkt. No. 1, ¶ 6, Attached Page 2 [Plf.'s Verified Compl.].)

5

proceeding, when discovery is complete, would risk disadvantaging Defendants, who have already moved for summary judgment with regard to only the claims expressly appearing in the "Causes of Action" Section of Plaintiff's Complaint.)[8]  However, I am mindful that Plaintiff may not be so experienced at drafting pleadings as he believes himself to be.  I am also mindful of the serious civil rights claims asserted in his Complaint (specifically, his assault claim).[9]  As a result, I construe Plaintiff's Complaint with special leniency.

Construed extra-leniently, Plaintiff's Complaint asserts the following seventeen claims:

## Conspiracy, Excessive Force, and Failure to Protect

(1) On **January 6, 2005**, Defendants **Sobek**, **Snyder**, **Cushman**, **McAdam**, **John Doe # 1**, and **John Doe # 2 conspired** to subject Plaintiff to excessive force in the Gouverneur C.F. Special Housing Unit ("S.H.U."), in violation of **42 U.S.C. § 1985**;[10]

(2) On **January 6, 2005**, Defendants **Cushman**, **McAdam**, **John Doe # 1**, and **John Doe # 2** repeatedly **used excessive force** against Plaintiff in the Gouverneur C.F. S.H.U., in violation of the **Eighth Amendment**;[11]

---

[8]      It must be remembered that, due to the special solicitude normally afforded to the pleadings of *pro se* civil rights litigants, when a district court is determining what legal claims a *pro se* civil litigant has raised, "the court's imagination should be limited only by [the plaintiff's] factual allegations, not by the legal claims set out in his pleadings." *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005) [citations omitted].

[9]      *See McEachin* 357 F.3d at 200 ("[W]hen the plaintiff proceeds *pro se*, . . . a court is obliged to construe his pleadings liberally, particularly when they allege civil rights violations.") [citation omitted].

[10]      (Dkt. No. 1, ¶ 7, "First Cause of Action" [Plf.'s Compl.]; Dkt. No. 1, ¶ 6 & Attached Pages 1-8 [Plf.'s Compl.].)

[11]      (Dkt. No. 1, ¶ 7, "Second Cause of Action" [Plf.'s Compl.]; Dkt. No. 1, ¶ 6, Attached Pages 3-8 [Plf.'s Compl.].)

(3) On **January 6, 2005**, Defendants **Sobek**, **Snyder**, **Cushman**, **McAdam**, **John Doe #**
**1**, and **John Doe # 2 failed to protect** him from the referenced use of excessive force, in
violation of the **Eighth Amendment**;[12]

### False Misbehavior Reports

(4) On or about **January 8, 2005**, in order to cover up the referenced conspiracy,
Defendant **Sobek** intentionally filed a **false misbehavior report** against Plaintiff, in violation of
the **Fourteenth Amendment**;[13]

(5) On or about **January 10, 2005**, in order to cover up the referenced use of excessive
force, Defendant **McAdam** intentionally filed a **false misbehavior report** against Plaintiff
(charging him with "violent conduct"), which caused Plaintiff to incur a disciplinary conviction
(on January 13, 2005), a sentence of four months' confinement to S.H.U., and an increased
security classification (resulting in his being confined to a maximum-security prison, where he
experienced fear for his safety and emotional distress), in violation of the **Fourteenth**
**Amendment**;[14]

### Retaliatory Misbehavior Reports

(6) On or about **January 8, 2005**, Defendant **Sobek** intentionally filed a false
misbehavior report against Plaintiff in **retaliation** for his having engaged in constitutionally
protected activity by helping inmates with their legal research and writing (as part of his job as a

---

[12]      (Dkt. No. 1, ¶ 7, "Third Cause of Action" & "Thirteenth Cause of Action" [Plf.'s
Compl.]; Dkt. No. 1, ¶ 6, Attached Pages 1-8 [Plf.'s Compl.].)

[13]      (Dkt. No. 1, ¶ 6, & Attached Pages 1-3, 8 [Plf.'s Compl.].)

[14]      (Dkt. No. 1, ¶ 7, "Fourth Cause of Action" & "Fourteenth Cause of Action" [Plf.'s
Compl.]; Dkt. No. 1, ¶ 6, Attached Pages 9-11 [Plf.'s Compl.].)

law clerk in the law library), in violation of the **First Amendment**;[15]

(7) On or about **January 21, 2005**, Defendant **Emrich** intentionally filed a false misbehavior report against Plaintiff (charging him with "destruction of state property") in **retaliation** for his having engaged in constitutionally protected activity by filing grievances against him and other S.H.U. officers (on January 9, 11 and 15, 2005), which caused Plaintiff to incur a second disciplinary conviction (on January 26, 2005), and a 50-day extension of his sentence of confinement to S.H.U., in violation of the **First Amendment**;[16]

### Procedural Due Process Violations

(8) On or about **January 11, 2005**, Defendant **Williams** wrongfully imposed a guilty verdict and disciplinary sentence on Plaintiff based on the patently flawed misbehavior report issued by Defendant Sobek, in violation of the **Fourteenth Amendment**, as well as **Article 1, Section 6 of the New York State Constitution**;[17]

(9) On **January 13, 2005**, Defendant **Williams** wrongfully imposed a guilty verdict and disciplinary sentence on Plaintiff based on the patently flawed misbehavior report issued by Defendant McAdam, in violation of the **Fourteenth Amendment**, as well as **Article 1, Section 6 of the New York State Constitution**;[18]

---

[15]     (Dkt. No. 1, ¶ 6, & Attached Pages 1-3, 8 [Plf.'s Compl.].)

[16]     (Dkt. No. 1, ¶ 7, "Eleventh Cause of Action" [Plf.'s Compl.]; Dkt. No. 1, ¶ 6, Attached Pages 9, 13-14 [Plf.'s Compl.].)

[17]     (Dkt. No. 1, ¶ 7, "Sixth Cause of Action" [Plf.'s Compl.]; Dkt. No. 1, ¶ 6, Attached Pages 12-14 [Plf.'s Compl.].)

[18]     (Dkt. No. 1, ¶ 7, "Sixth Cause of Action" [Plf.'s Compl.]; Dkt. No. 1, ¶ 6, Attached Pages 9-11, 13-14 [Plf.'s Compl.].)

(10) On or about **January 26, 2005**, Defendant **Don** wrongfully found Plaintiff guilty of a disciplinary charge (i.e., the charge brought by Defendant Emrich) based on insufficient evidence, and wrongfully imposed a disciplinary sentence on Plaintiff (based on a miscalculation, and unauthorized extension, of Plaintiff's previous disciplinary sentence), in violation of the **Fourteenth Amendment**, as well as **Article 1, Section 6 of the New York State Constitution**;[19]

**Inadequate Prison Conditions**

(11) Between **January 8, 2005**, and **January 20, 2005**, Defendant **Sheridan** withheld **basic necessities** from Plaintiff while in S.H.U. (such as toilet paper and soap), in violation of the **Eighth Amendment**;[20]

**Harassment**

(12) Between **January 8, 2005**, and **January 20, 2005**, while Plaintiff was in S.H.U., Defendants **McAdam**, **Emrich** and **Sheridan** harassed him by uttering profanities at him, striking his cell door so that he would step back from his cell window, threatening to "kick his f***ing ass," and intentionally filing a false misbehavior report against him (charging him with "violent conduct"), in violation of the **Eighth Amendment**;[21]

---

[19]     (Dkt. No. 1, ¶ 7, "Sixth Cause of Action" & "Seventh Cause of Action" [Plf.'s Compl.]; Dkt. No. 1, ¶ 6, Attached Pages 13-14 [Plf.'s Compl.].)

[20]     (Dkt. No. 1, ¶ 7, "Twelfth Cause of Action" [Plf.'s Compl.]; Dkt. No. 1, ¶ 6, Attached Pages 8-9, 13 [Plf.'s Compl.].)

[21]     (Dkt. No. 1, ¶ 7, "Fifth Cause of Action" [Plf.'s Compl.]; Dkt. No. 1, ¶ 6, Attached Pages 8-13 [Plf.'s Compl.].)

**Inadequate Medical Care**

(13) Between **January 6, 2005**, and **January 25, 2005**, Defendant **Kasulke** was

**deliberately indifferent** to Plaintiff's serious medical needs by (a) failing to visit Plaintiff in

S.H.U., and (b) failing to prescribe him a prescription painkiller to treat the intense pain in his

left side, in violation of the **Eighth Amendment**;[22]

(14) Between **January 26, 2005**, and **April 28, 2005**, Defendant **Kasulke** was

**deliberately indifferent** to Plaintiff's serious medical needs by (a) failing to administer further

tests to ascertain the extent of Plaintiff's back injuries (in particular, an M.R.I. or an x-ray of

Plaintiff's left side, which was *not* taken on January 26, 2005, when other x-rays of Plaintiff's

torso were taken), (b) failing to give Plaintiff a follow-up visit in S.H.U., and (c) failing to

eliminate Plaintiff's residual back pain (which persisted despite receiving prescription

painkillers), in violation of the **Eighth Amendment**;[23]

**Interference with Access to the Courts**

(15) On or about **January 21, 2005**, Defendant **Emrich** interfered with Plaintiff's **access**

**to the courts** by filing the above-referenced misbehavior report against him, causing the

extension of his confinement in S.H.U., where he was restricted to merely three legal materials

per day, in violation of the **First Amendment**;[24]

(16) On or about **January 26, 2005**, Defendant **Don** interfered with Plaintiff's **access to**

---

[22]      (Dkt. No. 1, ¶ 6, Attached Pages 8, 15 [Plf.'s Compl.].)

[23]      (Dkt. No. 1, ¶ 7, "Eighth Cause of Action" [Plf.'s Compl.]; Dkt. No. 1, ¶ 6, Attached Pages 8, 14-15 [Plf.'s Compl.].)

[24]      (Dkt. No. 1, ¶ 7, "Eleventh Cause of Action" [Plf.'s Compl.]; Dkt. No. 1, ¶ 6, Attached Pages 12, 16 [Plf.'s Compl.].)

**the courts** by wrongfully extending Plaintiff's previous disciplinary sentence in S.H.U., where he was restricted to receiving merely three legal materials per day, in violation of the **First Amendment**;[25]

(17) On or about **February 7, 2005**, Defendant **John Doe # 3** (who was either the S.H.U. Mail Officer or an employee of the Gouverneur C.F. Mail Room) interfered with Plaintiff's **access to the courts** by discarding, or failing to secure safe administrative passage of, Plaintiff's discovery motion in his federal court *habeas corpus* proceeding pending in the Southern District of New York, in violation of the **First Amendment**;[26] and

(18) On or about **March 13, 2005**, Defendant **Cornelius** interfered with Plaintiff's **access to the courts** by losing Plaintiff's legal documents (specifically, more than 200 pages of trial transcripts in the criminal case of *New York v. Cusamano,* an appeal from which Plaintiff was litigating in the New York State Appellate Division, Third Department), because he placed them in a "storage bin" rather than Plaintiff's third "draft bag" during Plaintiff's transfer from Gouverneur C.F. to Clinton C.F., thus limiting Plaintiff's ability to challenge his underlying conviction, in violation of the **First Amendment**.[27]

---

[25]    (Dkt. No. 1, ¶ 7, "Seventh Cause of Action" [Plf.'s Compl.]; Dkt. No. 1, ¶ 6, Attached Pages 12-14, 16 [Plf.'s Compl.].)

[26]    (Dkt. No. 1, ¶ 7, "Ninth Cause of Action" [Plf.'s Compl.]; Dkt. No. 1, ¶ 6, Attached Pages 15 and 16 [Plf.'s Compl.].)

[27]    (Dkt. No. 1, ¶ 7, "Tenth Cause of Action" [Plf.'s Compl.]; Dkt. No. 1, ¶ 6, Attached Pages 16-17 [Plf.'s Compl.].)

**B.      Summary of Defendants' Motion**

Defendants' motion for summary judgment is premised on the following eleven grounds:

(1) Plaintiff's **conspiracy** claim should be dismissed because there is no evidence establishing a meeting of the minds between Defendant Sobek and Defendants Snyder, McAdam and Cushman to assault Plaintiff, or that any of those Defendants acted due to racial animus;[28]

(2) Plaintiff's **excessive-force** and **failure-to-protect** claims should be dismissed because there is no evidence establishing those claims;[29]

(3) At the very least, Plaintiff's **conspiracy**, **excessive-force**, and **failure-to-protect** claims against Defendant Cushman should be dismissed since there is no evidence that Cushman was present during the alleged use of excessive force;[30]

(4) Plaintiff's **false-misbehavior-report** claim against Defendant McAdam should be dismissed because there is no constitutional right against being issued a false misbehavior report in prison and because, in any event, there is no evidence that Plaintiff was deprived of any due process following the issuance of that report;[31]

(5) Plaintiff's **retaliation** claim against Defendant Emrich should be dismissed because there is no evidence that Plaintiff was subjected to sufficient adverse action and, in any event, there is no evidence that the action taken against him was taken because of his protected

---

[28]      (Dkt. No. 39, Part 45, at 4-5 [Defs.' Memo. of Law].)

[29]      (*Id*. at 2-3.)

[30]      (*Id*. at 3.)

[31]      (*Id*. at 5-6.)

activity;[32]

(6) Plaintiff's **procedural due process** claims (arising from his disciplinary hearings) should be dismissed because, based on the record evidence, he did not enjoy a protected liberty interest giving rise to such claims and, in any event, he was afforded all the process he was due at the hearings;[33]

(7) Plaintiff's **inadequate-prison-conditions** claim should be dismissed because the conditions in question were not sufficiently serious to support such a claim (based on Plaintiff's own allegations or, in the alternative, based on the record evidence);[34]

(8) Plaintiff's **harassment** claim should be dismissed because the conduct in question was not sufficiently serious to support such a claim (based on Plaintiff's own allegations or, in the alternative, based on the record evidence);[35]

(9) Plaintiff's **inadequate-medical-care** claim should be dismissed because there is no evidence that he had a sufficiently serious medical need and, in any event, there is no evidence that Defendant Kasulke acted with a sufficiently culpable state of mind with regard to that medical need;[36]

(10) Plaintiff's **access-to-courts** claim should be dismissed because there is no evidence that Defendant Cornelius lost Plaintiff's legal materials intentionally or recklessly and, in any

---

[32]     (*Id*. at 13-14.)

[33]     (*Id*. at 9-12, 15-16.)

[34]     (*Id*. at 6-7.)

[35]     (*Id*. at 7-8.)

[36]     (*Id*. at 16-19.)

event, there is no evidence that the loss materially prejudiced any legal action Plaintiff sought to

pursue;[37]

(11) In the alternative, the doctrine of **qualified immunity** protects Defendants from

liability with regard to Plaintiff's claims of harassment, due process violations, and inadequate

medical care.[38]

### C.     Summary of Plaintiff's Cross-Motions

In his Memorandum of Law in Opposition to Defendants' motion, Plaintiff requests that

the Court grant him three forms of relief (in addition to an Order denying Plaintiff's motion for

summary judgment): (1) an Order entering summary judgment in *Plaintiff's* favor; (2) an Order

compelling discovery (and, if necessary, an Order granting Plaintiff a stay of the Court's decision

regarding Defendants' motion for summary judgment pending Plaintiff's receipt of that

discovery); and (3) an Order granting Plaintiff leave to file an Amended Complaint.  (Dkt. No.

42, Part 3, at 1, 3, 8, 9 11, 14-16 [Plf.'s Opp. Memo. of Law]; *see also* Dkt. No. 42, Part 1, ¶¶

138, 139 [Plf.'s Decl.].)

## II.    APPLICABLE LEGAL STANDARDS

### A.     Legal Standard Governing Motions for Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In determining whether a genuine issue of

---

[37]     (*Id*. at 19-21.)

[38]     (*Id*. at 21-23.)

material[39] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party.[40]

However, when the moving party has met its initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial."[41]  The nonmoving party must do more than "rest upon the mere allegations . . . of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts."[42]  Rather, "[a] dispute regarding a material fact is *genuine* if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[43]

What this burden-shifting standard means when a plaintiff has failed to respond to a defendant's motion for summary judgment is that "[t]he fact that there has been no [such]

---

[39]     A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

[40]     *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) [citation omitted]; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) [citation omitted].

[41]     Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made [by a defendant] and supported as provided in this rule, the [plaintiff] may not rest upon the mere allegations . . . of the [plaintiff's] pleading, but the [plaintiff's] response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the [plaintiff] does not so respond, summary judgment, if appropriate, shall be entered against the [plaintiff]."); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986).

[42]     *Matsushita*, 475 U.S. at 585-86; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *see also* Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made [by a defendant] and supported as provided in this rule, the [plaintiff] may not rest upon the mere allegations . . . of the [plaintiff's] pleading . . . .").

[43]     *Ross v. McGinnis*, 00-CV-0275, 2004 WL 1125177, at *8 (W.D.N.Y. Mar. 29, 2004) [internal quotations omitted] [emphasis added].

response . . . does not . . . [by itself] mean that the motion is to be granted automatically."[44]

Rather, practically speaking, the Court must (1) determine what material facts, if any, are

*disputed* in the record presented on the defendants' motion, and (2) assure itself that, based on

those *undisputed* material facts, the law indeed warrants judgment for the defendants.[45]

However, the plaintiff's failure to respond to the defendant's motion for summary judgment

lightens the defendant's burden on the motion.

　　More specifically, where a plaintiff has failed to properly respond[46] to a defendant's

statement of material facts, contained in its Statement of Material Facts (a/k/a its "Rule 7.1

_____

[44]　　*Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).

[45]　　*See Champion*, 76 F.3d at 486 ("Such a motion may properly be granted only if the facts as to which there is no genuine dispute show that . . . the moving party is entitled to a judgment as a matter of law.") [internal quotation marks and citation omitted]; *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp.2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.) (stating that, where a plaintiff has failed to respond to a defendant's motion for summary judgment, "[t]he Court must review the merits of Plaintiff's claims"). This requirement (that the Court determine, as a threshold matter, that the movant's motion has merit) is also recognized by Local Rule 7.1(b)(3) of the Local Rules of Practice for this Court, which provides that "the non-moving party's failure to file or serve . . . [opposition] papers . . . shall be deemed as consent to the granting . . . of the motion . . . unless good cause is shown," *only where the motion has been "properly filed" and "the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein."* N.D.N.Y. L.R. 7.1(b)(3) [emphasis added].

[46]　　*See* N.D.N.Y. L.R. 7.1(a)(3) ("The opposing party shall file a response to the Statement of Material Facts. The non-movant's response shall mirror the movant's Statements of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises."). To create a dispute of material fact, it is not sufficient that the non-movant merely challenge the veracity or form of one or more of the movant's supporting affidavits. *See Chemical Bank v. Hartford Acc. & Indem. Co.*, 82 F.R.D. 376, 378 (S.D.N.Y. 1979); *Hofmann v. John Hancock Mu. Life. Ins. Co.*, 400 F. Supp. 827, 831, n.5 (D. Md. 1975).

Statement"), the facts as set forth in that Rule 7.1 Statement will be accepted as true[47] to the

extent that (1) those facts are supported by the evidence in the record,[48] and (2) the non-moving

party, if he is proceeding *pro se*, has been specifically advised of the potential consequences of

failing to respond to the movant's motion for summary judgment.[49]

Similarly, where a plaintiff has failed to respond to a defendant's properly filed and

---

[47]      *See* N.D.N.Y. L.R. 7.1(a)(3) ("<u>Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.</u>") [emphasis in original].

[48]      *See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 243 (2d Cir. 2004) ("[W]here the non-movant party chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial. . . .  If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied even if no opposing evidentiary matter is presented. . . . [I]n determining whether the moving party has met this burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 Statement.  It must be satisfied that the citation to evidence in the record supports the assertion.") [internal quotation marks and citations omitted]; *Govan v. Campbell*, 289 F. Supp.2d 289, 295 (N.D.N.Y. 2003) (Sharpe, M.J.) ("In this case, [the plaintiff] did not file a statement of undisputed facts in compliance with Local Rule 7.1(a)(3).  Consequently, the court will accept the *properly supported* facts contained in the defendants' 7.1 statement.") [emphasis added]; *Adirondack Cycle & Marine, Inc. v. Am. Honda Motor Co., Inc.*, 00-CV-1619, 2002 U.S. Dist. LEXIS 4386, at *2-3 (N.D.N.Y. Mar. 18, 2002) (McAvoy, J.) ("Local Rule 7.1 requires a party opposing summary judgment to respond to the statement of undisputed material facts submitted by the movant.  To the extent such facts are not controverted, *the properly supported facts* will be taken as true.") [emphasis added; citation omitted]; *cf.* Fed. R. Civ. P. 83(a)(1) ("A local rule shall be consistent with . . . Acts of Congress and rules adopted under 28 U.S.C. §§ 2072 and 2075 [which include the Federal Rules of Civil Procedure] . . . ."); Fed. R. Civ. P. 56(e) (requiring that, "if the non-movant does not . . . respond [to a summary judgment motion], summary judgment, *if appropriate*, shall be entered against the non-movant," and requiring that, as a threshold matter, the motion for summary judgment must be "made *and supported* as provided in this rule") [emphasis added].

[49]      *See Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996); *cf.* N.D.N.Y. L.R. 56.2 (imposing on movant duty to provide such notice to *pro se* opponent).

facially meritorious memorandum of law (submitted in support of its motion for summary judgment), the plaintiff is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(b)(3) of the Local Rules of Practice for this Court.[50] Stated another way, where a defendant has properly filed a memorandum of law (in support of a properly filed motion for summary judgment), and the plaintiff has failed to respond to that memorandum of law, the only remaining issue is whether the legal arguments advanced in the defendant's memorandum of law are *facially meritorious*.[51]   A defendant's burden in making legal

---

[50]     N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as required by this Rule shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause be shown."); N.D.N.Y. L.R. 7.1(a) (requiring opposition to motion for summary judgment to contain, *inter alia*, a memorandum of law); *cf.* Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's *response* . . . must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so *respond*, summary judgment, if appropriate, shall be entered against the adverse party.") [emphasis added]; *see, e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]; *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

[51]     *Hernandez v. Nash*, 00-CV-1564, 2003 U.S. Dist. LEXIS 16258, at *7-8 (N.D.N.Y. Sept. 10, 2003) (Sharpe, M.J.) (before a motion to dismiss may be granted under Local Rule 7.1[b][3], "the court must review the motion to determine whether it is *facially meritorious*") [emphasis added; citations omitted]; *accord*, *Topliff v. Wal-Mart Stores East LP*, 04-CV-0297, 2007 U.S. Dist. LEXIS 20533, at *28 & n.43 (N.D.N.Y. March 22, 2007) (Lowe, M.J.); *Hynes v. Kirkpatrick*, 05-CV-0380, 2007 U.S. Dist. LEXIS 24356, at *5-6 & n.2 (N.D.N.Y. March 21, 2007) (Lowe, M.J.); *Sledge v. Kooi*, 04-CV-1311, 2007 U.S. Dist. LEXIS 26583, at *28-29 & n.40 (N.D.N.Y. Feb. 12, 2007) (Lowe, M.J.), *adopted by* 2007 U.S. Dist. LEXIS 22458 (N.D.N.Y. March 28, 2007) (McAvoy, J.); *Kele v. Pelkey*, 03-CV-0170, 2006 U.S.

arguments that are facially meritorious has appropriately been characterized as "modest."[52]

Implied in the above-stated standard is the fact that, where a non-movant fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute, even if that non-movant is proceeding *pro se*.[53] This is because even *pro se* plaintiffs must obey the Court's procedural rules.[54]  For example, this

---

Dist. LEXIS 95065, at *5 & n.2 (N.D.N.Y. Dec. 19, 2006) (Lowe, M.J.), *adopted by* 2007 U.S. Dist. LEXIS 4336 (N.D.N.Y. Jan. 22, 2007) (Kahn, J.).

[52]    *See Ciaprazi v. Goord*, 02-CV0915, 2005 WL 3531464, at *8 (N.D.N.Y. Dec. 22, 2005) (Sharpe, J.; Peebles, M.J.) (characterizing defendants' threshold burden on a motion for summary judgment as "modest") [citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986)]; *accord*, *Saunders v. Ricks*, 03-CV-0598, 2006 WL 3051792, at *9 & n.60 (N.D.N.Y. Oct. 18, 2006) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.), *Smith v. Woods*, 03-CV-0480, 2006 WL 1133247, at *17 & n.109 (N.D.N.Y. Apr. 24, 2006) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.); *cf. Race Safe Sys. v. Indy Racing League*, 251 F. Supp.2d 1106, 1109-1110 (N.D.N.Y. 2003) (Munson, J.) (reviewing whether record contradicted defendant's arguments, and whether record supported plaintiff's claims, in deciding unopposed motion to dismiss, under Local Rule 7.1[b][3]); *Wilmer v. Torian*, 96-CV-1269, 1997 U.S. Dist. LEXIS 16345, at *2 (N.D.N.Y. Aug. 29, 1997) (Hurd, M.J.) (applying prior version of Rule 7.1[b][3], but recommending dismissal because of plaintiff's failure to respond to motion to dismiss *and* the reasons set forth in defendants' motion papers)*, adopted by* 1997 U.S. Dist. LEXIS 16340, at *2 (N.D.N.Y. Oct. 14, 1997) (Pooler, J.); *accord*, *Carter v. Superintendent Montello*, 95-CV-989, 1996 U.S. Dist. LEXIS 15072, at *3 (N.D.N.Y. Aug. 27, 1996) (Hurd, M.J.), *adopted by* 983 F. Supp. 595 (N.D.N.Y. 1996) (Pooler, J.).

[53]    *See Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470 (2d Cir. 2002) ("We agree with those circuits that have held that Fed. R. Civ. P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute.") [citations omitted]; *accord*, *Lee v. Alfonso*, No. 04-1921, 2004 U.S. App. LEXIS 21432 (2d Cir. Oct. 14, 2004), *aff'g*, 97-CV-1741, 2004 U.S. Dist. LEXIS 20746, at *12-13 (N.D.N.Y. Feb. 10, 2004) (Scullin, J.) (granting motion for summary judgment); *Fox v. Amtrak*, 04-CV-1144, 2006 U.S. Dist. LEXIS 9147, at *1-4 (N.D.N.Y. Feb. 16, 2006) (McAvoy, J.) (granting motion for summary judgment); *Govan v. Campbell*, 289 F. Supp.2d 289, 295 (N.D.N.Y. Oct. 29, 2003) (Sharpe, M.J.) (granting motion for summary judgment); *Prestopnik v. Whelan*, 253 F. Supp.2d 369, 371-372 (N.D.N.Y. 2003) (Hurd, J.).

[54]    *See McNeil v. U.S.,* 508 U.S. 106, 113 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed . . .  we

19

Court has rather consistently enforced Local Rule 7.1(a)(3) (and its predecessor, Local Rule 7.1[f]), by deeming facts set forth in a moving party's statement to have been admitted where the opposing party has failed to properly respond to that statement–even where the opposing party was proceeding *pro se* in a civil rights case.[55]

However, in the event the district court chooses to conduct such an independent review of the record, any verified complaint filed by the plaintiff should be treated as an affidavit.[56]  (Here, I note that Plaintiffs' Amended Complaint is verified pursuant to 28 U.S.C. § 1746.[57])  That having been said, to be sufficient to create a factual issue for purposes of a summary judgment motion, an affidavit (or verified complaint) must, among other things, be based "on personal

---

have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Faretta v. California*, 422 U.S. 806, 834, n. 46 (1975) ("The right of self-representation is not a license . . .  not to comply with relevant rules of procedural and substantive law."); *Edwards v. I.N.S.*, 69 F.3d 5, 8 (2d Cir. 1995) ("[W]hile a *pro se* litigant's pleadings must be construed liberally, . . . *pro se* litigants generally are required to inform themselves regarding procedural rules and to comply with them.") [citations omitted].

[55]     *See, e.g.*, *DeMar v. Car-Freshner Corp.*, 49 F. Supp.2d 84, 86 & n.1 (N.D.N.Y. 1999) (McAvoy, C.J.) (*pro se* civil rights case); *Costello v. Norton*, 96-CV-1634, 1998 WL 743710, at *1, n.1 (N.D.N.Y. Oct. 21, 1998) (McAvoy, C.J.) (*pro se* civil rights case); Squair v. O'Brien & Gere Eng'rs, Inc., 96-CV-1812, 1998 WL 566773, at *1, n.2 (N.D.N.Y. Aug. 21, 1998) (Scullin, J.) (*pro se* civil rights case); *see also Monahan v. N.Y. City Dep't of Corr.*, 214 F.3d 275, 292 (2d Cir. 2000) (discussing district courts' discretion to adopt local rules like 7.1[a][3], in *pro se* civil rights case).

[56]     *See Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d. Cir. 2004) ("[A] verified pleading . . . has the effect of an affidavit and may be relied upon to oppose summary judgment."); *Fitzgerald v. Henderson*, 251 F.3d 345, 361 (2d Cir. 2001) (holding that plaintiff "was entitled to rely on [his verified amended complaint] in opposing summary judgment"), *cert. denied*, 536 U.S. 922 (2002); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1993) ("A verified complaint is to be treated as an affidavit for summary judgment purposes.") [citations omitted].

[57]     (Dkt. No. 29, at 11 [Plf.'s Am. Compl.].)

knowledge."[58]  An affidavit (or verified complaint) is not based on personal knowledge if, for

example, it is based on mere "information and belief" or hearsay.[59]  In addition, such an affidavit

(or verified complaint) must not be conclusory.[60]  An affidavit is conclusory if, for example, its

assertions lack any supporting evidence or are too general.[61]  Finally, even where an affidavit (or

---

[58]     Fed. R. Civ. P. 56(e) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to the matters stated therein."); *see also U.S. v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*, 44 F.3d 1082, 1084 (2d Cir. 1995) [citations omitted], *cert. denied sub nom*, *Ferrante v. U.S.*, 516 U.S. 806 (1995).

[59]     *See Patterson*, 375 F.3d at 219 ("[Rule 56(e)'s] requirement that affidavits be made on personal knowledge is not satisfied by assertions made 'on information and belief.'. . . [Furthermore, the Rule's] requirement that the affiant have personal knowledge and be competent to testify to the matters asserted in the affidavits also means that the affidavit's hearsay assertion that would not be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial."); *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988) ("[Defendant's] affidavit states that it is based on personal knowledge *or* upon information and belief . . . .  Because there is no way to ascertain which portions of [Defendant's] affidavit were based on personal knowledge, as opposed to information and belief, the affidavit is insufficient under Rule 56 to support the motion for summary judgment."); *Applegate v. Top Assoc., Inc.*, 425 F.2d 92, 97 (2d Cir. 1970) (rejecting affidavit made on "suspicion . . . rumor and hearsay"); *Spence v. Maryland Cas. Co.*, 803 F. Supp. 649, 664 (W.D.N.Y. 1992) (rejecting affidavit made on "secondhand information and hearsay"), *aff'd*, 995 F. 2d 1147 (2d Cir. 1993).

[60]     *See* Fed. R. Civ. P. 56(e) (requiring that non-movant "set forth specific facts showing that there is a genuine issue for trial"); *Patterson*, 375 F.3d at 219 (2d. Cir. 2004) ("Nor is a genuine issue created merely by the presentation of assertions [in an affidavit] that are conclusory.") [citations omitted]; *Applegate v. Top Assoc.*, 425 F.2d 92, 97 (2d Cir. 1970) (stating that the purpose of Rule 56[e] is to "prevent the exchange of affidavits on a motion for summary judgment from degenerating into mere elaboration of conclusory pleadings").

[61]     *See, e.g.*, *Bickerstaff v. Vassar Oil*, 196 F.3d 435, 452 (2d Cir. 1998) (McAvoy, C.J., sitting by designation) ("Statements [for example, those made in affidavits, deposition testimony or trial testimony] that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment.") [citations omitted]; *West-Fair Elec. Contractors v. Aetna Cas. & Sur.*, 78 F.3d 61, 63 (2d Cir. 1996) (rejecting affidavit's conclusory statements that, in essence, asserted merely that there was a dispute between the parties over the amount owed to the plaintiff under a contract); *Meiri v. Dacon*, 759 F.2d 989, 997 (2d Cir. 1985) (plaintiff's allegation that she "heard disparaging remarks about

verified complaint) is nonconclusory, it may be insufficient to create a factual issue where it possesses the following two characteristics: (1) it constitutes almost the sole or exclusive basis for a disputed issue of fact in the case (or, expressed differently, it is largely unsubstantiated by any other direct evidence); and (2) it is so lacking in credibility that, even after drawing all inferences in the light most favorable to the non-movant, no reasonable jury could find for the non-movant because the testimony is incomplete and/or replete with inconsistencies and improbabilities.[62]

---

Jews, but, of course, don't ask me to pinpoint people, times or places. . . .  It's all around us" was conclusory and thus insufficient to satisfy the requirements of Rule 56[e]), *cert. denied*, 474 U.S. 829 (1985); *Applegate*, 425 F.2d at 97 ("[Plaintiff] has provided the court [through his affidavit] with the characters and plot line for a novel of intrigue rather than the concrete particulars which would entitle him to a trial.").

[62]        *See, e.g., Jeffreys v. City of New York*, 426 F.3d 549, 554-55 (2d Cir. 2005) ("[I]n the rare circumstances where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether . . . there are any 'genuine' issues of material fact, without making some assessment of the plaintiff's account. . . .  In the circumstances presented in the instant case-where (1) the District Court found nothing in the record to support plaintiff's allegations other than plaintiff's own contradictory and incomplete testimony, and (2) the District Court, even after drawing all inferences in the light most favorable to the plaintiff, determined that no reasonable person could believe Jeffreys' testimony, . . . we hold that the District Court did not err by awarding summary judgment.  Because no reasonable person would undertake the suspension of disbelief necessary to give credit to the allegations made in the complaint, . . . conclude that summary judgment was appropriate.") [internal quotation marks and citations omitted]; *cf. Argus, Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 42-46 (2d Cir. 1986) (affirming grant of summary judgment to defendants in part because plaintiffs' deposition testimony regarding an alleged defect in a camera product line [1] was "unsupported by documentary or other concrete evidence," and indeed was contradicted by the other record evidence, and [2] was "conclusory" and "inconsistent" with plaintiffs' present representations); *Olle v. Columbia Univ.*, 332 F. Supp.2d 599, 612-15 (S.D.N.Y. 2004) (plaintiff's deposition testimony was insufficient evidence to oppose defendants' motion for summary judgment where that testimony [1] recounted specific allegedly sexist remarks that "were either unsupported by admissible evidence or benign," and [2] were inconsistent with plaintiff's other statements and claims), *aff'd*, 136 F. App'x 383 (2d Cir. 2005) (unreported decision, cited not as precedential authority but merely to show the case's subsequent history, in accordance with Second Circuit Local Rule § 0.23).

**B.     Legal Standard Governing Motion to Dismiss for Failure to State a Claim**

To the extent that a defendant's motion for summary judgment under Fed. R. Civ. P. 56 is based entirely on the plaintiff's complaint, such a motion is functionally the same as a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  As a result, "[w]here appropriate, a trial judge may dismiss for failure to state a cause of action upon motion for summary judgment."  *Schwartz v. Compagnise General Transatlantique*, 405 F.2d 270, 273-74 (2d Cir. 1968) [citations omitted]; *accord*, *Katz v. Molic*, 128 F.R.D. 35, 37-38 (S.D.N.Y. 1989) ("This Court finds that . . . a conversion [of a Rule 56 summary judgment motion to a Rule 12(b)(6) motion to dismiss the complaint] is proper with or without notice to the parties."). Moreover, even where a defendant has not advanced such a failure-to-state-a-claim argument on a motion for summary judgment, a district court may, *sua sponte*, address whether a *pro se* prisoner has failed to state a claim upon which relief may be granted.[63]  For these reasons, it is appropriate to briefly summarize the recently clarified legal standard governing Fed. R. Civ. P. 12(b)(6) motions to dismiss.

Under Fed. R. Civ. P. 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  It has long been understood that a defendant may base such a motion on either or both of two grounds: (1) a

---

[63]     The authority to conduct this *sua sponte* analysis is derived from two sources: (1) 28 U.S.C. § 1915(e)(2)(B)(ii), which provides that "the court shall dismiss [a] case [brought by a prisoner proceeding *in forma pauperis*] at any time if the court determines that . . . the action . . . is frivolous or malicious[,] . . . fails to state a claim on which relief may be granted[,] . . . or . . . seeks monetary relief against a defendant who is immune from such relief"; and (2) 28 U.S.C. § 1915A(b), which provides that, "[o]n review, the court shall . . . dismiss the [prisoner's] complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted . . . ."

challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2);[64] or (2) a challenge to the legal cognizability of the claim.[65]

Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim *showing* that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) [emphasis added].  By requiring this "showing," Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a short and

---

[64]    *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") [citations omitted]; *Princeton Indus., Inc. v. Rem*, 39 B.R. 140, 143 (Bankr. S.D.N.Y. 1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y. 1972) ("This motion under Fed. R. Civ. P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed. R. Civ. P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.'").

[65]    *See  Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest. . . . In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas*, 308 F.3d 180, 187 (2d Cir. 2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation . . . fails as a matter of law.") [citation omitted]; *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 379 F. Supp.2d 348, 370 (S.D.N.Y. 2005) ("Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6)].") [citation omitted]; *Util. Metal Research & Generac Power Sys.*, 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at *4-5 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a]); *accord*, *Straker v. Metro Trans. Auth.*, 331 F. Supp.2d 91, 101-102 (E.D.N.Y. 2004); *Tangorre v. Mako's, Inc.*, 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, at *6-7 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b][6] motion--one aimed at the sufficiency of the pleadings under Rule 8[a], and the other aimed at the legal sufficiency of the claims).

plain statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests."[66]  The main purpose of this rule is to "facilitate a proper decision on the merits."[67]  A complaint that fails to comply with this rule "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims."[68]

The Supreme Court has long characterized this pleading requirement under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading requirements that exceed this liberal requirement.[69]  However, it is well established that even this

---

[66]     *Dura Pharm., Inc. v. Broudo*, 125 S. Ct. 1627, 1634 (2005) (holding that the complaint failed to meet this test) [citation omitted; emphasis added]; *see also Swierkiewicz*, 534 U.S. at 512 [citation omitted]; *Leathernman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993) [citation omitted].

[67]     *Swierkiewicz*, 534 U.S. at 514 (quoting *Conley*, 355 U.S. at 48); *see also Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) ("Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial.") [citation omitted]; *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) ("[T]he principle function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial.") [citations omitted].

[68]     *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996) (McAvoy, J.), *aff'd*, 113 F.3d 1229 (2d Cir. 1997) (unpublished table opinion); *accord*, *Hudson v. Artuz*, 95-CV-4768, 1998 WL 832708, at *2 (S.D.N.Y. Nov. 30, 1998), *Flores v. Bessereau*, 98-CV-0293, 1998 WL 315087, at *1 (N.D.N.Y. June 8, 1998) (Pooler, J.).  Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history.  *See, e.g.*, *Photopaint Technol., LLC v. Smartlens Corp.*, 335 F.3d 152, 156 (2d Cir. 2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.*, 104 F.3d 355 [2d Cir. 1996]).

[69]     *See, e.g.*, *Swierkiewicz*, 534 U.S. at 513-514 (noting that "Rule 8(a)(2)'s simplified pleading standard applies to all civil actions, with limited exceptions [including] averments of fraud or mistake.").

liberal notice pleading standard "has its limits."[70]  As a result, several Supreme Court and Second

Circuit decisions exist, holding that a pleading has failed to meet this liberal notice pleading

standard.[71]

Most notably, in the recent decision of *Bell Atlantic Corporation v. Twombly*, the

Supreme Court, in reversing an appellate decision holding that a complaint had stated an

actionable antitrust claim under 15 U.S.C. § 1, "retire[d]" the famous statement by the Court in

*Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for

failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts

in support of his claim which would entitle him to relief."  127 S. Ct. 1955, 1968-69 (2007).[72]

---

[70]     2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003).

[71]     *See, e.g.*, *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-1974 (2007) (pleading did not meet Rule 8[a][2]'s liberal requirement); *accord*, *Dura Pharm.*, 125 S. Ct. at 1634-1635, *Christopher v. Harbury*, 536 U.S. 403, 416-422 (2002), *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234-235 (2d Cir. 2004), *Gmurzynska v. Hutton*, 355 F.3d 206, 208-209 (2d Cir. 2004).  Several unpublished decisions exist from the Second Circuit affirming the Rule 8(a)(2) dismissal of a complaint after *Swierkiewicz*.  *See, e.g.*, *Salvador v. Adirondack Park Agency of the State of N.Y.*, No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr. 26, 2002) (affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule 8[a][2]).  Although these decisions are not themselves precedential authority, *see* Rules of the U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued precedential effect, after *Swierkiewicz*, of certain cases from within the Second Circuit interpreting Rule 8(a)(2).  *See Khan v. Ashcroft*, 352 F.3d 521, 525 (2d Cir. 2003) (relying on summary affirmances because "they clearly acknowledge the continued precedential effect" of *Domond v. INS*, 244 F.3d 81 [2d Cir. 2001], after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr*, 533 U.S. 289 [2001]).

[72]     The Court in *Twombly* further explained: "The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been adequately stated, it may be supported by showing any set of facts consistent with the allegations in the complaint. . . .  *Conley*, then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival."  *Twombly*, 127 S. Ct. at 1969.

26

Rather than turning on the *conceivability* of an actionable claim, the Court clarified, the Fed. R. Civ. P. 8 "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 1965-74.

More specifically, the Court reasoned that, by requiring that a pleading "show[] that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2) requires that the pleading give the defendant "fair notice" of (1) the nature of the nature of the claim and (2) the "grounds" on which the claim rests. *Id*. at 1965, n.3 [citation omitted]. While this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. [citations omitted]. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*. at 1965 [citations omitted]. What this means, on a practical level, is that there must be "plausible grounds to infer [actionable conduct]," or, in other words, "enough fact to raise a reasonable expectation that discovery will reveal evidence of [actionable conduct]." *Id*.

As have other Circuits, the Second Circuit has repeatedly recognized that the clarified plausibility standard that was articulated by the Supreme Court in *Twombly* governs *all* claims, not merely antitrust claims brought under 15 U.S.C. § 1 (as were the claims in *Twombly*).[73] The

---

[73]     *See, e.g., Ruotolo v. City of New York,* 514 F.3d 184, 188 (2d Cir. 2008) (in civil rights action, stating that "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim up relief that is plausible on its face.'") [citation omitted]; *Goldstein v. Pataki*, 07-CV-2537, 2008 U.S. App. LEXIS 2241, at *14 (2d Cir. Feb. 1, 2008) (in civil rights action, stating that "*Twombly* requires . . . that the complaint's '[f]actual allegations be enough to raise a right to relief above the speculative level . . . .'") [internal citation omitted]; *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98, n.2 (2d Cir. 2007) ("We have declined to read Twombly's flexible 'plausibility standard' as relating only to antitrust cases.") [citation omitted]; *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (in prisoner civil rights action, stating, "[W]e believe the [Supreme] Court [in *Bell Atlantic Corp. v. Twombly*] is . . . requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those

Second Circuit has also recognized that this *plausibility* standard governs claims brought even by *pro se* litigants (although the plausibility of those claims is be assessed generously, in light of the special solicitude normally afforded *pro se* litigants).[74]

It should be emphasized that Fed. R. Civ. P. 8's plausibly standard, explained in *Twombly*, was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus*, in which the Court stated, "Specific facts are not necessary" to successfully state a claim under Fed. R. Civ. P. 8(a)(2). *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) [citation omitted]. That statement was merely an abbreviation of the often-repeated point of law–first offered in *Conley* and repeated in *Twombly*–that a pleading need not "set out in detail the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly*, 127 S. Ct. 1965, n.3 (citing *Conley v. Gibson*, 355 U.S. 41, 47 [1957]). That statement in no way meant that all pleadings may achieve the requirement of giving a defendant "fair notice" of the nature of the claim and the "grounds" on which the claim rests without ever having to allege any facts whatsoever.[75] There must still be enough facts alleged to raise a right to relief above the

---

contexts where such amplification is needed to render the claim *plausible*.") [emphasis in original].

[74]      *See*, *e.g.*, *Jacobs v. Mostow*, 281 F. App'x 85, 87 (2d Cir. March 27, 2008) (in pro se action, stating, "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim up relief that is plausible on its face.'") [citation omitted] (summary order, cited in accordance with Local Rule 32.1[c][1]); *Boykin v. KeyCorp.*, 521 F.3d 202, 215-16 (2d Cir. 2008) (finding that borrower's *pro se* complaint sufficiently presented a "*plausible* claim of disparate treatment," under Fair Housing Act, to give lenders fair notice of her discrimination claim based on lenders' denial of her home equity loan application) [emphasis added].

[75]      For example, in *Erickson*, a district court had dismissed a *pro se* prisoner's civil rights complaint because, although the complaint was otherwise factually specific as to how the prisoner's hepatis C medication had been wrongfully terminated by prison officials for a period of approximately 18 months, the complaint (according to the district court) failed to allege facts

speculative level to a plausible level, so that the defendant may know what the claims are and the grounds on which they rest (in order to shape a defense).

Having said all of that, it should also be emphasized that, "[i]n reviewing a complaint for dismissal under Fed. R. Civ. P. 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."[76] "This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the

---

plausibly suggesting that the termination caused the prisoner "substantial harm." 127 S. Ct. at 2199. The Supreme Court vacated and remanded the case because (1) under Fed. R. Civ. P. 8 and *Twombly*, all that is required is a "a short and plain statement of the claim" sufficient to "give the defendant fair notice" of the claim and "the grounds upon which it rests," and (2) the plaintiff had alleged that the termination of his hepatitis C medication for 18 months was "endangering [his] life" and that he was "still in need of treatment for [the] disease." *Id*. at 2200. While *Erickson* does not elaborate much further on its rationale, a careful reading of the decision (and the dissent by Justice Thomas) reveals a point that is perhaps so obvious that it did not need mentioning in the short decision: a claim of deliberate indifference to a serious medical need under the Eighth Amendment involves two elements, i.e., the existence of a sufficiently serious medical need possessed by the plaintiff, and the existence of a deliberately indifferent mental state possessed by prison officials with regard to that sufficiently serious medical need. The *Erickson* decision had to do with only the first element, not the second element. *Id*. at 2199-2200. In particular, the decision was merely recognizing that an allegation by a plaintiff that, during the relevant time period, he suffered from hepatis C is, in and of itself, a factual allegation plausibly suggesting that he possessed a sufficiently serious medical need; the plaintiff need not *also* allege that he suffered an independent and "substantial injury" as a result of the termination of his hepatis C medication. *Id*. This point of law is hardly a novel one. For example, numerous decisions, from district courts within the Second Circuit alone, have found that suffering from hepatitis C constitutes having a serious medical need for purposes of the Eighth Amendment. *See, e.g., Rose v. Alvees*, 01-CV-0648, 2004 WL 2026481, at *6 (W.D.N.Y. Sept. 9, 2004); *Verley v. Goord*, 02-CV-1182, 2004 WL 526740, at *10 n.11 (S.D.N.Y. Jan. 23, 2004); *Johnson v. Wright*, 234 F. Supp.2d 352, 360 (S.D.N.Y. 2002); *McKenna v. Wright*, 01-CV-6571, 2002 WL 338375, at *6 (S.D.N.Y. March 4, 2002); *Carbonell v. Goord*, 99-CV-3208, 2000 WL 760751, at *9 (S.D.N.Y. June 13, 2000).

[76]     *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (affirming grant of motion to dismiss) [citation omitted]; *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994).

complaint is submitted *pro se*."[77]  In other words, as stated above in Part I.A. of this Report-

Recommendation, while all pleadings are to be construed liberally under Fed. R. Civ. P. 8(e), *pro*

*se* civil rights pleadings are to be construed with an *extra* degree of liberality.[78]

For example, the mandate to read the papers of *pro se* litigants generously makes it

appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as

effectively amending the allegations of the plaintiff's complaint, to the extent that those factual

assertions are consistent with the allegations of the plaintiff's complaint.[79]  Moreover, "courts

must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that

they suggest."[80]  Furthermore, when addressing a *pro se* complaint, *generally* a district court

---

[77]     *Hernandez*, 18 F.3d at 136 [citation omitted]; *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) [citations omitted]; *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 619 (2d Cir. 1999) [citation omitted].

[78]     *See*, *supra*, note 1 of this Report-Recommendation.

[79]     "Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss.  However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum."  *Gadson v. Goord*, 96-CV-7544, 1997 WL 714878, at *1, n. 2 (S.D.N.Y. Nov. 17, 1997) (citing, *inter alia*, *Gil v. Mooney*, 824 F.2d 192, 195 [2d Cir. 1987] [considering plaintiff's response affidavit on motion to dismiss]).  Stated another way, "in cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.'"  *Donhauser v. Goord*, 314 F. Supp.2d 119, 212 (N.D.N.Y. 2004) (considering factual allegations contained in plaintiff's opposition papers) [citations omitted], *vacated in part on other grounds*, 317 F. Supp.2d 160 (N.D.N.Y. 2004).  This authority is premised, not only on case law, but on Rule 15 of the Federal Rules of Civil Procedure, which permits a plaintiff, as a matter of right, to amend his complaint once at any time before the service of a responsive pleading–which a motion to dismiss is not.  *See Washington v. James*, 782 F.2d 1134, 1138-39 (2d Cir. 1986) (considering subsequent affidavit as amending *pro se* complaint, on motion to dismiss) [citations omitted].

[80]     *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) [internal quotation and

"should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."[81]  Of course, an opportunity to amend is not required where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it."[82]

However, while this special leniency may somewhat loosen the procedural rules governing the form of pleadings (as the Second Circuit very recently observed),[83] it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed. R. Civ. P. 8, 10 and 12.[84]  Rather, as both the Supreme Court and Second Circuit have repeatedly

---

citation omitted].

[81]     *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) [internal quotation and citation omitted]; *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires").

[82]     *Cuoco*, 222 F.3d at 112 (finding that repleading would be futile) [citation omitted]; *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) [citation omitted].

[83]     *Sealed Plaintiff v. Sealed Defendant # 1*, No. 06-1590, 2008 WL 3294864, at *5 (2d Cir. Aug. 12, 2008) ("[The obligation to construe the pleadings of *pro se* litigants liberally] entails, at the very least, a permissive application of the rules governing the form of pleadings.") [internal quotation marks and citation omitted]; *see also Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) ("[R]easonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training . . . should not be impaired by harsh application of technical rules.") [citation omitted].

[84]     *See Prezzi v. Schelter*, 469 F.2d 691, 692 (2d Cir.1972) (extra liberal pleading standard set forth in *Haines v. Kerner*, 404 U.S. 519 [1972], did not save *pro se* complaint from dismissal for failing to comply with Fed. R. Civ. P. 8]); *accord, Shoemaker v. State of Cal.*, 101 F.3d 108 (2d Cir. 1996) (citing *Prezzi v. Schelter*, 469 F.2d 691) [unpublished disposition cited only to acknowledge the continued precedential effect of *Prezzi v. Schelter*, 469 F.2d 691, within the Second Circuit]; *accord, Praseuth v. Werbe*, 99 F.3d 402 (2d Cir.1995).

recognized, the requirements set forth in Fed. R. Civ. P. 8, 10 and 12 are procedural rules that

even *pro se* civil rights plaintiffs must follow.[85]  Stated more plainly, when a plaintiff is

proceeding *pro se*, "all normal rules of pleading are not absolutely suspended."[86]

## III.   ANALYSIS OF DEFENDANTS' MOTION

### A.   Whether Plaintiff's Excessive-Force and Failure-to-Protect Claims Should Be Dismissed Due to Lack of Evidence

As stated above, Defendants argue that Plaintiff's excessive-force and failure-to-protect

claims should be dismissed because there is no evidence establishing those claims.  (Dkt. No. 39,

---

[85]     *See McNeil v. U.S.,* 508 U.S. 106, 113 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed . . .  we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Faretta v. California*, 422 U.S. 806, 834, n.46 (1975) ("The right of self-representation is not a license . . . not to comply with relevant rules of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *cf. Phillips v. Girdich*, 408 F.3d 124, 128, 130 (2d Cir. 2005) (acknowledging that *pro se* plaintiff's complaint could be dismissed for failing to comply with Rules 8 and 10 if his mistakes either "undermine the purpose of notice pleading []or prejudice the adverse party").

[86]     *Stinson v. Sheriff's Dep't of Sullivan Cty.*, 499 F. Supp. 259, 262 & n.9 (S.D.N.Y. 1980); *accord, Standley v. Dennison*, 05-CV-1033, 2007 WL 2406909, at *6, n.27 (N.D.N.Y. Aug. 21, 2007) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Muniz v. Goord*, 04-CV-0479, 2007 WL 2027912, at *2 (N.D.Y.Y. July 11, 2007) (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *DiProjetto v. Morris Protective Serv.,* 489 F. Supp.2d 305, 307 (W.D.N.Y. 2007); *Cosby v. City of White Plains*, 04-CV-5829, 2007 WL 853203, at *3 (S.D.N.Y. Feb. 9, 2007); *Lopez v. Wright*, 05-CV-1568, 2007 WL 388919, at *3, n.11 (N.D.N.Y. Jan. 31, 2007) (Mordue, C.J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord*, 04-CV-1433, 2007 WL 201109, at *5 (N.D.N.Y. Jan. 23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.*, 04-CV-1262, 2007 WL 119453, at *2, n.13 (N.D.N.Y. Jan. 10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins v. Fed. Bur. of Prisons*, 05-CV-0904, 2007 WL 37404, at *4 (N.D.N.Y. Jan. 4, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.).

Part 45, at 2-3 [Defs.' Memo. of Law].)  More specifically, Defendants argue that, because of the record evidence demonstrating the limited extent of Plaintiff's injuries within five minutes of the documented use of force, no reasonable juror would undertake the suspension of disbelief necessary to credit his "sworn statement that he was beaten more than 300 times" by Defendants Cushman, McAdam, John Doe # 1, and John Doe # 2 in the Gouverneur C.F. S.H.U., on January 6, 2005.  (*Id.*)

Plaintiff's response, as I understand it, offers what are in essence two different arguments: (1) a reasonable juror *would* in fact undertake the suspension of disbelief  necessary to credit the allegations made by Plaintiff since (a) his credibility is "impeccable" in that his testimony regarding the incident has been consistent for more than thirty months (while Defendant McAdam's credibility is extremely questionable since statements made in the misbehavior report he authored show him to be a "liar"), and (b) the record contains evidence (e.g., Plaintiff's Verified Complaint and his deposition testimony) that Plaintiff was struck numerous times with short, controlled blows, and that he experienced pain in the months following the use of force (e.g., his Verified Complaint and his deposition testimony); and (2) none of the referenced Defendants have submitted sworn statements that they did *not* use excessive force against Plaintiff in the Gouverneur C.F. S.H.U., on January 6, 2005.  (Dkt. No. 42, Part 3, at 1-3 [Plf.'s Opp. Memo. of Law].)

Taking Plaintiff's arguments out of order, I am not persuaded by his second argument since it shows a fundamental misunderstanding of the shifting burden on Defendants' motion (which is described above in Part II.A. of this Report-Recommendation).  Succinctly stated, when the moving party has met its initial burden of establishing the absence of any genuine issue

of material fact, the nonmoving party must come forward with specific facts showing that there is

a genuine issue for trial; he may not simply argue that the movant has failed to adduce testimony

affirmatively *denying* a certain fact.

However, Plaintiff's first argument is somewhat more persuasive.  It is well established

that issues of credibility are *almost never* to be resolved by a court on a motion for summary

judgment.[87] Granted, there is a *narrow exception* to this well-established rule.[88]  This narrow

exception is for testimony by a non-movant that possesses the following two characteristics: (1)

it constitutes almost the sole or exclusive basis for a disputed issue of fact in the case (or,

expressed differently, it is largely unsubstantiated by any other direct evidence); and (2) it is so

lacking in credibility that, even after drawing all inferences in the light most favorable to the non-

movant, no reasonable jury could find for the non-movant because the testimony is incomplete

and/or replete with inconsistencies and improbabilities.[89]  Again, it must be remembered that this

---

[87]     *See Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 174 (2d Cir. 2006) ("[C]redibility, in the ordinary course of things, is for a fact-finder to evaluate."); *Stichting v. Schreiber*, 407 F.3d 34, 55 (2d Cir. 2005) ("[T]o resolve at the summary judgment stage, and before Mead testifies, the question of whether a reasonable jury might believe Mead would, we think, amount to a credibility determination that we are not entitled to make."); *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996) (at the summary judgment stage, the court "is . . . to eschew credibility assessments"); *accord, Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment."); *accord, Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005); *see also Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996) ("In apply [the summary judgment] standard, the court should not weigh evidence or assess the credibility of witnesses."); *accord, U.S. v. Rem*, 38 F.3d 634, 644 (2d Cir. 1994).

[88]     *Blake v. Race*, 487 F. Supp.2d 187, 202 (E.D.N.Y. March 29, 2007).

[89]     *See*, *supra*, note 62 of this Report-Recommendation.

circumstance is "rare."[90]

Here, the following is a summary of the material evidence before the Court on the current record:

(1) Defendant McAdam's testimony (at Plaintiff's disciplinary hearing) stating that he "had to use force [against Plaintiff] to restore order" in the Gouverneur C.F. S.H.U., on January 6, 2005, and that Defendant Snyder was present in the room at the time;[91]

(2) Defendant McAdam's misbehavior report against Plaintiff arising from the incident, indicating that (a) "physical force" was used, (b) before the force was used, Plaintiff was standing, and (c) after force was used, Plaintiff had to "stand up";[92]

(3) The "Use of Force Report," following the incident, containing (a) Defendant McAdam's statement that (in response to an attempted assault by Plaintiff) he, *inter alia*, "pushed [Plaintiff] against the wall" and "forced [Plaintiff] to the floor . . . for several seconds," and (b) Nurse Debbie Therault's statement that, immediately after the incident, she examined Plaintiff and saw a "[r]ed area" that was "3-4 cm long" on the "[left] side of [his] back" and a round area of "swelling" that was "½ cm" in diameter on his "lower lip," warranting her giving him

---

[90]     *Jeffreys*, 426 F.3d at 554; *Caraballo v. City of New York*, 05-CV-8011, 2007 WL 1584202, at *6 (S.D.N.Y. May 31, 2007); *Blake*, 487 F. Supp.2d at 202; *Dove v. City of New York*, 03-CV-5052, 2007 U.S. Dist. LEXIS 18341, at *16 (E.D.N.Y. March 15, 2007); *Chapel Park Villa, Ltd. v. The Travelers Ins. Co., Inc.*, 02-CV-0407, 2006 WL 2827867, at *7 (W.D.N.Y. Sept. 29, 2006); *Allah v. Greiner*, 03-CV-3789, 2006 WL 357824, at *2 (S.D.N.Y. Feb. 15, 2006).

[91]     (Dkt. No. 39, Part 12, at 8-10 [Ex. 8 to Seaman Affid.].)

[92]     (Dkt. No. 39, Part 11 [Ex. 8 to Seaman Affid.].)

"Ibuprofen" for "back pain" and "cold compresses to [his] lip";[93]

(4) Plaintiff's medical records reflecting similar injuries on January 6, 2005, and complaints of pain during the following weeks, including on January 8 and 12, 2005;[94]

(5) Color photographs of Plaintiff taken within five minutes after the documented use of force, which show redness on various parts of Plaintiff's back and sides (and apparently some redness under his left breast);[95]

(6) Plaintiff's disciplinary hearing testimony that the force used against him was not in response to any threatening gesture made by him, and consisted of Defendant McAdam and at least one other officer repeatedly "smack[ing]" and "punch[ing]" Plaintiff in the face, head, back and sides intermittently over the course of ten or fifteen minutes;[96]

(7) Plaintiff's sworn statements in his Verified Complaint that the force used against him was not in response to any threatening gesture made by him, and consisted of Defendant McAdam and at least one other officer repeatedly "smack[ing]" and "punch[ing]" Plaintiff in the face, head, back and sides intermittently over the course of several minutes;[97] and

(8) Plaintiff's deposition testimony that the force used against him was not in response to any threatening gesture made by him, and consisted of Defendant McAdam and at least one other officer repeatedly "slap[ping]," "grab[bing]," and "punch[ing]" Plaintiff on the

---

[93]     (Dkt. No. 39, Part 6 [Ex. 2 to Seaman Affid.].

[94]     (Dkt. No. 39, Part 43, at 2-3 [Ex. A to Kasulkte Decl.].)

[95]     (Dkt. No. 39, Parts 7-8 [Exs. 3-4 of Seaman Affid.].)

[96]     (Dkt. No. 39, Part 12, at 3-6 [Ex. 8 to Seaman Affid.].)

[97]     (Dkt. No. 1, ¶ 6, Attached Pages 3-8 [Plf.'s Verified Compl.].)

head, sides, and back intermittently in "bursts" that were "short" and "controlled" over the course

of ten to fifteen minutes, as well as someone pressing either a knee or boot into Plaintiff's back.[98]

Based on this record evidence, I am unable to agree with Defendants that the

circumstances of this case fall within the narrow exception to the well-established rule that issues

of credibility are not to be resolved by a court on a motion for summary judgment.  As an initial

matter, I find that the "sworn statement" to which Defendants apparently refer (i.e., Plaintiff's

deposition testimony that the blows to his face, head and sides numbered in the hundreds) does

not, in fact, constitute *almost the sole or exclusive basis* for a disputed issue of fact in the case.

Rather, that deposition testimony is accompanied by Plaintiff's Verified Complaint and

disciplinary hearing testimony.

As a result, there is no need to proceed to the second prong of the above-stated two-part

test (e.g., examining whether the testimony is so incomplete and/or replete with inconsistencies

and improbabilities that, even after drawing all inferences in the light most favorable to Plaintiff,

no reasonable jury could find for Plaintiff).  Even if I were to proceed to that prong, I would be

unable to deem Plaintiff's deposition testimony *incomplete*, *inconsistent* with Plaintiff's other

sworn statements, and/or *improbable*.   For example, his deposition testimony appears consistent

with his Verified Complaint and disciplinary hearing testimony.  Moreover, it appears probable

to me that, had the events occurred as Plaintiff described them in his deposition, they would have

resulted in the injuries evident from the color photographs of Plaintiff (which show redness on

his back and sides) and Nurse Therault's examination of Plaintiff (which revealed a "[r]ed area"

---

[98]      (Dkt. No. 39, Part 4, at 114-39 [Ex. A to Seaman Affid., attaching Plf.'s deposition transcript].)

that was "3-4 cm long" on the "[left] side of [his] back" and a round area of "swelling" that was "½ cm" in diameter on his "lower lip.")[99]

Simply stated, the mere fact that Plaintiff's version of events might be rejected by a jury is not a sufficient ground upon which to discredit that version of events.  *See Caraballo v. City of New York*, 05-CV-8011, 2007 WL 1584202, at *6 (S.D.N.Y. May 31, 2007) ("Despite the seeming unlikelihood of Caraballo's version of events, it cannot be said that this is the 'rare' case in which the only factual issues are created by testimony of the plaintiff that is 'so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint . . . .'").  Similarly, the significance of Plaintiff's physical injuries (so long as they are not *de minimis*) do not "preclude a reasonable jury from finding that excessive force was used."  *Griffin v. Crippen*, 193 F.3d 89, 91-92 (2d Cir. 1999) (injuries consisted of only "a bruised shin and swelling over [the plaintiff's] left knee").

Having said all of that, I do agree with Defendants to the extent that they argue that there is no evidence in the record from which a rational fact-finder could find that (1) Defendant Cushman used excessive force against Plaintiff in the Gouverneur C.F. S.H.U., on January 6, 2005, or (2) Defendants Sobek and Cushman failed to protect him from the referenced use of excessive force.  (Dkt. No. 39, Part 45, at 3 [Defs.' Memo. of Law]; Dkt. No. 39, Part 44, ¶¶ 20, 22, 23, 26, 28 [Defs.' Rule 7.1 Statement of Facts].)

As for Defendant Cushman, Plaintiff offers only speculation and conjecture that he was

---

[99]     Indeed, what appears *improbable* to me (based on the current record) is that, if the events had happened as McAdam described them in his Use of Force Report, those events would have resulted in the referenced red area to Plaintiff's back and swelling to his lip.

present during the (alleged) use of excessive force.  *See*, *infra*, Part III.C. of this Report-Recommendation.  It must be remembered that mere *speculation* or *conjecture* is not a sufficient ground upon which to oppose summary judgment.[100]  Similarly, Plaintiff offers only speculation and conjecture that, when Defendant Cushman handed Plaintiff off to Defendant McAdam at the "frisk room" of the Gouverneur C.F. S.H.U. on January 6, 2005, Defendant Cushman *knew* there was a *substantial* risk that Plaintiff would suffer *serious* harm, and that Defendant Cushman *disregarded* that risk by failing to take reasonable measures to avoid it.[101]

As for Defendant Sobek, Plaintiff offers no evidence that he was present during the (alleged) use of excessive force.  Similarly, Plaintiff offers only speculation and conjecture that, when or immediately after Defendant Sobek accused Plaintiff of a disciplinary offense on January 6, 2005, Defendant Sobek *knew* there was a substantial risk that Plaintiff would suffer

---

[100]  *See Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990) ("The non-movant cannot . . . defeat the motion [for summary judgment] through mere speculation or conjecture.") internal quotation marks and citation omitted]; *Argus v. Eastman Kodak Co.*, 801 F.2d 38, 42 (2d Cir. 1986) ("[M]ere conjecture or speculation by the party resisting summary judgment does not provide a basis upon which to deny [the motion]") [internal quotation marks and citation omitted]; *cf. Matsushita*, 475 U.S. at 585-86 (on motion for summary judgment, nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts").

[101]  The two elements of Plaintiff's failure-to-protect claim are (1) knowledge that Plaintiff was facing a substantial risk of serious harm, and (2) disregard of that risk by failing to take reasonable measures to avoid it.  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Curry v. Scott*, 249 F.3d 493, 506, n.5 (6th Cir. 2001) (prison officials liable for exposing prisoners to excessive force at hands of other prison employees under same deliberate indifference standard employed by *Farmer v. Brennan*, 511 U.S. 825 [1994], for prison officials who allegedly fail to protect inmates from violence by other inmates); *accord, Buckner v. Hollins*, 983 F.2d 119, 123 (8th Cir. 1993); *cf. Blyden v. Mancusi*, 186 F.3d 252, 265 (2d Cir. 1999) ("Just as prison officials may be liable for their deliberate indifference to protected inmates from violence at the hands of fellow inmates . . . they may also be liable for their deliberate indifference to violence by subordinates . . . .") [citations omitted]; *accord, Carter v. Kiernan*, 98-CV-2664, 2000 WL 760303, at *6 (S.D.N.Y. June 12, 2000).

serious harm, and that Defendant Sobek disregarded that risk by failing to take reasonable measures to avoid it.

For example, Plaintiff offers only speculation that, when Defendant McAdam placed a telephone call from the "frisk room" prior to the (alleged) use of excessive force, the following events transpired: (1) Defendant McAdam in fact reached Defendant Sobek on the telephone and not someone else; (2) based on that telephone call, Defendant Sobek acquired *actual knowledge,* that there was a *substantial* risk that Defendant McAdam would use excessive force against Plaintiff, *and* that the excessive force would result in *serious* harm to Plaintiff; and (3) Defendant Sobek nonetheless *disregarded* the risk by failing to take reasonable measures to avoid it.[102] With regard to this last conditional event, I note that it would appear that Defendant Sobek, who was a Correctional *Officer*, did not have the duty to supervise, or the authority to issue orders to, Defendant Snyder, who was a Correctional *Sergeant* (and who was present in the "frisk room" during the alleged use excessive force).

For these reasons, <u>I recommend that, under Fed. R. Civ. P. 56, the Court dismiss (1) Plaintiff's excessive-force claim against Defendant Cushman and (2) Plaintiff's failure-to-protect claim against Defendants Sobek and Cushman.  However, I recommend that the Court *not* dismiss (1) Plaintiff's excessive-force claim against Defendant McAdam, and (2) Plaintiff's failure-to-protect claim against Defendants Snyder and McAdam.</u>[103]

---

[102]     *See*, *supra*, note 101 of this Report-Recommendation (reciting elements of Plaintiff's failure-to-protect claim).

[103]     It is doubtful to me that Defendant McAdam could be held liable under a failure-to-protect theory of liability at trial since the only other person shown to be in the "frisk room" during the time in question (Defendant Snyder) is *not* alleged to have actually used excessive force against Plaintiff.  However, I do not read Defendants' motion papers as requesting the

**B.     Whether Plaintiff's Conspiracy Claim Should Be Dismissed Due to Lack of Evidence**

As stated above, Defendants argue that Plaintiff's conspiracy claim should be dismissed because there is no evidence establishing a meeting of the minds between Defendants Sobek, Snyder, McAdam and Cushman to assault Plaintiff, or that any of those Defendants acted due to racial animus.  (Dkt. No. 39, Part 45, at 4-5 [Defs.' Memo. of Law].)  For substantially the same reasons as stated by Defendants in their Memorandum of Law, I agree with Defendants that Plaintiff's conspiracy claims should be dismissed.

"To prove a § 1983 conspiracy [claim], a plaintiff must show: (1) an agreement between two or more state actors[,] or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."  *Pangburn v. Culberston*, 200 F.3d 65, 72 (2d Cir. 1999); *accord*, *Bussey v. Phillips*, 419 F. Supp.2d 569, 586 (S.D.N.Y. 2006) [citations omitted].

Here, all the record shows is the following material facts: (1) Defendant Sobek charged Plaintiff with various disciplinary offenses arising out of, *inter alia*, an incident that occurred on January 6, 2005, during which Plaintiff (allegedly) held up Defendant Sobek's count of inmates in the "F-1 Block" of Gouverneur C.F.;[104] (2) that same day, as a result of the charge, Defendant

---

dismissal of Plaintiff's failure-to-protect claim against Defendant McAdam on this ground.  As a result, I must recommend that, for the time being, the Court leave this claim in the case.

[104]     (*Compare* Dkt. No. 39, Part 44, ¶ 20 [Defs.' Rule 7.1 Statement, asserting referenced fact, and supporting that assertion with accurate record citation] *with* Dkt. No. 42, Part 1 [Plf.'s Rule 7.1 Response, failing to deny these referenced factual assertions in a matching numbered paragraph and support that denial with accurate record citations]; *see also* Dkt. No. 39, Part 9 [Ex. 5 to Seaman Affid.].)  It should be noted that Plaintiff was convicted of these charges, and that conviction has never been reversed on appeal.  (Dkt. No. 39 Part 18 [Ex. 14 to Seaman Affid.].)

Snyder escorted Plaintiff to the Short-Term S.H.U. at Gouverneur C.F., with the assistance of Defendant Cushman;[105] (3) at the Short-Term S.H.U., Defendant Snyder brought Plaintiff into the "frisk room," which was occupied by Defendant McAdam, as well as possibly three or four other officers whom Plaintiff could not (and cannot) identify;[106] (4) inside the frisk room, Defendant McAdam called someone by telephone in F-1 Block (possibly reaching Defendant Sobek), asked the person why Plaintiff was in S.H.U, and then said either "No problem" or "Oh, no, don't worry," followed by the words, "*We'll take good care of him*";[107] and (5) following the telephone call, Defendant McAdam (allegedly) used excessive force against Plaintiff, and Defendant Snyder (allegedly) failed to stop him.

Based on the current record, I find that Plaintiff has offered only speculation and conjecture that there was ever a *meeting of the minds* between Defendants Sobek, Snyder, McAdam and Cushman to act in concert to inflict an unconstitutional injury on Plaintiff.

---

[105]    (*Compare* Dkt. No. 39, Part 44, ¶¶ 23-24 [Defs.' Rule 7.1 Statement, asserting referenced facts, and supporting those assertions with accurate record citations] *with* Dkt. No. 42, Part 1 [Plf.'s Rule 7.1 Response, failing to deny these referenced factual assertions in matching numbered paragraphs and support those denials with accurate record citations];

[106]    (*Compare* Dkt. No. 39, Part 44, ¶¶ 25, 28 [Defs.' Rule 7.1 Statement, asserting referenced facts, and supporting those assertions with accurate record citations] *with* Dkt. No. 42, Part 1 [Plf.'s Rule 7.1 Response, failing to deny these referenced factual assertions in matching numbered paragraphs and support those denials with accurate record citations]; *see also* Dkt. No. 39, Part 4, at 109-11, 118-20 [Ex. A to Seaman Affid., attaching Plf.'s deposition transcript]; Dkt. No. 39, Part 8, at 9 [Ex. 8 of Seaman Affid.].)

[107]    (*Compare* Dkt. No. 39, Part 44, ¶ 26 [Defs.' Rule 7.1 Statement, asserting referenced facts, and supporting those assertions with accurate record citations] with Dkt. No. 42, Part 1 [Plf.'s Rule 7.1 Response, failing to deny these referenced factual assertions in a matching numbered paragraph and support that denial with accurate record citations]; *see also* Dkt. No. 1, ¶ 6, Attached Page 4 [Plf.'s Verified Compl.] [emphasis added]; Dkt. No. 39, Part 4, at 116-118 [Ex. A to Seaman Affid., attaching Plf.'s deposition transcript] [emphasis added].)

Similarly, he has offered only speculation and conjecture that there was an *overt act* done in furtherance of that goal.  For example, to the extent that Plaintiff is alleging that a meeting of the minds occurred between Defendant McAdam and Sobek during the referenced telephone call that occurred from the frisk room to F-1 Block, that allegation depends on Plaintiff's *guess* that (1) Defendant McAdam reached Defendant Sobek on the phone (and not some other officer in F-1 Block), *and* (2) Defendant Sobek effectively said to Defendant McAdam, "Take good care of him [by beating him up], okay?"  Moreover, even if those two events did transpire, Plaintiff has adduced no evidence that, *after* the telephone call, Defendant Sobek committed an overt act in furtherance of that conspiracy.  Simply stated, based on the current record, Plaintiff's proper claim is one of excessive force, not conspiracy.

In addition, I agree with Defendants that Plaintiff's conspiracy claim under 42 U.S.C. § 1985(3) fails on the additional ground that Plaintiff has failed to show (or even allege) that the underlying motivation for the conspiracy was racial or other class-based animus–a requirement of stating such a claim.  *See Iqbal v. Hasty*, 490 F.3d 143, 176 (2d Cir. 2007) ("[A] conspiracy [under 42 U.S.C. § 1985(3)] must be motivated by some class-based animus.") [citation omitted]; *accord*, *Hawkins v. County of Oneida*, 497 F. Supp.2d 362, 379 (N.D.N.Y. 2007) (Hurd, J.) [citation omitted]; *R-Goshen LLC v. Village of Goshen*, 289 F. Supp.2d 441, 454-55 (S.D.N.Y. 2003) [citations omitted].

Because I have already found that adequate grounds exist upon which to base a recommendation that Plaintiff's conspiracy claims be dismissed, I need not, and do not, evaluate in depth the merit of Defendants' argument that those claims should be dismissed on the alternative ground of the intracorporate conspiracy doctrine, except to make five brief points.

43

First, the "intracorporate conspiracy" doctrine (also known as the "intraenterprise conspiracy" doctrine, or the "intra-agency conspiracy" doctrine) provides that officers, agents or employees of a single corporate entity are legally incapable of conspiring together.  Second, because I have found seven district court cases from within this Circuit in which the intracorporate conspiracy doctrine has been applied with regard to conspiracy claims against the State, and only one district court case in which it has not been so applied, it appears to me that the intracorporate conspiracy doctrine does apply to cases in which the entity is the State.[108] Third, even where the doctrine applies to a plaintiff's conspiracy claims, those claims *may* fall within the doctrine's "scope of employment" exception, which exists "when individuals pursue personal interests wholly separate and apart from the entity."[109]  Fourth, in order to allege facts plausibly suggesting that individuals were pursuing personal interests wholly separate and apart from the entity, more is required of a plaintiff than simply alleging that the defendants were

---

[108]     *See Farid v. Bouey*, 554 F. Supp.2d 301, 324 (N.D.N.Y. 2008) (Sharpe, J.); *Lewis v. Goord*, 06-CV-0504, 2008 WL 902179, at *4 (N.D.N.Y. March 31, 2008) (Scullin, J., adopting, on *de novo* review, report-recommendation by Treece, M.J.); *Ozuno v. Vadlamudi*, 03-CV-0475, 2006 WL 1977618, at *10, n.7 (N.D.N.Y. July 11, 2006) (Sharpe, J., adopting, on *de novo* review, report-recommendation by Peebles, M.J.); *Colon v. Sawyer*, 03-CV-1018, 2006 WL 721763, at *6, n. 8 (N.D.N.Y. March 20, 2006) (Kahn, J.); *Orafan v. Goord*, 411 F. Supp.2d 162, 164-65 (N.D.N.Y. 2006) (Magnuson, V.J.); *Scott v. Goord*, 01-CV-0847, 2004 WL 2403853, at *13 (S.D.N.Y. Oct. 27, 2004); *Cates v. State of Conn. DOCS*, 98-CV-2232, 2000 WL 502622, at *8 (D. Conn. Apr. 13, 2000); *but see Fox v. Brown*, 05-CV-1292, 2007 WL 586724, at *12 (N.D.N.Y. Feb. 21, 2007) (Kahn, J., adopting, on *de novo* review, report-recommendation of Di Bianco, M.J.).

[109]     *Orafan v. Goord*, 411 F. Supp.2d 153, 165 (N.D.N.Y. 2006) (Magnuson, J.) [internal quotation marks and citations omitted], *vacated and remanded on other grounds sub nom.*, *Orafan v. Rashid*, No. 06-2951, 249 F. App'x 217 (2d Cir. Sept. 28, 2007)

motivated by personal bias against the plaintiff.[110]  Fifth, it is not clear to me that, here, Plaintiff

has alleged facts plausibly suggesting that–when Defendant Sobek charged Plaintiff with various

disciplinary offenses for holding up his count, and Defendants Snyder and Cushman brought

Plaintiff to the Gouverneur C.F. Short-Term S.H.U., and Defendant McAdam "frisked" him in

such a way as to assault him–those Defendants were pursuing personal interests *wholly separate*

and apart from the interests of the State of New York.

> For these reasons, I recommend that, under Fed. R. Civ. P. 56, the Court dismiss

Plaintiff's conspiracy claims.

### C.   Whether, at the Very Least, Plaintiff's Claims Against Defendant Cushman Should Be Dismissed Due to Lack of Evidence

> As stated above, Defendants argue that, at the very least, Plaintiff's conspiracy, excessive-

force, and failure-to-protect claims against Defendant Cushman should be dismissed, since there

is no evidence that Defendant Cushman was present during the alleged use of excessive force.[111]

Defendants support this argument with accurate citations to the record.[112]

> In his Opposition Memorandum of Law, Plaintiff entirely fails to address this argument.

(Dkt. No. 42, Part 3, at 1-3 [Plf.'s Opp. Memo. of Law].)  As explained above in Part II.A. of this

Report-Recommendation, where a plaintiff has failed to respond to an argument in a defendant's

---

[110]     *See Peters v. City of New York*, 04-CV-9333, 2005 WL 387141, at *3 (S.D.N.Y. Feb. 16, 2005) ("[P]ersonal bias is not the sort of individual interest that takes a defendant out of the intraenterprise conspiracy doctrine where, as here, the action complained of arguably served a legitimate interest of [the employer].") [internal quotation marks and citation omitted]; *accord*, *Johnson v. City of New York*, 01-CV-1860, 2004 WL 502929, at *5 (E.D.N.Y. Jan. 12, 2004).

[111]     (Dkt. No. 39, Part 45, at 3 [Defs.' Memo. of Law].)

[112]     (*See* Dkt. No. 39, Part 4, at 118-20 [Ex. A to Seaman Affid., attaching Plf.'s deposition transcript]; Dkt. No. 39, Part 8, at 9 [Ex. 8 of Seaman Affid.].)

properly filed and facially meritorious memorandum of law (submitted in support of its motion

for summary judgment), the plaintiff is deemed to have "consented" to that legal argument under

Local Rule 7.1(b)(3) of the Local Rules of Practice for this Court.[113]  In any event, even if I were

to subject Defendants' argument to the increased scrutiny appropriate for contested legal

arguments, I would find Defendants' argument persuasive.  Again, mere *speculation* or

*conjecture* by Plaintiff that Defendant Cushman may have been present during the alleged use of

excessive force is not a sufficient ground upon which to oppose summary judgment in favor of

Defendant Cushman (especially where, as here, there exists evidence that he was *not* present).[114]

　　　For these reasons, I recommend that, under Fed. R. Civ. P. 56, the Court dismiss

Plaintiff's claims against Defendant Cushman.

### D.   Whether Plaintiff's False-Misbehavior-Report Claims Should Be Dismissed for Failure to State a Claim or, in the Alternative, Due to Lack of Evidence

　　　As stated above, construed with special leniency, Plaintiff's Complaint asserts the

following two false-misbehavior-report claims: (1) on or about January 10, 2005, in order to

cover up the referenced use of excessive force, Defendant McAdam intentionally filed a false

misbehavior report against Plaintiff (charging him with "violent conduct"), which caused

Plaintiff to incur a disciplinary conviction (on January 13, 2005), a sentence of four months'

confinement to S.H.U., and an increased security classification (resulting in his being confined to

a maximum-security prison, where he experienced fear for his safety and emotional distress);[115]

---

[113]　　*See*, *supra*, note 50 of this Report-Recommendation.

[114]　　*See*, *supra*, note 100 of this Report-Recommendation.

[115]　　(Dkt. No. 1, ¶ 7, "Fourth Cause of Action" & "Fourteenth Cause of Action" [Plf.'s Compl.]; Dkt. No. 1, ¶ 6, Attached Pages 9-11 [Plf.'s Compl.].)

and (2) on or about January 8, 2005, in order to cover up the referenced conspiracy, Defendant

Sobek intentionally filed a false misbehavior report against Plaintiff.[116]

As stated above, in arguing that there is no constitutional right against being issued a false

misbehavior report in prison, Defendants address only Plaintiff's false-misbehavior-report claim

arising from the report issued by Defendant McAdam; Defendants do not address Plaintiff's

false-misbehavior-report claim arising from the report issued by Defendant Sobek.[117]  Of course,

this fact does not prevent the Court from *sua sponte* addressing the pleading sufficiency of this

latter claim: under 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b), the Court may (and indeed must)

address the pleading sufficiency of this *pro se* prisoner civil rights claim.

I agree with Defendants that "a prison inmate has no general constitutional right to be free

from being falsely accused in a misbehavior report."  *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d

Cir. 1997) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 [2d Cir. 1986]).[118]  Rather, the only

way that false accusations contained in a misbehavior report can rise to the level of a

---

[116]     (Dkt. No. 1, ¶ 6, & Attached Pages 1-3, 8 [Plf.'s Compl.].)

[117]     (Dkt. No. 39, Part 45, at 5-6 [Defs.' Memo. of Law].)

[118]     *Accord*, *Lugo v. Van Orden*, 07-CV-0879, 2008 U.S. Dist. LEXIS 56707, at *7 (N.D.N.Y. July 23, 2008) (McAvoy, J.); *Darvie v. Countryman*, 08-CV-0715, 2008 U.S. Dist. LEXIS 60931 (N.D.N.Y. Aug. 7, 2008) (Sharpe, J.), *adopting* 2008 U.S. Dist. LEXIS 52797, at *18, n.5 (N.D.N.Y. July 10, 2008) (Lowe, M.J.); *Anderson v. Banks*, 06-CV-0625, 2008 U.S. Dist. LEXIS 60896, at *16-17 (N.D.N.Y. May 19, 2008) (Homer, M.J.), *adopted by* 2008 U.S. Dist. LEXIS 60932 (N.D.N.Y. Aug. 6, 2008) (Sharpe, J.); *Stewartson v. Almstead*, 04-CV-1097, 2008 U.S. Dist. LEXIS 22178, at *7 (N.D.N.Y. March 20, 2008) (McAvoy, J.); *McEachin v. Goord*, 06-CV-1192, 2008 U.S. Dist. LEXIS 27479, at *12 (N.D.N.Y. Feb. 8, 2008) (Treece, M.J.), *adopted by* 2008 U.S. Dist. LEXIS 31879 (N.D.N.Y. Apr. 17, 2008) (Hurd, J.); *Murray v. Pataki*, 03-CV-1263, 2007 U.S. Dist. LEXIS 26959, at *27 (N.D.N.Y. March 5, 2007) (Treece, M.J.), *adopted by* 2007 U.S. Dist. LEXIS 23065 (N.D.N.Y. March 29, 2007) (Kahn, J.); *Madera v. Goord*, 103 F. Supp.2d 536, 542 (N.D.N.Y. 2000) (Kahn, J., adopting Report-Recommendation by Di Bianco, M.J.).

constitutional violation is when there has been more such as "retaliation against the prisoner for exercising a constitutional right." *Boddie*, 105 F.3d at 862; *accord*, *Murray v. Pataki*, 03-CV-1263, 2007 U.S. Dist. LEXIS 26959, at *26 (N.D.N.Y. March 5, 2007) (Treece, M.J.) [citations omitted]. (Plaintiff's retaliation claims with regard to two of the three misbehavior reports in question are discussed below in Parts III.E. and III.F. of this Report-Recommendation.) In addition, it should be noted that "[t]he filing of a false report does not, of itself, implicate the guard who filed it in [any] constitutional violations which occur at a subsequent disciplinary hearing." *Williams v. Smith*, 781 F.2d 319, 324 (2d Cir. 1986).[119]

I note that, even if I were to proceed to the merits of Plaintiff's false-misbehavior-report claim arising from the report issued by Defendant McAdam, I would report that I can find no record evidence that Defendant McAdam's January 10, 2008, misbehavior report, which was not subsequently reversed on appeal, was indeed false. Nor can I find any record evidence that Plaintiff was deprived of any due process following the issuance of that misbehavior report. Plaintiff's brief response to Defendants' argument, in his Opposition Memorandum of Law, certainly does not cite any such evidence. (Dkt. No. 42, Part 3, at 9 [Plf.'s Opp. Memo. of Law].) Furthermore, Plaintiff's argument that Defendant McAdam has not adduced an affidavit denying Plaintiff's assertion that the January 10, 2005, misbehavior report was false demonstrates (1) a misunderstanding of the shifting burden on Defendants' motion, and (2) a failure to address Defendants' alternative argument that, at the January 13, 2005, disciplinary hearing on Defendant

---

[119]    *Accord*, *Murray v. Pataki*, 03-CV-1263, 2007 U.S. Dist. LEXIS 26959, at *26 (N.D.N.Y. March 5, 2007) (Treece, M.J.) [citations omitted]; *see also*, *supra*, note 118 of this Report-Recommendation (citing cases).

McAdam's misbehavior report, Plaintiff was afforded all the process that he was due.[120]

For these reasons, I recommend that, under Fed. R. Civ. P. 12(b)(6), the Court dismiss Plaintiff's false-misbehavior-report claims against Defendant Sobek.  In addition, I recommend that, under Fed. R. Civ. P. 56, the Court dismiss Plaintiff's false-misbehavior-report claim against Defendants McAdam (or that, in the alternative, the Court dismiss that claim under Fed. R. Civ. P. 12[b][6]).

### E.   Whether Plaintiff's Retaliation Claim Against Defendant Emrich Should Be Dismissed Due to Lack of Evidence

As stated above, Defendants argue that Plaintiff's retaliation claim against Defendant Emrich (through the issuance of a misbehavior report on or about January 21, 2005, charging Plaintiff with "destruction of property") should be dismissed because there is no evidence that Plaintiff was subjected to sufficient adverse action and, in any event, there is no evidence that the action taken against him was taken because of his protected activity.[121]

Claims of retaliation like those asserted by Plaintiff find their roots in the First Amendment.  *See Gill v. Pidlypchak*, 389 F.3d 379, 380-81 (2d Cir. 2004).  Central to such claims is the notion that in a prison setting, corrections officials may not take actions which would have a chilling effect upon an inmate's exercise of First Amendment rights.  *See Gill*, 389 F.3d at 381-383.  Because of the relative ease with which claims of retaliation can be incanted, however, courts have scrutinized such retaliation claims with particular care.  *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).  As the Second Circuit has noted,

---

[120]   (*See* Dkt. No. 39, Part 45, at 6 [Defs.' Memo. of Law].)

[121]   (Dkt. No. 39, Part 45, at 13-14 [Defs.' Memo. of Law].)

49

> This is true for several reasons.  First, claims of retaliation are difficult
> to dispose of on the pleadings because they involve questions of intent
> and are therefore easily fabricated.  Second, prisoners' claims of
> retaliation pose a substantial risk of unwarranted judicial intrusion into
> matters of general prison administration.  This is so because virtually
> any adverse action taken against a prisoner by a prison official–even
> those otherwise not rising to the level of a constitutional violation–can
> be characterized as a constitutionally proscribed retaliatory act.

*Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) [citations omitted], *overruled on other*

*grounds*, *Swierkewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

To prevail on a First Amendment claim under 42 U.S.C. § 1983, a Plaintiff must prove by

the preponderance of the evidence that: (1) the speech or conduct at issue was "protected"; (2)

the defendants took "adverse action" against the plaintiff–namely, action that would deter a

similarly situated individual of ordinary firmness from exercising his or her constitutional rights;

and (3) there was a causal connection between the protected speech and the adverse action--in

other words, that the protected conduct was a "substantial or motivating factor" in the

defendants' decision to take action against the plaintiff.  *Mount Healthy City Sch. Dist. Bd. of*

*Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Gill*, 389 F.3d at 380 (citing *Dawes v. Walker*, 239

F.3d 489, 492 [2d. Cir. 2001]).  Under this analysis, adverse action taken for both proper and

improper reasons may be upheld if the action would have been taken based on the proper reasons

alone.  *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) [citations omitted].

As an initial matter, I question the merit of Defendants' "adverse action" argument.  On

the one hand, I acknowledge that the Second Circuit has stated, in *Franco v. Kelly*, that a prisoner

would be entitled to relief under a First Amendment retaliation theory if he could "prove his

allegation that he was subjected to false disciplinary charges *and subsequent punishment*" as a

result of his protected activity.  *Franco v. Kelly*, 854 F.2d 584, 590 (2d Cir. 1988) [emphasis

added].  However, I do not read the *Franco* decision as holding that such a prisoner would be

entitled to relief under a First Amendment retaliation theory *only* if the false disciplinary charges

resulted in punishment.[122]

Rather, the litmus test (regarding whether the filing of a false disciplinary charge is

sufficiently adverse for purposes of a First Amendment retaliation) is not whether or not the

charge resulted in punishment but whether or not Defendants' action "'would . . . deter a similarly

situated prisoner of ordinary firmness from exercising his constitutional rights.'"  *Davis v. Goord*,

320 F.3d 246, 353 (2d Cir. 2003) (quoting *Dawes*, 239 F.3d at 493).  For this reason, in applying

a similar rule, the Sixth Circuit has held that the filing of a false disciplinary charge against a

prisoner in and of itself resulted in adverse action even though the charge did not result in a

finding of guilt.[123]  Of course, that is not a holding of the *Second* Circuit.  Furthermore, at least

one district court in the Second Circuit has held that, even where there was a disciplinary

conviction, the filing of the disciplinary charge giving rise to the conviction was not sufficient

---

[122]     To read *Franco* as supporting such a proposition would, in my view, be to commit
the informal fallacy of logic known as "denying the antecedent."  Patrick J. Hurley, *A Concise
Introduction to Logic* 296-97 (Wadsworth Pub'lg Co., 3d ed., 1988).  Simply stated, just because
punishment (following a conviction on false disciplinary charge) constitutes adverse action does
not mean that the *absence* of punishment does not constitute adverse action.

[123]     *See Brown v. Crowley*, 312 F.3d 782, 789 (6th Cir. 2002) ("Although Brown was
already in administrative segregation and a hearing officer ultimately found him not guilty, the
issuance of the major misconduct charge subjected him to the risk of significant sanctions. . . .  A
reasonable jury could conclude that being subjected to the risk of such severe sanctions for
raising a legitimate complaint "would deter a person of ordinary firmness from continuing to
engage in that [protected] conduct.").

adverse action because the conviction resulted in only a loss of various privileges.[124]

Fortunately, I need not resolve this issue under the circumstances, because I find merit in Defendants' alternative argument, specifically, their argument that Plaintiff has adduced no admissible record evidence establishing that there was a *causal connection* between the protected speech and the adverse action.

In nine paragraphs of their Rule 7.1 Statement, Defendants assert, in chronological order, numerous facts regarding the events giving rise to Defendant Emrich's issuance of the referenced misbehavior report, which occurred on January 20, 2005.  (Dkt. No. 39, Part 44, ¶¶ 71-79 [Defs.' Rule 7.1 Statement].)  Defendants support each of these factual assertions with accurate record citations, as they are required to do under Local Rule 7.1(a)(3).  (*Id.*)

In his opposition papers, Plaintiff does not submit a Rule 7.1 Response that "mirror[s] [Defendants' Rule 7.1 Statement] by admitting and/or denying each of [Defendants'] assertions in matching numbered paragraphs," as he is required to do under Local Rule 7.1(a)(3).  Instead, Plaintiff submits what he calls an "Unsworn Declaration / 7.1 Statement of Facts / Affirmation in Support of Petition."  (Dkt. No. 42, Part 1, at 3.)  Buried in that thirty-nine-page document are ten paragraphs that (in topical, not chronological order) are deficient in several ways: (1) they deny only *some* of Defendants' factual assertions, failing to deny others; (2) generally, they fail to support those denials with accurate citations to admissible record evidence, or they support those

_____

[124]     *See Bartley v. Collins*, 95-CV-10161, 2006 U.S. Dist. LEXIS 28285, at *21 (S.D.N.Y. May 12, 2006) ("Bates' misbehavior report against plaintiff and Collins's first report, which both resulted in plaintiff's temporary loss of various privileges such as permission to visit the commissary, likewise do not constitute adverse action because they were *de minimis*: they do not constitute penalties that would deter a similarly situated prisoner of ordinary firmness from exercising his constitutional rights.") [citations omitted].

denials with only challenges to the credibility of certain affidavit testimony relied on by

Defendants; and (3) they assert additional facts that are either unsupported by accurate citations

to admissible record evidence or that are immaterial to the issue of whether Defendant Emrich

would have issued Plaintiff the referenced misbehavior report even if Plaintiff had not engaged in

constitutionally protected conduct (by filing grievances against Defendant Emrich and other

S.H.U. officers on January 9, 11 and 15, 2005).  (Dkt. No. 42, Part 1, ¶¶ 85-94.)

      Given these patent flaws in Plaintiff's Rule 7.1 Response, I decline (and I recommend that

the Court also decline) to engage in the *sua sponte* comparison of unmatching factual assertions

contained in Plaintiff's Rule 7.1 Response (and scouring of the record) that would be necessary to

determine if the record contains admissible evidence creating an issue of fact regarding each of

the assertions made by Defendants.  The Court has no such duty, even if the non-movant is

proceeding *pro se*.  (*See*, *supra*, note 53 of this Report-Recommendation.)  This is because even

*pro se* plaintiffs must obey the Court's procedural rules.  (*See*, *supra*, note 54 of this Report-

Recommendation.)  In particular, this Court has rather consistently enforced Local Rule

7.1(a)(3), by deeming facts set forth in a moving party's statement to have been admitted where

the opposing party has failed to properly respond to that Statement–even where the opposing

party was proceeding *pro se* in a civil rights case.  (*See*, *supra*, note 55 of this Report-

Recommendation.)

      Deemed admitted, then, are the factual assertions contained in Paragraphs 71 through 79

of Defendants' Rule 7.1 Statement.  Among other things, those facts establish as follows: (1) in

his misbehavior report dated January 20, 2005, Defendant Emrich charged Plaintiff with having

damaged his cell in S.H.U. by removing caulking from around the door casing; (2) in his

misbehavior report, Defendant Emrich indicated that he had inspected Plaintiff's cell after

Plaintiff had been transferred out of it, and that he had found the caulking missing; (3) at

Plaintiff's disciplinary hearing on January 26, 2005, the hearing officer (Defendant Don) was

presented with, among other documents, a Cell Property Inventory form that Plaintiff had signed

upon entering his cell in S.H.U. (on January 6, 2005), which contained no notification of any

damage to the cell; (4) at his disciplinary hearing, Plaintiff did not contest the fact that caulking

had been removed from the cell (but he contended that the caulking could have been removed by

another inmate prior to Plaintiff's being transferred into the cell); (5) from his years at

Gouverneur C.F., Defendant Don was aware that S.H.U. cells are routinely inspected for damage

anytime an inmate vacates a cell and before another inmate is placed in the cell; (6) after the

disciplinary hearing, Defendant Don found Plaintiff guilty of having damaged the cell; and (7) on

appeal from his disciplinary conviction, Plaintiff had no objection to the manner in which

Defendant Don had conducted the hearing.[125]  These facts, in and of themselves, indicate that the

cause of Plaintiff's receipt of the January 20, 2005, misbehavior report authored by Defendant

Emrich was reason to believe that Plaintiff indeed removed the caulking from around the door

casing of his cell in S.H.U. at some point between January 6, 2005, and January 20, 2005.

     Plaintiff argues that, to the contrary, the record contains evidence that Defendant Emrich

issued the misbehavior report with a "retaliatory motive," as "getback" against Plaintiff for

having filed a grievance against Defendants Emrich, McAdam and Sheridan (and C.O. Glarin).

---

[125]     In addition to being supported by the record evidence cited by Defendants in their
Rule 7.1 Statement (i.e., Dkt. No. 39, Part 20, at 3 [Ex. 16 to Seaman Affid.]), I note that this
factual assertion is supported by other record evidence.  (*See, e.g.,* Dkt. No. 39, Part 20, at 1-2
[Ex. 16 to Seaman Affid.]; Dkt. No. 39, Part 4, at 180-81 [Ex. A to Seaman Affid., attaching
Plf.'s deposition transcript].)

(Dkt. No. 44, Part 3, at 14-15 [Plf.'s Memo. of Law].)  In support of that argument, Plaintiff

offers the following sworn assertion: "On January 19, [2005,] after I was informed that I was

being transferred to the facility's 'S-Block' SHU and my property was packed, Off. Emrich asked

me: 'Do you know what tomorrow is?'  I responded: 'Just another day in jail.'  He retorted:

'Wrong.  You'll see.'"  (Dkt. No. 1, ¶ 6, Attached Page 13 [Plf.'s Compl.].)

       For the sake of brevity, I will set aside the fact that Defendant Emrich could have been

referring to Plaintiff's transfer to the S-Block S.H.U. on or about January 20, 2005, where

Plaintiff asserts he was strip-searched and subjected to a vague threat by another correctional

officer "with no incident."  (*Id*.)  I will also set aside the fact that, even if Defendant Emrich was

referring to the misbehavior report, he could have already obtained reason to *suspect* that the

caulk was missing (e.g., during the packing of Plaintiff's property).  I will also set aside the fact

that Defendant Emrich's statement is devoid of any reference to any grievance filed by Plaintiff.  I

will also set aside the fact that Plaintiff has failed to point to where, if anywhere, in the lengthy

record before the Court there exists (1) the grievance to which Plaintiff refers and (2) evidence

that, before January 20, 2005, Defendant Emrich *knew* of that grievance

       The more serious problem (at least from Plaintiff's perspective) with the referenced sworn

assertion is that it in no way establishes that adequate grounds did *not* exist on January 20, 2005,

upon which to issue Plaintiff a misbehavior report for destruction of property.  For example, the

sworn assertion does not dispute the established fact that the referenced Cell Property Inventory

form reflected no damage to the cell when Plaintiff entered it on January 6, 2005.  Nor does the

sworn assertion dispute the established fact that, in Defendant Don's experience, S.H.U. cells are

routinely inspected for damage anytime an inmate vacates a cell and before another inmate is

placed in the cell.  Nor does the sworn assertion dispute the established fact that, at his

disciplinary hearing, Plaintiff did not contest that the caulking had been removed from the cell.

Nor does the sworn assertion dispute the established fact that Plaintiff's disciplinary conviction

on January 26, 2005, was never subsequently overruled on appeal.  Simply stated, I can find no

record evidence from which a rational fact-finder could conclude that Plaintiff would not have

received the referenced misbehavior report anyway, even without the alleged retaliatory motive.

For these reasons, I recommend that, under Fed. R. Civ. P. 56, the Court dismiss

Plaintiff's retaliation claim against Defendant Emrich.

**F.    Whether Plaintiff's Retaliation Claim Against Defendant Sobek Should Be Dismissed *Sua Sponte* for Failure to State a Claim**

As stated above, in addition to the retaliation claim asserted against Defendant Emrich,

Plaintiff has asserted a retaliation claim against Defendant Sobek.  Specifically, Plaintiff has

alleged that, on or about January 8, 2005, Defendant Sobek intentionally filed a false

misbehavior report against Plaintiff in retaliation for his having engaged in constitutionally

protected activity by helping inmates with their legal research and writing (as part of his job as a

law clerk in the law library).[126]

Even construed with the utmost of special leniency, Plaintiff's Complaint has not alleged

facts plausibly suggesting that the activity in which he claims to have engaged was protected

under the First Amendment.  To the contrary, Plaintiff alleges that the protected activity in which

he had engaged consisted of his performing his job as a "library clerk" by "help[ing] people with

their law work" *in his "housing unit" at Gouverneur C.F.*  (Dkt. No. 1, Attached Page 2 [Plf.'s

---

[126]    (Dkt. No. 1, ¶ 6, & Attached Pages 1-3, 8 [Plf.'s Compl.].)

Compl.] [emphasis added].)  Plaintiff further alleges that it was Defendant Sobek's position that

Plaintiff's job as a library clerk authorized him to help people with their law work "in the law

library, not here in the housing unit."  (*Id.*)[127]  That fact distinguishes this case from the case of

*Auleta v. LaFrance*, in which Judge Kahn held that, based on an application of the four factors

set forth in *Turner v. Safley*, 482 U.S. 78 (1987), a prisoner had sufficiently alleged that he had

engaged in protected activity under the First Amendment where he alleged that the activity

consisted of his giving another inmate "authorized" legal advice as part of his prison work

assignment.  *See Auleta v. LaFrance*, 233 F. Supp.2d 396, 398-401 (N.D.N.Y. 2002) (Kahn, J.).

In any event, even construed with the utmost of special leniency, Plaintiff's Complaint has

not alleged facts plausibly suggesting that it was the alleged retaliatory motive that *caused* him to

receive the referenced misbehavior report.[128]  To the contrary, Plaintiff alleges that, before being

issued the referenced misbehavior report, he exchanged a look with another inmate, and

"proceeded to hold [his] hands in front of [himself] and shake them, physically imitating

someone who is scared," which resulted in "some laughter from the other prisoner," and

Defendant Sobek becoming "angry."  (Dkt. No. 1, ¶ 6 & Attached Page 1 [Plf.'s Compl.].)

Plaintiff also alleges that, when he later asked why Defendant Sobek had requested Plaintiff's

---

[127]     *See* 7 N.Y. C.R.R. 270.2(b)(26)(vii) ("An inmate may not provide legal assistance
to another inmate without prior approval of the superintendent or designee."); *Rivera v.
Coughlin*, 620 N.Y.S.2d 505, 543 (N.Y.S. 3d Dept., 1994) ("[T]he approval of the law librarian
administrator or Superintendent must be obtained when [legal assistance by an inmate law clerk]
is being provided.  Without such approval, the assistance is unauthorized.").

[128]     The misbehavior report, which may be deemed to be incorporated by reference
into Plaintiff's *pro se* civil rights Complaint for purposes of a failure-to-state-a-claim analysis, is
attached at Dkt. No. 39, Part 9.  The disciplinary conviction disposition, which may also be
deemed to be incorporated by reference into Plaintiff's *pro se* civil rights Complaint for purposes
of a failure-to-state-a-claim analysis, is attached at Dkt. No. 39, Part 17.

identification card after the incident, Defendant Sobek responded, "Maybe to write you up . . . for holding up my count. . . . [and to] teach you not to make fun of me." (*Id.* at Attached Page 1.) Plaintiff also alleges that it was only after Plaintiff accused Defendant Sobek of having a "fragile little ego" that Defendant Sobek angrily summoned Plaintiff to a locked room and told him, "I am tired of you doing other people's legal work [in the housing unit] and sticking your nose into business that doesn't concern you." (*Id.* at Attached Page 2.)  Finally, it should be noted that Plaintiff has alleged that he was ultimately convicted of the disciplinary charge leveled by Defendant Sobek, and that the conviction was affirmed on appeal, plausibly suggesting that what caused him to receive the referenced misbehavior report was his own misconduct.[129]

For both of these alternative reasons, <u>I recommend that the Court *sua sponte* dismiss Plaintiff's retaliation claim against Defendant Sobek, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b), and Fed. R. Civ. P. 12(b)(6).</u>

### G. Whether Plaintiff's Procedural Due Process Claims Should Be Dismissed for Failure to State a Claim, or, in the Alternative, Due to Lack of Evidence

As stated above, Defendants argue that Plaintiff's procedural due process claims (arising from his disciplinary hearings) should be dismissed because, based on the record evidence, he did not enjoy a protected liberty interest giving rise to such claims and, in any event, he was afforded all the process he was due at the hearings.[130]  Although I do not read Defendants' motion papers as also attacking the pleading sufficiency of these procedural due process claims, that fact does not prohibit the Court from reviewing that pleading sufficiency.  This is because, as stated

---

[129]   (Dkt. No. 1, ¶ 7, "Sixth Cause of Action" [Plf.'s Compl.]; Dkt. No. 1, ¶ 6, Attached Pages 12-14 [Plf.'s Compl.].)

[130]   (Dkt. No. 39, Part 45, at 9-12, 15-16 [Defs.' Memo. of Law].)

elsewhere in this Report-Recommendation, the Court has the authority (and indeed the duty) to review the pleading sufficiency of *pro se* prisoner civil rights claims *sua sponte*, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b).  As a result, I do so here.

"[Courts] examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State . . . ; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Kentucky Dept. of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).  With regard to the first question, in 1995, the Supreme Court held in *Sandin v. Connor* that liberty interests protected by the Fourteenth Amendment's Due Process Clause will not arise from the use of mandatory language of a particular state law or regulation, but "will generally be limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin v. Connor*, 515 U.S. 472, 483-484 (1995).

### 1.    Hearing Conducted by Defendant Don on January 11, 2005

Even when construed with the utmost of special leniency, Plaintiff's Complaint alleges facts plausibly suggesting that the disciplinary hearing conducted by Defendant Don on January 11, 2005 (i.e., the hearing on the January 6, 2005, misbehavior report issued by Defendant Sobek) resulted in a sentence of twenty (20) days in disciplinary confinement with a corresponding loss of privileges.  (Dkt. No. 1, ¶ 6, Attached Pages 10, 14 [Plf.'s Compl.].)  Based on these factual allegations, I find that Plaintiff has failed to state a procedural due process claim: more specifically, I find that Plaintiff has not alleged facts plausibly suggesting that he possessed, during the disciplinary hearing, a liberty interest that was protected by the Fourteenth

Amendment.  Numerous district courts in this Circuit have issued well-reasoned decisions

finding no atypical and significant hardship experienced by inmates who served sentences in

*Special Housing Units* (the conditions in which are ordinarily more restrictive than are the

conditions in keeplock confinement) of far more than the twenty (20) days alleged here–even

where the conditions of confinement in the Special Housing Units were, to varying degrees, more

restrictive than those in the prison's general population.[131]

      Even if I were to proceed to an analysis of the record evidence establishing how much

time Plaintiff served in S.H.U. as a result of this disciplinary conviction (under a summary

judgment analysis), I would find that Plaintiff has failed to establish that he possessed (at the

disciplinary hearing) a liberty interest that was protected by the Fourteenth Amendment.  This is

because the record contains uncontroverted evidence that the disciplinary hearing in question

resulted in a sentence of twenty (20) days in keeplock confinement, to start on January 6, 2005

(the day on which Plaintiff had been admitted to the Short-Term S.H.U.), and a corresponding

---

[131]    *See, e.g., Spence v. Senkowski,* 91-CV-0955, 1998 WL 214719, at *3 (N.D.N.Y. Apr. 17, 1998) (McCurn, J.) (180 days that plaintiff spent in S.H.U., where he was subjected to numerous conditions of confinement that were more restrictive than those in general population, did not constitute atypical and significant hardship in relation to ordinary incidents of prison life); *accord*, *Husbands v. McClellan*, 990 F. Supp. 214, 217-19 (W.D.N.Y. 1998) (180 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Warren v. Irvin*, 985 F. Supp. 350, 353-56 (W.D.N.Y. 1997) (161 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Ruiz v. Selsky*, 96-CV-2003, 1997 WL 137448, at *4-6 (S.D.N.Y. 1997) (192 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Horne v. Coughlin*, 949 F. Supp. 112, 116-17 (N.D.N.Y. 1996) (Smith, M.J.) (180 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Nogueras v. Coughlin*, 94-CV-4094, 1996 WL 487951, at *4-5 (S.D.N.Y. Aug. 27, 1996) (210 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Carter v. Carriero*, 905 F. Supp. 99, 103-04 (W.D.N.Y. 1995) (270 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population).

loss of privileges.[132]

Because Plaintiff did not (in connection with his January 11, 2005, disciplinary hearing) enjoy a liberty interest that was protected by the Fourteenth Amendment, the Court need not proceed to Defendants' argument that (1) Plaintiff waived any procedural objections during that hearing, or (2) in the alternative, Plaintiff has failed to establish that Defendant Don denied Plaintiff any process to which he was due at that hearing (by being biased or otherwise).  (Dkt. No. 39, Part 45, at 9-10 [Defs.' Memo. of Law].)  In the interest of brevity, I will not address those arguments, except to report that, having reviewed the record, I can find no record evidence that exists from which a rational fact-finder could conclude that Defendant Williams denied Plaintiff any process to which he was due at that hearing (by being biased or otherwise).

For these reasons, I recommend that, under Fed. R. Civ. P. 56, the Court dismiss Plaintiff's procedural due process claims regarding the disciplinary hearing conducted by Defendant Don on January 11, 2005.  In the alternative, I recommend that the Court dismiss that claim under Fed. R. Civ. P. 12(b)(6).

---

[132]    Defendants assert this fact in Paragraph 55 of their Rule 7.1 Statement, supporting that factual assertion with an accurate record citation, as they are required to do under Local Rule 7.1(a)(3).  (Dkt. No. 39, Part 44, ¶ 55 [Defs.' Rule 7.1 Statement].)  In his opposition papers, Plaintiff does not submit a Rule 7.1 Response that "mirror[s] [Defendants' Rule 7.1 Statement] by admitting and/or denying each of [Defendants'] assertions in matching numbered paragraphs," as he is required to do under Local Rule 7.1(a)(3).  Instead, Plaintiff submits what he calls an "Unsworn Declaration / 7.1 Statement of Facts / Affirmation in Support of Petition."  (Dkt. No. 42, Part 1, at 3.)  Buried in that thirty-nine-page document are four paragraphs that *purport* to respond to the assertions contained in Paragraphs 53 through 55 of Defendants' Rule 7.1 Statement but that do not actually do so.  (Dkt. No. 42, Part 1, ¶¶ 50-53.)  Thus, the fact in question is deemed admitted for purposes of Defendants' motion, pursuant to Local Rule 7.1(a)(3).  Even if the fact were not deemed admitted, I would find sufficient evidence in the record to establish it.  (*See* Dkt. No. 39, Part 17, at 1 [Ex. 13 to Seaman Affid., attaching Def. Don's Jan. 11, 2005, Disciplinary Hearing Disposition]; Dkt. No. 39, Part 4, at 187-89 [Ex. A to Seaman Affid., attaching Plf.'s deposition transcript].)

## 2.     Hearing Conducted by Defendant Williams on January 12-13, 2005

I reach the same conclusion (that I reached in Part III.G.1. of this Report-Recommendation) with regard to Plaintiff's procedural due process claim against Defendant Williams arising out of the disciplinary hearing he conducted on January 12 and 13, 2005.

Even when construed with the utmost of special leniency, Plaintiff's Complaint alleges facts plausibly suggesting that the disciplinary hearing conducted by Defendant Williams on January 12 and 13, 2005 (i.e., the hearing on the January 10, 2005, misbehavior report issued by Defendant McAdam) resulted in a sentence of (1) one hundred twenty (120) days confinement in S.H.U. to run *concurrently* with the previously imposed sentence of twenty (20) days in keeplock confinement, and (2) a corresponding loss of privileges to run *consecutively* to the previously imposed sentence of twenty (20) days of loss of privileges.  (Dkt. No. 1, ¶ 6, Attached Page 10-11, 14 [Plf.'s Compl.].)  Furthermore, even if I were to proceed to an analysis of the record evidence establishing how much time Plaintiff served in S.H.U. as a result of this disciplinary conviction (under a summary judgment analysis), I would find that Plaintiff has failed to establish that he possessed (at the disciplinary hearing) a liberty interest that was protected by the Fourteenth Amendment.  This is because the record contains uncontroverted evidence that the disciplinary hearing in question resulted in a sentence of only one hundred twenty (120) days in S.H.U. confinement.[133]

---

[133]     Defendants assert this fact in Paragraph 65 of their Rule 7.1 Statement, supporting that factual assertion with an accurate record citation, as they are required to do under Local Rule 7.1(a)(3).  (Dkt. No. 39, Part 44, ¶ 55 [Defs.' Rule 7.1 Statement.])  In his opposition papers, Plaintiff does not submit a Rule 7.1 Response that "mirror[s] [Defendants' Rule 7.1 Statement] by admitting and/or denying each of [Defendants'] assertions in matching numbered paragraphs," as he is required to do under Local Rule 7.1(a)(3).  Instead, Plaintiff submits what he calls an "Unsworn Declaration / 7.1 Statement of Facts / Affirmation in Support of Petition."  (Dkt. No.

As stated above in Part III.G.1. of this Report-Recommendation, numerous district courts in this Circuit have issued well-reasoned decisions finding no atypical and significant hardship experienced by inmates who served sentences in Special Housing Units of far more than the one hundred (120) days at issue here.[134]

Because Plaintiff did not (in connection with his January 12 and 13, 2005, disciplinary hearing) enjoy a liberty interest that was protected by the Fourteenth Amendment, the Court need not proceed to Defendants' argument that (1) Plaintiff waived any procedural objections during that hearing, or (2) in the alternative, Plaintiff has failed to establish that Defendant Williams denied Plaintiff any process to which he was due at that hearing.  (Dkt. No. 39, Part 45, at 10-11 [Defs.' Memo. of Law].)  However, in the interest of thoroughness, I will analyze that argument.

Defendants assert that, at his deposition, Plaintiff identified four errors allegedly committed by Defendant Williams at the hearing in question: (1) a procedural error based on a violation of a New York State regulation requiring everyone present at an incident to either submit an incident report or endorse a report prepared by another; (2) a procedural error based on a violation of a New York State regulation requiring that misbehavior reports be written as soon

---

42, Part 1, at 3.)  Buried in that thirty-nine-page document are eight paragraphs that purportedly respond to the assertions contained in Paragraphs 65 through 70 of Defendants' Rule 7.1 Statement.  (Dkt. No. 42, Part 1, ¶¶ 77-84.)  Buried further in those eight paragraphs is an acknowledgment by Plaintiff that, following the disciplinary hearing on January 12 and 13, 2005, Defendant Williams imposed a sentence of "4 months."  (*Id*. at ¶ 80.)  Thus, the fact in question is deemed admitted for purposes of Defendants' motion, pursuant to Local Rule 7.1(a)(3).  Even if the fact were not deemed admitted, I would find sufficient evidence in the record to establish it.  (*See* Dkt. No. 39, Part 18, at 1 [Ex. 14 to Seaman Affid., attaching Def. Williams' Jan. 13, 2005, Disciplinary Hearing Disposition]; Dkt. No. 39, Part 4, at 187-89 [Ex. A to Seaman Affid., attaching Plf.'s deposition transcript].)

[134]    *See*, *supra*, note 131 of this Report-Recommendation.

as practicable after the underlying incidents; (3) bias; and (4) either altering or causing to be altered the transcript of the disciplinary hearing transcript, in order to conceal the fact that, when Defendant McAdam testified at the hearing from home via telephone, there was rustling of paper, giving the appearance that he was reading from his misbehavior report rather than testifying from personal knowledge.  (Dkt. No. 39, Part 44, ¶¶ 59-64 [Defs.' Rule 7.1 Statement].)  Defendants argue that the first two errors are not actionable under the Fourteenth Amendment and 42 U.S.C. § 1983, and that the second two errors are unsupported by any record evidence.  (Dkt. No. 39, Part 45, at 11 [Defs.' Memo. of Law]; Dkt. No. 39, Part 44, ¶¶ 59-64 [Defs.' Rule 7.1 Statement].)

In response to Defendants' argument about the first error, Plaintiff argues (in his Rule 7.1 Response) that, by violating 7 NYCRR § 251-3.1(b) (the New York State regulation requiring every DOCS employee present an the incident of inmate misbehavior to either submit an incident report or endorse a report prepared by another employee),[135] Defendant Williams violated the Fourteenth Amendment and 42 U.S.C. § 1983.[136]  Of course, Plaintiff's "response" is no real response at all, but merely an attempt to shout even louder that Defendant Williams violated the Fourteenth Amendment *because* he violated a New York State regulation.  Defendants are correct.

---

[135]    Title VII, Section 251-3.1(b), of the New York Compilation of Codes, Rules and Regulations provides as follows: "The misbehavior report shall be made by the employee who has observed the incident or who has ascertained the facts of the incident.  Where more than one employee has personal knowledge of the facts, each employee shall make a separate report or, where appropriate, each employee shall endorse his/her name on a report made by one of the employees."  7 N.Y.C.R.R. § 251-3.1(b).

[136]    (Dkt. No. 42, Part 1, ¶¶ 56-59 [Plf.'s Rule 7.1 Response].)

Section 1983 provides, in pertinent part, "Every person who . . .subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by *the Constitution and laws*, shall be liable to the party injured . . . ."  42 U.S.C. § 1983 [emphasis added].  The term "the Constitution and laws" refers to United States Constitution and *federal* laws.[137]  A violation of a state law or regulation, in and of itself, does not give rise to liability under 42 U.S.C. § 1983.[138]  Granted, it is true that a state may, under certain circumstances, create a liberty interest protected by the Fourteenth Amendment's Due Process Clause through its enactment of certain statutory or regulatory measures.  However, as described above in Part III.G. of this Report-

[137]    *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970) ("The terms of § 1983 make plain two elements that are necessary for recovery.  First, the plaintiff must prove that the defendant has deprived him of a right secured by the 'Constitution and laws' *of the United States*.") [emphasis added]; *Patterson v. Coughlin*, 761 F.2d 886, 890 (2d Cir. 1985) ("Recovery under 42 U.S.C. § 1983 . . . is premised upon a showing, first, that the defendant has denied the plaintiff a constitutional or *federal* statutory right. . . .") [citation omitted; emphasis added]; *Fluent v. Salamanca Indian Lease Auth.*, 847 F. Supp. 1046, 1056 (W.D.N.Y. 1994) ("The initial inquiry in a § 1983 action is whether the Plaintiff has been deprived of a right 'secured by the Constitution and laws' *of the United States*.") [emphasis added].

[138]    *See Russell v. Selsky*, 35 F.3d 55, 59-61 (2d Cir. 1994) (even though Section 254.1 was violated by having same person act as review and hearing officer, due process rights of inmate were not violated because "[f]ederal constitutional standards rather than state statutes define the requirements of procedural due process") [citations omitted]; *Doe v. Conn. Dept. of Child & Youth Servs.*, 911 F.2d 868, 869 (2d Cir. 1990) ("[A] violation of state law neither gives [plaintiff] a § 1983 claim nor deprives defendants of the defense of qualified immunity to a proper § 1983 claim."); *Patterson*, 761 F.2d at 891 ("[A] state employee's failure to conform to state law does not in itself violate the Constitution and is not alone actionable under § 1983 . . . .") [citation omitted]; *Murray v. Michael*, 03-CV-1434, 2005 WL 2204985, at *10 (N.D.N.Y. Sept. 7, 2005) (DiBianco, M.J.) ("[A]ny violations of state regulations governing the procedures for disciplinary hearings . . . do not rise to the level of constitutional violations.") [citation omitted]; *Rivera v. Wohlrab*, 232 F. Supp.2d 117, 123 (S.D.N.Y. 2002) ("[V]iolations of state law procedural requirements do not alone constitute a deprivation of due process since '[f]ederal constitutional standards rather than state law define the requirements of procedural due process.'") (citing *Russell v. Coughlin*, 910 F.2d 75, 78 n.1 [2d Cir. 1990]).

Recommendation, in order for a state to create a liberty interest protected by the Fourteenth

Amendment's Due Process Clause, the interest will not arise from the use of mandatory language

of a particular state law or regulation; rather, the interest "will generally be limited to freedom

from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the

ordinary incidents of prison life." *Sandin v. Connor*, 515 U.S. 472, 483-84 (1995).[139]

Moreover, I find that, even if Defendants Snyder and Cushman had indeed been present at

the incident and failed to sign the misbehavior report (as Plaintiff argues), there would have been

no violation of 7 N.Y.C.R.R. § 251-3.1(b).  Section 251-3.1(b), which

requires an endorsement of other DOCS employees present at the incident only "where

appropriate,"[140] has consistently been construed as containing what is in essence a *materiality*

requirement.  As a result, in order for there to have been a violation of Section 251-3.1(b), an

inmate must show that the failure to endorse the misbehavior report caused him *prejudice*.[141]

---

[139]     *See also Blouin v. Spitzer*, 356 F.3d 348, 362-363 (2d Cir. 2004) (recognizing abrogation of prior rule which focused on language of state regulation); *accord*, *Anderson v. Recore*, 317 F.3d 194, 198-200 (2d Cir. 2003); *Watson v. City of N.Y.*, 92 F.3d 31, 37-38 (2d Cir. 1996); *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996).

[140]     *See*, *supra*, note 135 of this Report-Recommendation.

[141]     *See Roman v. Selsky*, 705 N.Y.S.2d 88, 89 (N.Y.S. App. Div., 3d Dept. 2000) ("Although the misbehavior report charging petitioner with possession of drug paraphernalia and possession of authorized articles in an unauthorized area was endorsed by only one of the two correction officers who conducted the search, petitioner has not demonstrated that he was prejudiced in any way by this harmless technical defect . . . .") [citation omitted]; *Crosby v. Goord*, 701 N.Y.S.2d 752, 753 (N.Y.S. App. Div., 3d Dept. 2000) ("[A]lthough the correction officer who initially observed petitioner with the weapon did not also endorse the misbehavior report, this technical defect was, at most, harmless error under the circumstances presented herein . . . .") [citation omitted]; *Adams v. Stinson*, 699 N.Y.S.2d 746, 747 (N.Y.S. App. Div., 3d Dept. 1999) ("While the correction officer who observed petitioner throwing the razor failed to endorse or prepare the misbehavior report . . ., under the circumstances presented here, any such error is harmless inasmuch as petitioner has failed to demonstrate any prejudice resulting

There can be no such prejudice where the employees who failed to endorse the report either (1) testified at the hearing or (2) had their testimony waived by the inmate.[142]  Here, Plaintiff waived his right to call Defendants Snyder and Cushman at the hearing.  The only witness he called was Defendant McAdam–and Defendant Synder "*if Officer McAdam is not available.*"  (Dkt. No. 39, Part 12, at 1-2, 6 [Ex. 8 to Seaman Affid.] [emphasis added].)   However, Defendant McAdam was in fact available to testify, and did so.  (*Id*. at 8-10.)  Furthermore, following that testimony, Plaintiff stated that he had no further witnesses that he would like to call.  (*Id*. at 11-12.)[143]

---

therefrom . . . .") [citations omitted]; *Mosley v. Goord*, 662 N.Y.S.2d 882, 907 (N.Y.S. App. Div., 4th Dept. 1997) ("[A]lthough it appears that one of the correction officers involved in the search of petitioner's cube did not sign the misbehavior report . . ., that omission does not provide a basis for annulment; petitioner has not demonstrated that he was prejudiced thereby.") [citations omitted]; *Rodriquez v. Coombe*, 656 N.Y.S.2d 405, 406 (N.Y.S. App. Div., 3d Dept. 1997) ("Even assuming that there were employees with personal knowledge who failed to sign the reports, petitioner demonstrated no prejudice as a result of such omission.  Therefore, the technical defect, if any, was harmless . . . .") [citations omitted]; *Bolling v. Coombe*, 651 N.Y.S.2d 632, 633 (N.Y.S. App. Div., 3d Dept. 1996) ("Although the misbehavior report filed against petitioner, which was prepared by the correction officer who tested the contraband, was endorsed by only one of the two correction officers who conducted the search, petitioner has not demonstrated that he was prejudiced in any way by the omission of the second officer's signature.  Accordingly, this technical defect was harmless.") [citations omitted]; *Smith v. Walker*, 618 N.Y.S.2d 477, 477-78 (N.Y.S. App. Div., 3d Dept. 1994) ("As for the absence from the misbehavior report of the signatures of other correction officers who witnessed the incident, we note that petitioner has failed to demonstrate any prejudice accruing to him as a result.").

[142]   *See Smythe v. McClellan*, 641 N.Y.S.2d 144, 145 (N.Y.S. App. Div., 3d Dept. 1994) ("[I]nasmuch as the correction officers who witnessed the incident either testified at the hearing or had their testimony waived by petitioner, the failure of certain officers to endorse the misbehavior report in no way prejudiced petition . . . .") [citations omitted]; *cf. Davis v. Goord*, 799 N.Y.S.2d 636, 639 (N.Y.S. App. Div., 3d Dept. 2005) ("[N]o prejudice was shown from the fact that the misbehavior report was not endorsed by the officers other than the report's author, as all testified at the hearing.") [citations omitted].

[143]   (*See also* Dkt. No. 39, Part 4, at 171 [Ex. A to Seaman Affid., attaching Plf.'s deposition transcript, admitting that Plaintiff requested only one witness at the hearing, Def. McAdam].)

In response to Defendants' argument about the second error, Plaintiff argues that, by

violating 7 N.Y.C.R.R. § 251-3.1(a) (the New York State regulation requiring that a misbehavior

report be written as soon as practicable after the underlying incident),[144] Defendant Williams

violated the Fourteenth Amendment and 42 U.S.C. § 1983.[145] Again, Plaintiff is mistaken for the

same reasons as described above: a violation of a state law or regulation, in and of itself, does not

give rise to liability under 42 U.S.C. § 1983.  Furthermore, it is extremely questionable to me that

there was indeed a violation of 7 N.Y.C.R.R. § 251-3.1(a), based on the current record.[146]

In response to Defendants' argument about the third error, Plaintiff argues that Defendant

Williams' bias is evident from the following: (a) the fact that he "deceitfully" tried to "distort the

record" by substituting a Sergeant Skeldon (who was not present at any time during the incident

giving rise to the misbehavior report) as the sergeant who was present with Officer McAdam

during that incident, in order to "circumvent" Plaintiff's objection that Sergeant Snyder (who *was*

---

[144]     Title VII, Section 251-3.1(a), of the New York Comp Rules and Regulations provides as follows: "Every incident of inmate misbehavior involving danger to life, health, security or property must be reported, in writing, as soon as practicable."  7 N.Y.C.R.R. § 251-3.1(a).

[145]     (Dkt. No. 42, Part 1, ¶¶ 60-66 [Plf.'s Rule 7.1 Response].)

[146]     *See Greene v. Coombe*, 662 N.Y.S.2d 148, 149 (N.Y.S. App. Div., 3d Dept. 1997) (misbehavior report prepared "as soon as practicable" for purposes of N.Y.C.R.R. § 251-3.1[a], where incident occurred on January 2, report was prepared on January 4, and report was served on January 5); *Santiago v. Senkowski*, 704 N.Y.S.2d 676, 676-77 (N.Y.S. App. Div., 3d Dept. 2000) ("[T]here is no requirement that the report be prepared the day of the incident.") [citations omitted]; *Hamilton v. Selsky*, 785 N.Y.S.2d 811, 812-13 (N.Y.S. App. Div., 3d Dept. 2004) ("[T]he fact that the misbehavior report was written a day after the incident is not a fatal defect as the regulations do not require that it be written on the same day . . . .") [citation omitted].

present during the incident) failed to sign the misbehavior report, as he was required to do;[147] (b) the fact that Defendant Williams "remained deceitfully silent" about (what Plaintiff perceived to be) evidence that the misbehavior report in question was not written when it stated it was written;[148] and (c) the fact that he convicted Plaintiff despite the lack of evidence supporting a conviction.[149]  I disagree.  I can find no evidence in the record of any such bias.

Even assuming, for the sake of argument, that Defendant Williams did commit some sort of procedural error at the hearing in question, I can find no evidence that such an error was caused by some type of bias (e.g., an impermissible conflict of interest, etc.) rather than being caused by simple error.  *See Saunders v. Ricks*, 03-CV-0598, 2006 WL 3051792, at *11 (N.D.N.Y. Oct. 18, 2006) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.).[150] Furthermore, I find Plaintiff's argument that Defendant Williams' finding of guilt constitutes

---

[147]    (Dkt. No. 42, Part 3, at 13-14 [Plf.'s Opp. Memo. of Law]; Dkt. No. 42, Part 1, ¶¶ 56, 58, 65 [Plf.'s Rule 7.1 Response] [emphasis in original].)

[148]    (Dkt. No. 42, Part 1, ¶¶ 62-65 [Plf.'s Rule 7.1 Response].)

[149]    (Dkt. No. 42, Part 1, ¶¶ 67-70 [Plf.'s Rule 7.1 Response].)

[150]    It should be remembered that

> the degree of impariality required of prison hearing officials does not rise to the level of that required of judges generally.  Because of the special characteristics of the prison environment, it is permissible for the impariality of such officials to be encumbered by various conflicts of interest that, in other contexts, would be adjudged of sufficient magnitude to violate due process.

*Francis v. Coughlin*, 891 F.2d 43, 46 (2d Cir. 1989) [citation omitted].

evidence of bias to be wholly circular and conclusory. *Saunders*, 2006 WL 3051792, at *11.[151]

Finally, in response to Defendants' argument about the fourth error (specifically their argument that the record is clear that Defendant Williams did not prepare the hearing transcript, but a keyboard specialist named Joanne Ducharm did), Plaintiff concedes that "it is probably not realistic to expect anyone doing a transcription to record such a subtle occurrence as the rustling of paper."[152]   However, he argues that, nevertheless, when receiving Defendant McAdam's testimony via telephone, Defendant Williams knowingly permitted Defendant McAdam to "parrot" his misbehavior report rather than testify from personal knowledge–which "present[s] major credibility problems for . . . 'Superintendent' Williams."[153]

I am not aware of any authority supporting the proposition that a correctional officer's heavy reliance on his allegations in a misbehavior report to refresh his recollection (or his adoption of his allegations in such a report as his sworn testimony) during a prison disciplinary hearing constitutes a violation of the Due Process Clause of the Fourteenth Amendment.  I note that it is unclear to me that doing so in federal court would violate Rule 612 of the Federal Rules of Evidence where that officer possessed an *independent recollection* of the details of the events giving rise to the misbehavior report (as Defendant McAdam apparently did here).  In any event,

---

[151]     *See also Francis*, 891 F.2d at 47 ("[A] plaintiff-inmate armed with nothing more than conclusory allegations of bias and prejudgment should not be able to defeat a well-supported motion for summary judgment."); *Mahotep v. DeLuca*, 3 F. Supp.2d 385, 390 n.3 (W.D.N.Y. 1998) ("Here, [plaintiff] has provided the Court with nothing more than conclusory allegations against [defendant-director of inmate grievance program] that are insufficient to overcome [that defendant's] motion for summary judgment.").

[152]     (Dkt. No. 42, Part 1, ¶¶ 75 [Plf.'s Rule 7.1 Response].)

[153]     (*Id*. at ¶¶ 69-76.)

the *Federal* Rules of Evidence do not apply in a *New York State* Department of Correctional Services prison disciplinary hearing. *See Young v. Selsky*, 41 F.3d 47, 53-54 (2d Cir. 1994) ("[Prisoners'] rights to cross-examine and challenge witnesses and evidence are limited [in prison disciplinary hearings]. . . .   The disciplinary hearings rely heavily on hearsay, including unverifiable information from prison guards and informants.") [internal quotation marks and citations omitted]; *Espinal v. Goord*, 01-CV-6569, 2002 U.S. Dist. LEXIS 12979, at *5 (S.D.N.Y. July 17, 2002) ("The Fourteenth Amendment imposes no absolute bar to [the use of hearsay] evidence in prison disciplinary hearings . . . .   Rather, for a prison disciplinary hearing to satisfy the element of due process, a decision adverse to a prisoner merely must have been supported by some evidence, whether hearsay or otherwise.") [internal quotation marks and citations omitted].

For these reasons, I recommend that, under Fed. R. Civ. P. 56, the Court dismiss Plaintiff's procedural due process claims regarding the disciplinary hearing conducted by Defendant Williams on January 12 and 13, 2005.  In the alternative, I recommend that the Court dismiss that claim under Fed. R. Civ. P. 12(b)(6).

### 3.	Hearing Conducted by Defendant Don on January 26, 2005

I reach the same conclusion (that I reached in Parts III.G.1. and III.G.2. of this Report-Recommendation) with regard to Plaintiff's procedural due process claim against Defendant Don arising out of the disciplinary hearing he conducted on January 26, 2005.

Even when construed with the utmost of special leniency, Plaintiff's Complaint alleges facts plausibly suggesting that the disciplinary hearing conducted by Defendant Don on January 26, 2005 (i.e., the hearing on the January 21, 2005, misbehavior report issued by Defendant

Emrich) resulted in a sentence of fifty (50) days in S.H.U. confinement.  (Dkt. No. 1, ¶ 6, Attached Page 13-14 [Plf.'s Compl.].)  Furthermore, even if I were to proceed to an analysis of the record evidence establishing how much time Plaintiff served in S.H.U. as a result of this disciplinary conviction (under a summary judgment analysis), I would find that Plaintiff has failed to establish that he possessed (at the disciplinary hearing) a liberty interest that was protected by the Fourteenth Amendment.  This is because the record contains uncontroverted evidence of two facts: (1) the disciplinary hearing in question resulted in a *stated* sentence of only thirty (30) days in S.H.U. confinement (and, from Plaintiff's perspective, an *effective* sentence of fifty days in S.H.U., due to the fact that the sentence was to run consecutively to a previously imposed sentence),[154] with a corresponding loss of privileges; and (2) in any event, Plaintiff did not serve any of that sentence since the sentence was eliminated on April 4, 2005, upon discretionary review by Deputy Superintendent Doldo.[155]

In his Opposition Memorandum of Law, Plaintiff entirely fails to address Defendants' argument that, because Plaintiff did not end up serving any of the sentence imposed by Defendant Don on January 26, 2005, his Due Process claim fails.  (Dkt. No. 42, Part 3, at 12-14 [Plf.'s Opp. Memo. of Law].)  As explained above in Part II.A. of this Report-Recommendation, where a plaintiff has failed to respond to an argument in a defendant's properly filed and facially meritorious memorandum of law (submitted in support of its motion for summary judgment), the plaintiff is deemed to have "consented" to that legal argument under Local Rule 7.1(b)(3) of the

---

[154]     (Dkt. No. 39, Part 19, at 1 [Ex. 15 to Seaman Affid.]; Dkt. No. 39, Part 4, at 187-88 [Ex. A to Seaman Affid., attaching transcript of Plf.'s deposition].)

[155]     (Dkt. No. 39, Part 33, ¶¶ 20-22 [Don Decl.]; Dkt. No. 39, Part 38 [Ex. E to Don Decl.].)

Local Rules of Practice for this Court.[156]  In any event, even if I were to subject Defendants'

argument to the increased scrutiny appropriate for contested legal arguments, I would find

Defendants' argument persuasive.

Because Plaintiff did not (in connection with his January 26, 2005, disciplinary hearing)

enjoy a liberty interest that was protected by the Fourteenth Amendment, the Court need not, and

I do not, proceed to Defendants' alternative argument that Plaintiff has failed to establish that

Defendant Don denied Plaintiff any process to which he was due at that hearing.  (Dkt. No. 39,

Part 45, at 12 [Defs.' Memo. of Law].)

For these reasons, I recommend that, under Fed. R. Civ. P. 56, the Court dismiss

Plaintiff's procedural due process claims regarding the disciplinary hearing conducted by

Defendant Don on January 26, 2005.  In the alternative, I recommend that the Court dismiss that

claim under Fed. R. Civ. P. 12(b)(6).

### 4.    Claim Under New York State Constitution

As I stated above in Part I.A. of this Report-Recommendation, Plaintiff also asserts, with

regard to his disciplinary hearing, a claim under Article 1, Section 6 of the New York State

Constitution.  Under the circumstances, I find that the Court should decline to exercise

supplemental jurisdiction over this pendent state law claim because (1) grounds exist supporting

the dismissal of Plaintiff's federal claims, and (2) Plaintiff's state law claims lack evidentiary

support for the same reasons as do his federal claims.[157]

---

[156]     See, supra, note 50 of this Report-Recommendation.

[157]     See Porter v. Lincoln City, 59 F. App'x 985, 986 (9th Cir. March 23, 2003)
(affirming district court's decision to decline to exercise supplemental jurisdiction over inmate's
pendent state law claims for fraud, misrepresentation, libel, and slander, after district court

For these reasons, <u>I recommend that, under Fed. R. Civ. P. 12(b)(6), the Court dismiss Plaintiff's claim under Article 1, Section 6 of the New York State Constitution</u>.

**H.     Whether Plaintiff's Inadequate-Prison-Conditions Claim Should Be Dismissed for Failure to State a Claim or, in the Alternative, Due to Lack of Evidence**

As stated above, Defendants argue that Plaintiff's inadequate-prison-conditions claim should be dismissed because the conditions in question were not sufficiently serious to support such a claim (based on Plaintiff's own allegations or, in the alternative, based on the record evidence).[158]

Generally, to prevail on a claim of inadequate prison conditions, a plaintiff must show two things: (1) that the conditions of his confinement resulted in deprivation that was *sufficiently serious*; and (2) that the defendant acted with *deliberate indifference* to the plaintiff's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  Specifically, with regard to the first prong of this test, "the plaintiff must demonstrate that the conditions of his confinement resulted in 'unquestioned and serious deprivations of basic human needs' or 'deprive[d] inmates of the minimal civilized measures of life's necessities.'"[159]  For example, a prisoner must demonstrate

---

concluded that inmate's federal due process claim should be dismissed, in civil rights action under 42 U.S.C. § 1983); *Rennick v. U.S.*, 05-CV-0339, 2005 U.S. Dist. LEXIS 34695, at *2, 12-18 (E.D. Ky. Dec. 20, 2005) (declining to exercise jurisdiction over inmate's state law claims for fraud and misrepresentation, after court found reason to *sua sponte* dismiss inmate's federal due process claim, in civil rights action under 42 U.S.C. § 1983); *Parsons v. Pond*, 126 F. Supp.2d 205, 223 (D. Conn. 2000) (declining to exercise supplemental jurisdiction over parolee's pendent state law claim for fraudulent misrepresentation, after court found reason to dismiss inmate's federal civil rights claim under 42 U.S.C. § 1983).

[158]     (Dkt. No. 39, Part 45, at 6-7 [Defs.' Memo. of Law].)

[159]     *Davidson*, 371 F. Supp.2d at 370 (citing *Rhodes v. Chapman*, 452 U.S. 337, 347 [1981]).

74

that he has been deprived of a "single, identifiable human need such as food, warmth, or exercise."[160]  If, however, the condition is not sufficiently prolonged or severe, it does not rise to the level of an Eighth Amendment violation.[161]  As recognized by the Supreme Court, "the Constitution does not mandate comfortable prisons," and conditions that are "restrictive and even harsh . . . are part of the penalty that criminal offenders pay for their offenses against society."[162]

A "deprivation of toiletries, and especially toilet paper, *can* rise to the level of unconstitutional conditions of confinement . . . ."  *Trammell v. Keane*, 338 F.3d 155, 165 (2d Cir. 2003) [citations omitted; emphasis added].  However, generally, a denial of toilet paper and soap for a *temporary* period must be accompanied by other deprivations to rise to the level of an Eighth Amendment violation.  *See, e.g.*, *Wright v. McMann*, 387 F.2d 519 (2d Cir. 1967) (allegations that prisoner was denuded and exposed to bitter cold in solitary confinement cell for eleven days, that he was deprived of basic elements of hygiene such as soap and toilet paper, and that cell was filthy, without adequate heat, and virtually barren would, if established, constitute cruel and unusual punishment in violation of the Eighth Amendment); *Atkins v. County of Orange*, 372 F. Supp.2d 377, 404, 406 (S.D.N.Y. 2005) ("The failure to regularly provide prisoners with . . . toilet articles [for one month] including soap, razors, combs, toothpaste, toilet paper, access to a mirror and sanitary napkins for female prisoners constitutes a denial of personal hygiene and sanitary living conditions.") [internal quotation marks and citations omitted].

---

[160]     *Wilson v. Seiter*, 501 U.S. 294, 304 (1991).

[161]     *Trammel v. Keane*, 338 F.3d 155, 164-65 (2d. Cir. 2003).

[162]     *Davidson*, 371 F. Supp.2d at 370 (quoting *Rhodes*, 452 U.S. at 347, 349).

Here, even when construed with the utmost of special leniency, Plaintiff's Complaint does not allege facts plausibly suggesting that the conditions of confinement to which he was allegedly subjected by Defendant Sheridan while in the Gouverneur C.F. Short-Term S.H.U. between January 8 and 20, 2005, were sufficiently serious for purposes of the Eighth Amendment. Specifically, Plaintiff's Complaint alleges that "[o]ver the course of the next few days [following January 8, 2005], Officers McAdam, Sheridan and Emrich harassed, verbally abused and threatened me [at Gouvernuer C.F.'s Short-Term S.H.U.].  Whenever Off. Sheridan addressed me, he uttered profanities to me, and he withheld basic amenities from me, such as toilet paper and soap, on several occasions."  (Dkt. No. 1, ¶ 7, "Twelfth Cause of Action" [Plf.'s Compl.]; Dkt. No. 1, ¶ 6, Attached Pages 8-9 [Plf.'s Compl.].)  Plaintiff further alleges that he was transferred from the Short-Term S.H.U. to the Long-Term S.H.U. (also known as the "S-Block" S.H.U.) on January 20, 2005.  (Dkt. No. 1, ¶ 6, Attached Page 13 [Plf.'s Compl.].)

Conspicuously missing from Plaintiff's otherwise-detailed Complaint is any factual allegation plausibly suggesting that, while Plaintiff was in the S-Block S.H.U., Defendant Sheridan *continuously* denied Plaintiff toilet paper and soap.  Rather, as explained above, Plaintiff alleges that Defendant Sheridan denied Plaintiff toilet paper and soap "on several occasions" during "the few days" that followed January 8, 2005.  Furthermore, conspicuously missing from Plaintiff's otherwise-detailed Complaint is any factual allegation plausibly suggesting that, at any point during entire period during which Plaintiff was in the Short-Term S.H.U., Defendant Sheridan deprived Plaintiff of food, clothing, bedding, heat, running water, showers, or medicine.  Simply stated, a mere denial of the toilet paper and soap on several occasions for a few days is, while dismaying and unprofessional, not a denial of "the minimal

civilized measure of life's necessities," as required by *Farmer*, 511 U.S. at 834.  *See Davidson v. Murray*, 371 F. Supp.2d 361, 372-73 (W.D.N.Y. 2005) ("[O]ccasional or temporary deprivations of personal items [such as toilet paper and cleaning supplies]," without more, does not constitute a sufficiently serious deprivation under the Eighth Amendment).[163]

In any event, even if the Court were to find that Plaintiff's Complaint had sufficiently stated an Eighth Amendment claim against Defendant Sheridan, I would report that I agree with Defendants that the record (and in particular, Plaintiff's deposition transcript) contains no evidence that Defendant Sheridan deprived Plaintiff of anything but toilet paper and soap for a thirteen-day period.  (Dkt. No. 39, Part 45, at 7 [Defs.' Memo. of Law].)  Furthermore, I note that the record contains uncontradicted evidence that, during the period of time in which Plaintiff was actually in the Short-Term S.H.U. (i.e., January 6 to 21, 2005), Plaintiff was seen by medical staff at Gouverneur C.F. on at least four occasions: on January 6, 8, 12, and 20, 2005.  (Dkt. No. 39, Part 43, at 2-4 [Ex. A to Kasulke Decl., attaching Plaintiff's Ambulatory Health Records].)  His medical records memorializing those visits reflect no request by Plaintiff for toilet paper, nor a complaint by Plaintiff regarding any medical consequences resulting from the denial of toilet paper and soap.  (*Id.*)

Nothing in Plaintiff's Opposition Memorandum of Law persuades me that the deprivation

---

[163]   *See also McNatt v. Unit Manager Parker*, 99-CV-1397, 2000 WL 307000, at *3-4 (D. Conn. Jan. 18, 2000)  (no Eighth Amendment violation when inmates endured [1] stained, smelly mattresses, [2] unclean cell, [3] no bedding for six days, [4] no cleaning supplies for six days, [5] no toilet paper for one day, [6] no toiletries or clothing for six days, [7] no shower shoes, [8] dirty showers, [9] cold water that did not function properly; and [10] smaller food portions); *Young v. Scully*, 91- CV-4332, 1993 WL 88144, at *4-5 (S.D.N.Y. Mar. 22, 1993) (deprivation for a period of several days of exercise, shower, hot water, cell cleaning equipment, wardrobe, toiletries and hygiene items did not rise to level of extreme deprivation).

of toilet paper and soap was sufficiently serious under the Eighth Amendment.  (Dkt. No. 42, Part 3, at 9-12 [Plf.'s Memo. of Law].)  Plaintiff's argument that the deprivation was *intentional* is, while perhaps true, not material to the first prong of the above-stated Eighth Amendment test.  (*Id*. at 10.)  His assertion that, on at least one occasion, the deprivation of toilet paper required him to wipe his rectum with his underwear is not sworn and thus does not constitute evidence sufficient to oppose a motion for summary judgment.  (*Id*.)  Nor would evidence of his need to use his underwear in that way constitute evidence of a deprivation *different* from a deprivation of toilet paper.  Similarly, his assertion that he experienced "humiliation[,] . . . [and] extreme feelings of marginality and 'nobodiness'" is also not sworn–nor would it constitute a deprivation of "life's necessities" under the Eighth Amendment and *Farmer*, 511 U.S. at 834.  (*Id*. at 11 [emphasis in original].)  Finally, the accompanying utterance of profanities by Defendant Sheridan also does not constitute a deprivation of *life's necessities*.  (*Id*. at 10 [emphasis in original].)[164]

For these reasons, I recommend that, under Fed. R. Civ. P. 56, the Court dismiss Plaintiff's inadequate-prison-conditions claim against Defendant Sheridan.  In the alternative, I recommend that the Court dismiss that claim under Fed. R. Civ. P. 12(b)(6).

---

[164]    *See Shabazz v. Pico*, 994 F. Supp 460, 474 (S.D.N.Y. 1998) ("[R]acial slurs do not deprive prisoners of the minimal civilized measure of life's necessities . . . .") [citations omitted], *aff'd* 205 F.3d 1324 (2d Cir. 2000); *Morgan v. Ward*, 699 F. Supp. 1025, 1055 (N.D.N.Y. 1988) (Munson, J.) ("[R]acial slurs do not deprive prisoners of the minimal civilized measure of life's necessities . . . .") [citations omitted]; *see also*, *infra*, note 166 of this Report-Recommendation (collecting verbal harassment cases).

**I.      Whether Plaintiff's Harassment Claim Should Be Dismissed for Failure to State a Claim or, in the Alternative, Due to Lack of Evidence**

As stated above, Defendants argue that Plaintiff's harassment claim should be dismissed because the conduct in question was not sufficiently serious to support such a claim (based on Plaintiff's own allegations or, in the alternative, based on the record evidence).[165]

It is well established in the Second Circuit that verbal harassment of inmates by prison officials, unaccompanied by any injury–no matter how inappropriate, unprofessional, or reprehensible it might seem–does not rise to the level of a violation of the Eighth Amendment.[166]

---

[165]      (Dkt. No. 39, Part 45, at 7-8 [Defs.' Memo. of Law].)

[166]      *See Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) ("Purcell's claims that prison guards called him names . . . did not allege a constitutional violation . . . ."); *Liggins v. Parker*, 04-CV-0966, 2007 WL 2815630, at *17 (N.D.N.Y. Sept. 25, 2007) (Mordue, C.J., adopting Report-Recommendation by Peebles, M.J.) ("[R]egardless of how boorish and reprehensible such conduct may appear, verbal harassment of inmates by prison officials generally does not arise to the level of constitutional significance.") [citations omitted]; *Murray v. Pataki*, 03-CV-1263, 2007 WL 956941, at *8 (N.D.N.Y. March 29, 2007) (Kahn, J.) ("Plaintiff's claim for verbal harassment in the form of racial statements and threats is not actionable under 42 U.S.C. § 1983."); *Gill v. Hoadley*, 261 F. Supp.2d 113, 129 (N.D.N.Y. 2003) (Peebles, M.J.) ("42 U.S.C. § 1983 is not designed to rectify harassment or verbal abuse. . . . Thus, mere allegations of verbal abuse do not rise to the level of a constitutional violation, and are not cognizable under 42 U.S.C. § 1983.") [citations omitted]; *Moncrieffe v. Witbeck*, 97-CV-0254, 2000 WL 949457, at *1 (N.D.N.Y. June 29, 2000) (Mordue, J.) ("[V]erbal harassment . . . is not actionable  under 42 U.S.C. § 1983.") [citations omitted]; *Aquino v. Kooi*, 05-CV-1472, 2007 WL 201169, at *5 (N.D.N.Y. Jan. 23, 2007) (Kahn, J.) ("[V]erbal harassment or profanity alone, unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983.") [citations omitted]; *Carpio v. Walker*, 95-CV-1502, 1997 WL 642543, at *6 (N.D.N.Y. Oct. 15, 1997) (Pooler, J., adopting Report-Recommendation by DiBianco, M.J.) ("[V]erbal harassment alone, unaccompanied by any injury, no matter how inappropriate, unprofessional, or reprehensible it might seem, does not rise to the level of an Eighth Amendment violation.") [citations omitted].

Nor do threats, unaccompanied by any injury, amount to such a violation.[167]  It should be noted

that, generally, the injury referred to in the previous two sentences must be *physical* in nature.[168]

It is true that, under certain circumstances, a prison official's infliction of *psychological* pain on

an inmate may constitute an Eighth Amendment violation; however, to do so, the psychological

pain must be (1) intentionally inflicted and (2) more than *de minimis* in nature.[169]

---

[167]     *See Murray*, 2007 WL 956941, at *8 ("Additionally, threats do not amount to violations of constitutional rights.") [internal quotation marks and citation omitted]; *Moncrieffe*, 2000 WL 949457, at *3 ("Similarly, threats do not amount to violations of constitutional rights.") [internal quotation marks and citation omitted]; *Young v. Coughlin*, 93-CV-0262, 1998 WL 32518, at *6 (S.D.N.Y. Jan. 29, 1998) ("Young . . . does not allege that he suffered any injury or damage from [Dr. Tufua's] alleged threats.  The threat was in all events short lived. . . .  In these circumstances, the threat does not constitute a constitutional violation under Section 1983.") [citation omitted]; *Malsh v. Austin*, 901 F. Supp. 757, 763 (S.D.N.Y. 1995) ("The plaintiff does not allege that he suffered any injury or damages from these alleged threats.  Such alleged threats do not amount to violations of constitutional rights.") [citations omitted].

[168]     *See Murray*, 2007 WL 956941, at *8 ("Furthermore, Plaintiff did not allege any *physical* injury as a result of the statements and threats. . . .   Therefore, Plaintiff's claim is not actionable under 42 U.S.C. § 1983 . . . .") [citations omitted; emphasis added]; *McKethan v. Carbone*, 97-CV-0061, 1998 WL 178804, at *2 (N.D.N.Y. Apr. 13, 1998) (Pooler, J.) ("[W]ithout any showing of physical injury or damage, claims of verbal harassment, including taunts, insults, and racial slurs cannot form the basis of a claim under Section 1983.") [citations omitted]; *Shabazz*, 994 F. Supp at 474 (dismissing plaintiff's claim because he "does not allege that defendants inflicted any *physical* injury on him in conjunction with their verbal taunts") [emphasis added], *aff'd* 205 F.3d 1324 (2d Cir. 2000); *cf.* 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.").

[169]     *See Richardson v. Hillman*, 201 F. Supp.2d 222, 227 (S.D.N.Y. 2002) ("[R]acial slurs that intentionally inflict psychological pain implicate a constitutional right, as long as the pain is not *de minimis*.") [citation omitted]; *Shabazz*, 994 F. Supp. at 474 ("Under certain circumstances, the intentional infliction of psychological pain may constitute an Eighth Amendment violation, so long as the pain is not *de minimus*.") [citation omitted], *aff'd*, 205 F.3d 1324 (2d Cir. 2000); *St. Germain v. Goord*, 96-CV-1560, 1997 WL 627552, at *4 (N.D.N.Y. Oct. 8, 1997) (Pooler, J.) ("[I]ntentional infliction of psychological pain may also constitute a violation of the Eighth Amendment as long as such pain is not *de minimus*.") [citations omitted]; *Show v. Patterson*, 955 F. Supp. 182, 192 (S.D.N.Y. 1997) (name-calling and laughing by

Here, Plaintiff's harassment claim against Defendants McAdam, Emrich and Sheridan is based, in part, on the same factual allegations as is his inadequate-prison-conditions claim against Defendant Sheridan (which is discussed above in Part III.H. of this Report-Recommendation). Specifically, Plaintiff's Complaint alleges as follows:

> Over the course of the next few days [following January 8, 2005], Officers McAdam, Sheridan and Emrich harassed, verbally abused and threatened me [in the Short-Term S.H.U.]. Whenever Off. Sheridan addressed me, he uttered profanities to me, and he withheld basic amenities from me, such as toilet paper and soap, on several occasions.
>
> On one occasion, I peered out of my cell door window, as Off. McAdam would regularly bypass my cell while offering services to all the other prisoners, such as access to books and magazines. As he passed by my cell, he ordered me to 'get off the window and mind your own business.' As I was explaining why I was looking out the window, another officer came up to the door and struck it, then yelled: 'You heard what the officer said! Go and sit the f*** down!' He then noticed me attempting to locate his name tag, stood on his toes, stuck his chest out and said: 'Is that what you want to see? Emrich, the next officer that's going to kick your dumb f***ing ass!'

(Dkt. No. 1, ¶ 7, "Fifth Cause of Action" [Plf.'s Compl.]; Dkt. No. 1, ¶ 6, Attached Pages 8-9 [Plf.'s Compl.].) In addition, Plaintiff alleges that, on or about Monday, January 10, 2005, Defendant McAdam intentionally filed a false misbehavior report against him (charging him with "violent conduct"). (Dkt. No. 1, ¶ 7, "Fifth Cause of Action" [Plf.'s Compl.]; Dkt. No. 1, ¶ 6,

---

correctional officers during strip search did not violate Eighth Amendment because it was no more than "*de minimis* psychological force") [citation omitted]; *Duamutef v. Leonardo*, 91-CV-1100, 1993 WL 428509, at *13 (N.D.N.Y. Oct. 22, 1993) (Hurd, M.J.) (plaintiff's allegation that the strip searches caused him to "suffer constant humiliation, unnecessary psychological pain and distress" did not rise to level of Eighth Amendment violation), *adopted* by 1994 WL 86700 (N.D.N.Y. March 7, 1994) (McCurn, J.), *appeal dismissed*, 47 F.3d 1158 (2d Cir. 1995); *Jermosen v. Coughlin*, 87-CV-6267, 1993 WL 267357, at *6 (S.D.N.Y. July 9, 1993) (dismissing prisoner's Eighth Amendment claim because "the Court finds that any psychological pain caused to Jermosen was *de minimus*") [citation omitted].

Attached Pages 9-13 [Plf.'s Compl.].)  Finally, he alleges that the harassment caused him to

suffer "mental duress."  (Dkt. No. 1, ¶ 7, "Fifth Cause of Action" [Plf.'s Compl.].)

Even when construed with the utmost of special leniency, Plaintiff's Complaint does not

allege facts plausibly suggesting that the conduct of Defendants McAdam, Emrich and

Sheridan–when viewed either separately or together–rose to the level of a violation of the Eighth

Amendment.  Conspicuously missing from Plaintiff's otherwise-detailed Complaint is any factual

allegation plausibly suggesting that, at any point during entire period during which Plaintiff was

in the Short-Term S.H.U., the harassment of Defendants McAdam, Emrich and Sheridan caused

Plaintiff either (1) a physical injury or (2) a psychological injury that was anything more than *de*

*minimis* in nature.  For example, Plaintiff does not allege that the "mental duress" he experienced

caused him depression, nausea, hyperventilation, headaches, insomnia, dizziness, and/or weight

loss.  This case is analogous to several cases from within this Circuit that have found a plaintiff's

claims of psychological injury to be *de minimis* in nature.[170]

---

[170]      *See, e.g., McKethan*, 1998 WL 178804, at *2 (Pooler, J.) ("Plaintiff alleges only
'hurt feelings, emotional and psychological injuries,' and no physical injuries as a result of this
incident [which involved correctional officials using physical force to choke plaintiff]. . . .  Even
construing McKethan's allegations liberally, I conclude that the claimed violations amount to
only a *de minimus* use of force and thus fail to state a violation of the Eighth Amendment.");
*Shabazz*, 994 F. Supp. at 474 ("Plaintiff[] claim[s] that defendants uttered racial slurs during
constitutionally permitted searches . . . .  I find that plaintiff's allegations of any psychological
and emotional scars attributable to defendants' conduct to be *de minimus* under the facts of this
case."); *Show*, 955 F. Supp. at 191-92 ("laughing" and "name-calling" by correctional officers
during strip search was *de minimus* psychological harm); *Duamutef*, 1993 WL 428509, at *13
(plaintiff's allegation that the strip searches caused him to "suffer constant humiliation,
unnecessary psychological pain and distress" did not rise to level of Eighth Amendment
violation); *Jermosen*, 1993 WL 267357, at *6 (plaintiff suffered only *de minimus* psychological
harm when, before conducting a strip frisk of plaintiff, correctional officers "approached his cell
with their nightsticks raised in a threatening position" in order to "deliberately inflict[] [on him]
mental pain, anguish, embarrassment and humiliation").

In his Opposition Memorandum of Law, Plaintiff alleges for the first time that the harassment caused him to experience "humiliation[,] . . . [and] extreme feelings of marginality and 'nobodiness.'"  (Dkt. No. 42, Part 3, at 11 [Plf.'s Memo. of Law] [emphasis in original].)  As an initial matter, I note that, while special solicitude permits a *pro se* plaintiff to effectively amend the allegations of his complaint while responding to a motion to dismiss for failure to state a claim (which, typically, comes relatively early in an action),[171] it does *not* permit him to do so while responding to a motion for summary judgment (which, typically, comes relatively late in an action, for example, where, as here, after the defendants have completed discovery based on the allegations contained in the plaintiff's complaint).[172]  As explained above in Part II.A. of this Report-Recommendation, even *pro se* plaintiffs must obey the Court's procedural rules.[173]  In any event, the new allegations would not elevate Plaintiff's alleged psychological injuries above a *de minimis* level.[174]

---

[171]     *See*, *supra*, note 79 of this Report-Recommendation.

[172]     *See Shaheen v. McIntyre*, 05-CV-0173, 2007 WL 3274835, at *9 (N.D.N.Y. Nov. 5, 2007) (McAvoy, J., adopting Report-Recommendation by Lowe, M.J., finding that a *pro se* civil rights plaintiff could not effectively amend the allegations of his complaint through allegations raised for the first time in his response to the defendants' summary judgment motion, since discovery had already been completed); *accord*, *Jackson v. Onondaga County*, 549 F. Supp.2d 204, 220 & n.45 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation by Lowe, M.J.) (explaining that "the net effect of permitting Plaintiff to so change the landscape of his claims at this late stage of the action would be to deprive Defendants of the fair notice envisioned by Fed. R. Civ. P. 8."); *cf. Shabazz*, 994 F. Supp. at 474 ("Plaintiff's delay in asserting that he was injured until his response to defendant's argument that verbal threats without injuries are not actionable under § 1983 confirms the implausibility of plaintiff's new claim."), *aff'd* 205 F.3d 1324 (2d Cir. 2000).

[173]     *See*, *supra*, note 54 of this Report-Recommendation.

[174]     *See*, *supra*, note 170 of this Report-Recommendation (collecting cases finding that psychological injuries were *de minimis*).

Even if the Court were to find that Plaintiff's Complaint had sufficiently stated an actionable harassment claim against Defendants McAdam, Emrich and Sheridan, I would report that I agree with Defendants that the record contains no evidence that the harassment by Defendants McAdam, Emrich and Sheridan caused Plaintiff to experience either (1) a physical injury or (2) a psychological injury that was anything more than *de minimis* in nature.  (*See generally* Dkt. No. 39, Part 4, at 54-55, 58, 65-66, 106-07, 139, 207-08, 216-21 [Ex. A to Seaman Affid., attaching Plf.'s deposition transcript, containing relevant portions of Plaintiff's testimony regarding the harassment].)

To the contrary, Plaintiff's medical records from the time period in question (i.e., January 6 to 21, 2005) reflect no complaint by Plaintiff of any psychological injury (or physical manifestation thereof), or any request for any mental health treatment.  (Dkt. No. 39, Part 43, at 2-4 [Ex. A to Kasulke Decl., attaching Plaintiff's Ambulatory Health Records].)  Finally, to the extent that Plaintiff's papers can be liberally construed as arguing that he sustained a *physical injury* that consisted of his having to endure restricted living conditions in disciplinary confinement following his disciplinary conviction and sentence on the allegedly false misbehavior report authored by Defendant McAdam on or about January 10, 2005 (charging Plaintiff with "violent conduct"), three points bear mentioning: (1) I can find no record evidence that any such "physical injury" was sufficiently serious for purposes of the Eighth Amendment; (2) I can find no record evidence that any such "physical injury" was caused by the alleged harassment of Defendants Emrich and Sheridan; and (3) I can find no record evidence that Defendant McAdam's January 10, 2008, misbehavior report, which was not subsequently reversed on appeal, was indeed *false*.

84

For these reasons, <u>I recommend that, under Fed. R. Civ. P. 56, the Court dismiss Plaintiff's harassment claim against Defendants McAdam, Emrich and Sheridan.  In the alternative, I recommend that the Court dismiss that claim under Fed. R. Civ. P. 12(b)(6)</u>.

**J.      Whether Plaintiff's Inadequate-Medical-Care Claim Should Be Dismissed for Lack of Evidence**

As stated above, Defendants argue that Plaintiff's inadequate-medical-care claim should be dismissed because there is no evidence that he had a sufficiently serious medical need and, in any event, there is no evidence that Defendant Kasulke acted with a sufficiently culpable state of mind with regard to that medical need.[175]

Generally, for a prisoner to prevail on a claim of inadequate medical care, he must show two things: (1) that he had a *sufficiently serious* medical need; and (2) that the defendant was *deliberately indifferent* to that serious medical need.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).

For the sake of brevity, I will assume that, during the time in question, Plaintiff possessed a sufficiently serious medical need under the Eighth Amendment.  The problem (at least from Plaintiff's perspective) is that he has adduced no admissible record evidence establishing that Defendant  Kasulke acted with a sufficiently culpable state of mind with regard to that medical need.  As the Supreme Court has observed, "[D]eliberate indifference describes a state of mind more blameworthy than negligence."[176]  Rather, deliberate indifference is a state of mind akin to

---

[175]       (Dkt. No. 39, Part 45, at 16-19 [Defs.' Memo. of Law].)

[176]       *Farmer*, 511 U.S. at 835 ("[D]eliberate indifference [for purposes of an Eighth Amendment claim] describes a state of mind more blameworthy than negligence."); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment

*criminal recklessness.*[177]

Here, the admissible record evidence does not establish any such recklessness.

More specifically, in thirteen paragraphs of their Rule 7.1 Statement, Defendants assert, in

chronological order, numerous facts regarding the medical care that Defendant Kasulke (and

Nurse Theriault at Gouverneur C.F.) gave Plaintiff between January 6, 2005, and April 28, 2005.

(Dkt. No. 39, Part 44, ¶¶ 38-41, 85-93 [Defs.' Rule 7.1 Statement].)  Defendants support each of

these factual assertions with accurate record citations, as they are required to do under Local Rule

7.1(a)(3).  (*Id.*)

In his opposition papers, Plaintiff does not submit a Rule 7.1 Response that "mirror[s]

---

under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Murphy v. Grabo*, 94-CV-1684, 1998 WL 166840, at *4 (N.D.N.Y. Apr. 9, 1998) (Pooler, J.) ("Deliberate indifference, whether evidenced by [prison] medical staff or by [prison] officials who allegedly disregard the instructions of [prison] medical staff, requires more than negligence. . . .  Disagreement with prescribed treatment does not rise to the level of a constitutional claim. . . .  Additionally, negligence by physicians, even amounting to malpractice, does not become a constitutional violation merely because the plaintiff is an inmate. . . .  Thus, claims of malpractice or disagreement with treatment are not actionable under section 1983.") [citations omitted].").

[177]    *Farmer,* 511 U.S. at 827 ("[S]ubjective recklessness as used in the criminal law is a familiar and workable standard that is consistent with the Cruel and Unusual Punishments Clause as interpreted in our cases, and we adopt it as the test for "deliberate indifference" under the Eighth Amendment."); *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998) ("The required state of mind [for a deliberate indifference claim under the Eighth Amendment], equivalent to criminal recklessness, is that the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and he must also draw the inference.") [internal quotation marks and citations omitted]; *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) ("The subjective element requires a state of mind that is the equivalent of criminal recklessness . . . .") [citation omitted]; *accord, Koehl v. Greene*, 06-CV-0478, 2007 WL 2846905, at *17, n. 98 (N.D.N.Y. Sept. 26, 2007) (Kahn, J.), *Richards v. Goord*, 04-CV-1433, 2007 WL 201109, at *15, n.124 (N.D.N.Y. Jan. 23, 2007) (Kahn, J.), *Salaam v. Adams*, 03-CV-0517, 2006 WL 2827687, at *10, n.59 (N.D.N.Y. Sept. 29, 2006) (Kahn, J.).

[Defendants' Rule 7.1 Statement] by admitting and/or denying each of [Defendants'] assertions in matching numbered paragraphs," as he is required to do under Local Rule 7.1(a)(3).  Instead, Plaintiff submits what he calls an "Unsworn Declaration / 7.1 Statement of Facts / Affirmation in Support of Petition."  (Dkt. No. 42, Part 1, at 3.)  Buried in that thirty-nine-page document are sixteen paragraphs that (in topical, not chronological order) are deficient in several ways: (1) they deny only *some* of Defendants' factual assertions, failing to deny others; (2) they either fail to support any denials with accurate citations to admissible record evidence, or they support those denials with only challenges to the credibility of certain affidavit testimony relied on by Defendants; and (3) they assert additional facts that are either unsupported by accurate citations to admissible record evidence or that are immaterial to the issue of whether Defendant Kasulke was deliberately indifferent to any of Plaintiff's serious medical needs.  (Dkt. No. 42, Part 1, ¶¶ 108-123.)

Given these patent flaws in Plaintiff's Rule 7.1 Response, I decline (and I recommend that the Court also decline) to engage in the *sua sponte* comparison of unmatching factual assertions contained in Plaintiff's Rule 7.1 Response, and scouring of the record, that would be necessary to determine if the record contains admissible evidence creating an issue of fact regarding each of the assertions made by Defendants.  The Court has no such duty, even if the non-movant is proceeding *pro se*.  (*See*, *supra*, note 53 of this Report-Recommendation.)  This is because even *pro se* plaintiffs must obey the Court's procedural rules.  (*See*, *supra*, note 54 of this Report-Recommendation.)  In particular, this Court has rather consistently enforced Local Rule 7.1(a)(3), by deeming facts set forth in a moving party's statement to have been admitted where the opposing party has failed to properly respond to that Statement–even where the opposing

party was proceeding *pro se* in a civil rights case.  (*See*, *supra*, note 55 of this Report-Recommendation.)

Deemed admitted, then, are the factual assertions contained in Paragraphs 38-41 and 85-93 of Defendants' Rule 7.1 Statement.  Among other things, those facts establish as follows: (1) within five minutes after Plaintiff had been placed in his cell in S.H.U. following the use of force on January 6, 2005, Nurse Theriault visited him, asked him what injuries he was complaining about, did not record his torso and lip injuries in writing with complete accuracy (minimizing those injuries in certain respects), but gave Plaintiff Ibuprofen for his back pain;[178] (2) Plaintiff complained of continued back pain on January 8 and 12, 2005, and was placed on a schedule to see a physician; (3) on or about January 25, 2005, Defendant Kasulke first saw Plaintiff for his complaints of chronic lower back pain, and sent him for an x-ray examination at that time;[179] (4) both Defendant Kasulke's clinical examination of Plaintiff and the x-ray examination of Plaintiff were negative (for objective findings of causes for his lower back pain); (5) after Defendant Kasulk reviewed the x-ray film on January 25, 2005, he prescribed a muscle relaxant (called Roboxin, which is better known as Flexeril) for Plaintiff to be taken as needed; (6) Defendant Kasulke never saw Plaintiff for a complaint of back pain again; and (7) Plaintiff was transferred

---

[178]    In addition to being supported by the record evidence cited by Defendants in their Rule 7.1 Statement, I note that these factual assertions are supported by other record evidence. (*See, e.g.,* Dkt. No. 39, Part 4, at 145 [Ex. A to Seaman Affid., attaching Plf.'s deposition transcript, in which he acknowledges that Nurse Theriault gave him Ibuprofen on Jan. 6, 2005].)

[179]    In addition to being supported by the record evidence cited by Defendants in their Rule 7.1 Statement, I note that these factual assertions are supported by other record evidence. (*See, e.g.,* Dkt. No. 39, Part 4, at 199-202 [Ex. A to Seaman Affid., attaching Plf.'s deposition transcript, in which he acknowledges that, in late January of 2005, Def. Kasulke examined him and sent him to receive x-rays].)

from Gouverneur C.F. on or about May 14, 2005.  These facts, in and of themselves, do not

establish even a hint of deliberate indifference on the part of Defendant Kasulte at any time on or

before January 25, 2005.

Plaintiff argues that Defendant Kasulke should have seen Plaintiff *after* January 25, 2005,

because he sent "three or four" letters of complaint to Defendant Kasulke seeking further

diagnostic testing of his back (due to Plaintiff's belief that the x-ray technician had erred by not

taking x-ray films of Plaintiff's *left* side).  (Dkt. No. 42, Part 1, ¶¶ 113-121 [Plf.'s Rule 7.1

Response]; Dkt. No. 42, Part 3, at 15-16 [Plf.'s Memo. of Law]; Dkt. No. 39, Part 4, at 197-99,

203-04 [Ex. A to Seaman Affid., attaching Plf.'s deposition transcript].)[180]  Specifically, Plaintiff

has sworn that he wrote these letters on or about January 27, 2005, at some point in February of

2005, at some point in March of 2005, and on April 28, 2005.  (Dkt. No. 39, Part 4, at 197-98,

203 [Ex. A to Seaman Affid., attaching Plf.'s deposition transcript]; Dkt. No. 42, Part 1, ¶ 121

[Plf.'s Rule 7.1 Response, citing his verified Complaint].)  However, Defendant Kasulke has

sworn that "I do not recall receiving any letters from Mr. Cusamano in which he requested

further diagnostic tests of his back."  (Dkt. No. 39, Part 42, ¶ 15 [Kasulke Decl.].)  Plaintiff

merely challenges the *credibility* of this affidavit testimony, which is not a sufficient means by

which to create a question of fact on a motion for summary judgment.  (Dkt. No. 42, Part 1, ¶¶

113-21 [Plf.'s Rule 7.1 Response].)

In any event, even if Defendant Kasulke *had* received such letters from Plaintiff, that fact

---

[180]       Similarly, Plaintiff argues that, following January 25, 2005, Defendant Kasulke
failed to completely alleviate the back pain that Plaintiff was experiencing in that (1) Defendant
Kasulke failed to properly diagnose Plaintiff's back problem, and (2) Defendant Kasulke failed to
prescribe Plaintiff the appropriate medication.  (Dkt. No. 42, Part 1, ¶¶ 122-123 [Plf.'s Rule 7.1
Response].)

would not elevate his not seeing Plaintiff after January 25, 2005, to a level of deliberate
indifference under the Eighth Amendment.  The Supreme Court has specifically explained that
"the question of whether an X-ray–or additional diagnostic techniques or forms of treatment–is
indicated is a classic example of a matter for medical judgment.  A medical decision not to order
an X-ray, or like measures, does not represent cruel and unusual punishment.  At most it is
medical malpractice. . . . ."  *Estelle*, 429 U.S. at 107.[181]  It should be noted that Defendant
Kasulke has also sworn that, "[i]n light of my negative clinical exam [of Plaintiff] and [the]
negative x-ray [of Plaintiff], I do not see how any more involved testing would have been called
for."  (Dkt. No. 39, Part 42, ¶ 16 [Kasulke Decl.].)

As I read Plaintiff's complaints about the medical care provided to him by Defendant
Kasulke in this action, I am reminded of what the Second Circuit once observed:

> It must be remembered that the State is not constitutionally obligated,
> much as it may be desired by inmates, to construct a perfect plan for
> [medical] care that exceeds what the average reasonable person would
> expect or avail herself of in life outside the prison walls.  [A]
> correctional facility is not a health spa, but a prison in which convicted
> felons are incarcerated.  Common experience indicates that the great
> majority of prisoners would not in freedom or on parole enjoy the
> excellence in [medical] care which plaintiff[] understandably seeks

---

[181]     *See also Sonds v. St. Barnabas Hosp. Corr. Health Servs.,* 151 F. Supp.2d 303,
312 (S.D.N.Y. 2001) (prisoner's "disagreements over medications, diagnostic techniques (e.g.,
the need for X-rays), forms of treatment, or the need for specialists or the timing of their
intervention [with regard to the treatment of his broken finger], are not adequate grounds for a
section 1983 claim.  These issues implicate medical judgments and, at worst, negligence
amounting to medical malpractice, but not the Eighth Amendment.") [citation omitted]; *cf.*
*O'Bryan v. Federal Bureau of Prisons,* 07-CV-0076, 2007 U.S. Dist. LEXIS 65287, at *24-28
(E.D.Ky. Sept. 4, 2007) (holding no deliberate indifference where prisoner wore wrist
brace/bandage on his broken wrist for two months even though he had asked for a cast; finding
that "the type of wrap would only go the difference of opinion between a patient and doctor about
what should be done, and the Supreme Court has stated that a difference of opinion regarding the
plaintiff's diagnosis and treatment does not state a constitutional claim.").

> . . . . We are governed by the principle that the objective is not to
> impose upon a state prison a model system of [medical] care beyond
> average needs but to provide the minimum level of [medical] care
> required by the Constitution. . . . The Constitution does not command
> that inmates be given the kind of medical attention that judges would
> wish to have for themselves . . . .

*Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986) [internal quotations and citations omitted].

For these reasons, <u>I recommend that, under Fed. R. Civ. P. 56, the Court dismiss Plaintiff's inadequate-medical-care claim against Defendant Kasulke</u>.

### K. Whether Plaintiff's Access-to-Courts Claim Against Defendant Cornelius Should Be Dismissed Due to Lack of Evidence

As stated above, Defendants argue that Plaintiff's access-to-courts claim should be dismissed because there is no evidence that Defendant Cornelius lost Plaintiff's legal materials intentionally or recklessly and, in any event, there is no evidence that the loss materially prejudiced any legal action Plaintiff sought to pursue.[182]

It is well settled that inmates have a First Amendment right to "petition the Government for a redress of grievances."[183] This right, which is more informally referred to as a "right of access to the courts," requires States "to give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights."[184] "However, this right is not

---

[182]     (Dkt. No. 39, Part 45, at 19-21 [Defs.' Memo. of Law].)

[183]     *See* U.S. CONST. amend I ("Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.").

[184]     *Bounds v. Smith*, 430 U.S. 817, 828 (1977), *modified on other grounds*, *Lewis v. Casey*, 518 U.S. 343, 350 (1996); *see also Bourdon v. Loughren*, 386 F.2d 88, 92 (2d Cir. 2004) [citations omitted].

'an abstract, freestanding right to a law library or legal assistance' and cannot ground a Section 1983 claim without a showing of 'actual injury.'"[185]  As a result, to state a claim for denial of access to the courts, a plaintiff must allege (1) that the defendant acted deliberately and maliciously, and (2) that the plaintiff suffered an actual injury.[186]  It is worth noting that "[t]his actual injury requirement 'is not satisfied by just any type of frustrated legal claim,' because the Constitution guarantees only the tools that 'inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement."[187] "'Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.'"[188]

　　　As a threshold matter, I find that the Court need not address the evidentiary insufficiency of this claim because of the pleading insufficiency of the claim, which the Court may (and indeed must) address *sua sponte* under 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b).  Specifically, I find that, even construed with the utmost of special leniency, Plaintiff's Complaint has failed to allege facts plausibly suggesting that Defendant Cornelius's loss of Plaintiff's legal materials on or about March 13, 2005 (by placing them in a "storage bin" rather than in Plaintiff's third "draft bag" during Plaintiff's transfer from Gouverneur C.F. to Clinton C.F.), was anything more than

---

　　　[185]　　*Collins v. Goord,* 438 F. Supp.2d 399, 415 (S.D.N.Y. 2006) (quoting *Lewis v. Casey*, 518 U.S. 343, 351 [1996]).

　　　[186]　　*Lewis*, 518 U.S. at 353; *Renelique v. Duncan*, 03-CV-1256, 2007 WL 1110913, at *9 (N.D.N.Y. Apr. 12, 2007) (Strom, J.); *Howard v. Leonardo*, 845 F. Supp. 943, 946 (N.D.N.Y. 1994) (Hurd, M.J.).

　　　[187]　　*Collins*, 423 F. Supp.2d at 415-16 (quoting *Lewis*, 518 U.S. at 355).

　　　[188]　　*Id.*

*negligence.*[189]  Negligence is not actionable under the First Amendment (or any other provision

of the Constitution).[190]

In any event, even if the Court were to find that Plaintiff has alleged facts plausibly

suggesting that Defendant Cornelius's loss of Plaintiff's legal materials on or about March 13,

2005, was intentional or reckless, I would find that the record contains no admissible evidence of

that fact.  I note that, indeed, the record contains evidence that, on June 12, 2005, Plaintiff

---

[189]     (Dkt. No. 1, ¶ 7, "Tenth Cause of Action" [Plf.'s Compl.]; Dkt. No. 1, ¶ 6, Attached Pages 16-17 [Plf.'s Compl.].)

[190]     *See*, *supra*, note 176 of this Report-Recommendation; *see also, e.g., Farmer,* 511 U.S. at 835 ("[D]eliberate indifference [for purposes of an Eighth Amendment claim] describes a state of mind more blameworthy than negligence."); *Daniels v. Williams*, 474 U.S. 327, 331-33 (1986) (stating that "injuries inflicted by governmental negligence are not addressed by the United States Constitution" and rejecting § 1983 claim based on alleged due process violation under Fourteenth Amendment); *Hudson v. Palmer*, 486 U.S. 517, 531 (1984) ("[T]he Due Process Clause of the Fourteenth Amendment is not violated when a state employee negligently deprives an individual of property . . . ."); *Franks v. Delaware*, 438 U.S. 154, 171 (1978) ("Allegations of negligence or innocent mistake are insufficient [to state a claim under the Fourth Amendment]."); *Pena v. Deprisco*, 432 F.3d 98, 112 (2d Cir. 2005) ("In order to establish a violation of a right to substantive due process, a plaintiff must demonstrate not only government action but also that the government action was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.' . . . [T]he Fourteenth Amendment is not a 'font of tort law.' . . .  It does not provide a comprehensive scheme for determining the propriety of official conduct or render all official misconduct actionable. . . .  '[N]egligently inflicted harm is categorically beneath the threshold of constitutional due process.'") [citations omitted]; *Riddick v. Modeny*, No. 07-1645, 2007 WL 2980186, at *2 (3d Cir. Oct. 9, 2007) ("The protections afforded prisoners by the Due Process Clause of the Fourteenth Amendment are not triggered by the mere negligence of prison officials."); *Billington v. Smith*, 292 F.3d 1177, 1190 (9th Cir. 2002); ("The Fourth Amendment's 'reasonableness' standard is not the same as the standard of 'reasonable care' under tort law, and negligent acts do not incur constitutional liability."); *Myers v. Okla. County Bd. of County Com'rs*, 151 F.3d 1313, 1320 (6th Cir. 1998) ("[A]ctions leading to a confrontation, such as the decision to enter the apartment, must be more than merely negligent to be "unreasonable" for purposes of the Fourth Amendment inquiry."); *Madiwale v. Savaiko*, 117 F.3d 1321, 1326 (11th Cir. 1997) ("Negligent or innocent mistakes do not violate the Fourth Amendment."); *Sevier v. City of Lawrence, Kan.*, 60 F.3d 695, 699, n.7 (10th Cir. 1995) ("Mere negligent actions precipitating a confrontation [that was the subject of plaintiff's Fourth Amendment claim] would not, of course, be actionable under § 1983.").

himself characterized the loss as a "mistake[]."  (Dkt. No. 39, Part 30, at 2 [Ex. 26 to Seaman

Affid., attaching Plf.'s letter of June 12, 2005, to Def. Taylor].)  Similarly, the record contains

evidence that, on August 18, 2005, Plaintiff characterized the loss as the result of a failure by

Defendant Cornelius to "fulfill his promise to [Plaintiff] to pack the stack of legal documents that

remained in [Plaintiff's] 'bin.'"  (Dkt. No. 39, Part 31 [Ex. 27 to Seaman Affid., attaching Plf.'s

letter of Aug. 18, 2005, to Def. Taylor].)  Such mistakes or failures do not constitute anything

more than negligence.

In the alternative, I agree with Defendants that the record contains no evidence that the

loss caused Plaintiff any prejudice in his referenced legal proceedings.  I make this finding for the

reasons stated by Defendants in their memorandum of law and Rule 7.1 Statement.  (Dkt. No. 39,

Part 45, at 20-21 [Defs.' Memo. of Law]; Dkt. No. 39, Part 44, ¶¶ 93-100 [Defs.' Rule 7.1

Statement].)  I note that Defendants support each of the relevant factual assertions in their Rule

7.1 Statement with accurate record citations.  (Dkt. No. 39, Part 44, ¶¶ 93-100 [Defs.' Rule 7.1

Statement].)  Plaintiff fails to admit or deny each of those factual assertions in matching

numbered paragraphs (with the denials supported by specific and accurate record citations), in his

Rule 7.1 Response.  (Dkt. No. 42, Part 1, ¶¶ 124-132.)  Thus, those assertions are deemed

*admitted* for purposes of Defendants' motion, under Local Rule 7.1(a)(3).  Finally, Plaintiff fails

to offer any persuasive argument, in either his Opposition Memorandum of Law or his Rule 7.1

Response, as to why the loss of the legal materials in question caused him prejudice.  (Dkt. No.

42, Part 3, at 16 [Plf.'s Opp. Memo. of Law]; Dkt. No. 42, Part 1, ¶¶ 124-132.)[191]

---

[191]     Plaintiff's argument that Defendant Cornelius has not adduced an affidavit
denying Plaintiff's assertion that he promised to pack Plaintiff's legal materials appropriately
demonstrates (1) a misunderstanding of the issues that are material to Defendants' motion, (2) a

For these reasons, I recommend that, under Fed. R. Civ. P. 56, the Court dismiss Plaintiff's access-to-courts claim against Defendant Cornelius.  In the alternative, I recommend that the Court dismiss that claim under Fed. R. Civ. P. 12(b)(6).

**L.     Whether Plaintiff's Remaining Access-to-Courts Claims Should Be Dismissed *Sua Sponte* for Failure to State a Claim**

As stated above, in addition to the access-to-courts claim asserted against Defendant Cornelius, Plaintiff has asserted access-to-courts claims against Defendants Emrich, Don and John Doe # 3.  Specifically, Plaintiff has alleged as follows: (1) on or about January 21, 2005, Defendant Emrich interfered with Plaintiff's access to the courts by filing a misbehavior report against him (charging him with "destruction of state property"), causing the extension of his confinement in S.H.U., where he was restricted to merely three legal materials per day;[192] (2) on or about January 26, 2005, Defendant Don interfered with Plaintiff's access to the courts by wrongfully extending Plaintiff's previous disciplinary sentence in S.H.U., where he was restricted to receiving merely three legal materials per day;[193] and (3) on or about February 7, 2005, Defendant John Doe # 3 (who was either the S.H.U. Mail Officer or an employee of the Gouverneur C.F. Mail Room) interfered with Plaintiff's access to the courts by discarding, or

---

misunderstanding of the shifting burden on Defendants' motion, and (3) a failure to appreciate the significance of the fact that Plaintiff himself testified in his deposition that the officer in question may not even have been Defendant Cornelius, but some other officer.  (Dkt. No. 39, Part 4, at 63-64 [Ex. A to Seaman Affid., attaching Plf.'s deposition transcript]; *see also* Dkt. No. 39, Part 31 [Ex. 27 to Seaman Affid., attaching Plf.'s letter of Aug. 18, 2005, to Def. Taylor, stating that Def. Cornelius "*presumably* was the officer who packed my property"] [emphasis added].)

[192]     (Dkt. No. 1, ¶ 7, "Eleventh Cause of Action" [Plf.'s Compl.]; Dkt. No. 1, ¶ 6, Attached Pages 12, 16 [Plf.'s Compl.].)

[193]     (Dkt. No. 1, ¶ 7, "Seventh Cause of Action" [Plf.'s Compl.]; Dkt. No. 1, ¶ 6, Attached Pages 12-14, 16 [Plf.'s Compl.].)

failing to secure safe administrative passage of, Plaintiff's discovery motion in his federal court *habeas corpus* proceeding pending in the Southern District of New York.[194]

With regard to Plaintiff's access-to-courts claims against Defendants Emrich and Don, I find that, even when construed with the utmost of special leniency, Plaintiff's Complaint has failed to allege facts plausibly suggesting that (1) either of those two Defendants filed a false misbehavior report against Plaintiff with the *knowledge* that the sentence of disciplinary confinement that Plaintiff would experience following his conviction on that misbehavior report would interfere with his right to access the courts under the First Amendment, and/or (2) that the restriction to merely three legal materials per day, which Plaintiff experienced while in the Gouverneur C.F. S.H.U., *prejudiced* Plaintiff in any legal action attacking his criminal conviction or challenging the conditions of his confinement.

With regard to Plaintiff's access-to-courts claim against Defendant John Doe # 3, I find that Plaintiff has not named that Defendant in an Amended Complaint, nor has Plaintiff served that Defendant, as he was required to do by the Federal Rules of Civil Procedure and prior Order of this Court. Rule 41 of the Federal Rules of Civil Procedure permits the Court to *sua sponte* dismiss an action for failure to prosecute and/or failure to comply with an Order of the Court. Fed. R. Civ. P. 41(b).[195] As a result, Fed. R. Civ. P. 41(b) may be fairly characterized as

---

194    (Dkt. No. 1, ¶ 7, "Ninth Cause of Action" [Plf.'s Compl.]; Dkt. No. 1, ¶ 6, Attached Pages 15 and 16 [Plf.'s Compl.].)

195    Fed. R. Civ. P. 41(b) (providing, in pertinent part, that "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it"); *Saylor v. Bastedo*, 623 F.2d 230, 238-239 (2d Cir. 1980) (recognizing that, under the language of Fed. R. Civ. P. 41[b], a district court retains the inherent power to dismiss a plaintiff's complaint, *sua sponte*, for failure to prosecute) [citations omitted]; *accord*, *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630 (1962), *Theilmann v. Rutland Hospital, Inc.*,

providing for two independent grounds for dismissal: (1) a failure to prosecute the action, and (2)

a failure to comply with the Federal Rules of Civil Procedure or any order of court.  With regard

to the first ground for dismissal (a failure to prosecute the action), the Second Circuit has held

that it is within the trial judge's sound discretion to dismiss for want of prosecution.[196]

Furthermore, the Second Circuit has identified five factors that it considers when reviewing a

district court's order to dismiss an action for failure to prosecute under Fed. R. Civ. P. 41(b):

> [1] the duration of the plaintiff's failures, [2] whether plaintiff had
> received notice that further delays would result in dismissal, [3]
> whether the defendant is likely to be prejudiced by further delay, [4]
> whether the district judge has taken care to strike the balance between
> alleviating court calendar congestion and protecting a party's right to
> due process and a fair chance to be heard and [5] whether the judge has
> adequately assessed the efficacy of lesser sanctions.[197]

As a general rule, no single one of these five factors is dispositive.[198]

Here, I find that these five factors weigh decidedly in favor of dismissal.  Specifically, I

find that the duration of Plaintiff's failure is some two years, i.e., from the issuance of the Court's

---

455 F.2d 853, 855 (2d Cir. 1972); *see also* N.D.N.Y. L.R. 41.2(a) ("Whenever it appears that the
plaintiff has failed to prosecute an action or proceeding diligently, the assigned judge *shall* order
it dismissed.") [emphasis added]; *cf.* Fed. R. Civ. P. 16(f) ("On motion *or on its own*, the court
may issue any just orders . . . if a party or its attorney . . . fails to obey a scheduling or other
pretrial order.") [emphasis added].

[196]     *See Merker v. Rice*, 649 F.2d 171, 173 (2d Cir. 1981).

[197]     *See Shannon v. GE Co.*, 186 F.3d 186, 193 (2d Cir. 1999) (affirming Fed. R. Civ.
P. 41[b] dismissal of plaintiff's claims by U.S. District Court for Northern District of New York
based on plaintiff's failure to prosecute the action) [citation and internal quotation marks
omitted]; *see also Drake v. Norden Sys.*, 375 F.3d 248, 254 (2d Cir. 2004) (articulating same
standard in slightly different form); *accord*, *Ruzsa v. Rubenstein & Sendy Attys at Law*, No. 07-
0089, 2008 WL 706693, at *1 (2d Cir. March 17, 2008).

[198]     *See Nita v. Conn. Dep't of Env. Protection*, 16 F.3d 482 (2d Cir. 1994).

Order directing him to provide all documents necessary to maintain this action and serve

Defendants (including this Defendant), on August 25, 2006 (*see* Dkt. No. 6, at 3).[199]  I find that

Plaintiff has received adequate notice that this failure to name and/or serve Defendant John Doe

# 3 would result in dismissal.[200]  I find that Defendant John Doe # 3, who has not even been

served or afforded the opportunity to conduct discovery in this matter, is likely to be prejudiced

by a further delay.[201]  I find that the need to alleviate congestion on the Court's docket outweighs

Plaintiff's right to receive a further chance to be heard in this matter.[202]  Finally, I have

considered all less-drastic sanctions and find them to be inadequate or inappropriate under the

circumstances.

In the alternative, I find that Plaintiff's claim against Defendant John Doe # 3 should be

dismissed on the ground that he has violated Fed. R. Civ. P. 4(m), because he has not offered

---

[199]    *See Ruzsa v. Rubenstein & Sendy Attys at Law*, No. 07-0089, 2008 WL 706693, at *1 (2d Cir. March 17, 2008) (dismissing action, in part because of plaintiff's seven-month delay during prosecution of action).

[200]    This notice has come from the following: (1) the Court's Order of August 25, 2006, in which the Court specifically advised Plaintiff of his duty to "comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action" (Dkt. No. 6); (2) Local Rule 41.2(a) of the Local Rules of Practice for this Court, which the Clerk's Office has provided to all correctional facilities in New York State; (3) Fed. R. Civ. P. 4(m); and/or (4) Fed. R. Civ. P. 16(f)(C).

[201]    *See, e.g.*, *Geordiadis v. First Boston Corp.*, 167 F.R.D. 24, 25 (S.D.N.Y. 1996) ("The passage of time always threatens difficulty as memories fade.  Given the age of this case, that problem probably is severe already.  The additional delay that plaintiff has caused here can only make matters worse.").

[202]    I note that it is cases like this one that delay the resolution of other cases, and that contribute to the Second Circuit's dubious distinction as having (among the twelve circuits, including the D.C. Circuit) the longest median time to disposition for prisoner civil rights cases, between 2000 and 2005 (9.8 months, as compared to a national average of 5.7 months).

"good cause" for his failure to enable the Marshals Service to effect service on that Defendant.  I note that, under Fed. R. Civ. P. 4(m), the Court need not issue such an order only upon motion of defense counsel but may do so *sua sponte*.  *See* Fed. R. Civ. 4(m) ("[T]he Court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time.").

For these alternative reasons, I recommend that the Court *sua sponte* dismiss Plaintiff's access-to-courts claims against Defendants Emrich and Don, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b), and under Fed. R. Civ. P. 12(b0(6).  I also recommend that the Court *sua sponte* dismiss Plaintiff's access-to-courts claim against Defendant John Doe # 3 for failure to timely name and/or serve him pursuant to Fed. R. Civ. P. 41(b) and/or Fed. R. Civ. P. 4(m).

**M.     Whether, in the Alternative, the Doctrine of Qualified Immunity Protects Defendants from Liability with Regard to Certain of Plaintiff's Claims**

As stated above, Defendants argue that, in the alternative, the doctrine of qualified immunity protects Defendants from liability with regard to Plaintiff's claims of harassment, due process violations, and inadequate medical care.[203]  Because I have already found that adequate grounds exist upon which to base a recommendation that the Court dismiss these three claims, I need not, and do not, address this argument except to make the following report: based on a cursory review of the papers, I am persuaded by Defendants' qualified immunity argument as it relates to Plaintiff's claims of due process violations and inadequate medical care, and I am not persuaded by Plaintiff's brief and conclusory response to that argument.  (*Compare* Dkt. No. 39,

---

[203]     (Dkt. No. 39, Part 45, at 21-23 [Defs.' Memo. of Law].)

Part 45, at 21-23 [Defs.' Memo. of Law] *with* Dkt. No. 42, Part 3, at 16 [Plf.'s Opp. Memo. of Law].)

### N.  Denial of Any Request by Plaintiff, During any Appeal from this Report-Recommendation, to Supplement the Record on Defendants' Motion

In the event that, during any objections to this Report-Recommendation, Plaintiff attempts to supplement the record on Defendants' motion for summary Judgment, I respectfully recommend that the Court, in exercising its discretion on the matter, decline to permit him to do so.

The Second Circuit recognizes that the decision of whether or not to accept such evidence rests in the sound discretion of the district court. *See*, *e.g.*, *Hynes v. Squillance*, 143 F.3d 653, 656 (2d Cir. 1998) ("[W]e have upheld the exercise of the district court's discretion in refusing to allow supplementation of the record upon the district court's *de novo* review.") (affirming decision by Scullin, J.) [citations omitted].  In deciding whether or not a district court has abused that discretion in denying the supplementation of the record on appeal, the Second Circuit considers factors such as efficiency and fairness.  *See Hynes v. Squillance*, 143 F.3d at 565 ("Considerations of efficiency and fairness militate in favor of a full evidentiary submission for the Magistrate Judge's consideration . . . .").

With regard to the efficiency consideration, I find that permitting Plaintiff (on appeal) to adduce evidence that was not presented before me would be an inefficient use of judicial resources, and indeed "would frustrate the purpose of the Magistrates Act." *Greenhow v. Sec'y of Health & Human Servs.*, 863 F.2d 633, 638-39 (9th Cir. 1988) ("[A]llowing parties to litigate fully their case before the magistrate and, if unsuccessful, to change their strategy and present a

different theory to the district court would frustrate the purpose of the Magistrates Act."),

*overruled on other grounds by U.S. v. Hardesty*, 977 F.2d 1347 (9th Cir. 1992).

With regard to the fairness consideration, I note that the Fifth Circuit has suggested four factors that a court might consider in deciding whether to accept additional evidence after a magistrate judge's recommendation has been issued:

> (1) the moving party's reasons for not originally submitting the evidence; (2) the importance of the omitted evidence to the moving party's case; (3) whether the evidence was previously available to the non-moving party when it responded to the summary judgment motion; and (4) the likelihood of unfair prejudice to the non-moving party if the evidence is accepted.

*Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F,3d 847, 862 (5th Cir. 2003) [citation omitted].  Generally, these fairness factors are considered by Courts within the Second Circuit (and outside of the Second Circuit).[204]  Here, of course, I cannot make any finding

---

[204]     *See, e.g., Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137-38 (2d Cir. 1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters,* 894 F.2d 36, 40 n.3 (2d Cir. 1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *Alexander v. Evans,* 88-CV-5309, 1993 WL 427409, at *18 n.8 (S.D.N.Y. Sept. 30, 1993) (declining to consider affidavit of expert witness that was not before magistrate) [citation omitted]; s*ee also Murr v. U.S.*, 200 F.3d 895, 902, n.1 (6th Cir. 2000) ("Petitioner's failure to raise this claim before the magistrate constitutes waiver."); *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendations are deemed waived.") [citations omitted]; *Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994) ("By waiting until after the magistrate court had issued its findings and recommendations [to raise its procedural default argument] . . . Respondent has waived [his] procedural default . . . objection[].") [citations omitted]; *Patterson-Leitch Co. Inc. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988) ("[A]n unsuccessful party is not entitled as of right to de novo review by the judge of an argument never seasonably raised before the magistrate.") [citation omitted].

regarding the first two fairness factors since Plaintiff has not requested permission to supplement the record on Defendants' motion for summary judgment.  However, I find that, should he request that permission, the third and fourth factors would weigh decidedly against granting him that permission.  Plaintiff has had a full and fair opportunity to be heard on his claims, including a full and fair opportunity to (1) conduct discovery in this matter, and (2) respond with evidence and argument to Defendants' motion for summary judgment.[205]  Defendants are entitled to have their motion decided on a level playing field, based on evidence and arguments to which they could properly reply, under the Federal Rules of Civil Procedure and Local Rules of Practice.

For these reasons, I recommend that the Court, in exercising its discretion on the issue, deny any request by Plaintiff to supplement the record on Defendants' motion for summary judgment, during any objections to this Report-Recommendation.

## IV.    ANALYSIS OF PLAINTIFF'S CROSS-MOTIONS

### A.    Plaintiff's Cross-Motion for Summary Judgment

Plaintiff's cross-motion for summary judgment is defective or without merit for three independent reasons: (1) Plaintiff's request is moot to the extent that I have already found that summary judgment should be entered in Defendants' favor; (2) Plaintiff's request is not supported by a *proper* Rule 7.1 Statement of Material Facts (which, among other things, gave Defendants adequate notice of the material facts about which Plaintiff contends there exists no genuine

---

[205]    (*See* Dkt. No. 40 [Order filed Jan. 22, 2008, granting Plaintiff an extension until Jan. 31, 2008, to respond to Defendants' motion]; Dkt. No. 41 [Plf.'s Response, filed Feb. 14, 2008]; Dkt. No. 42 [Plf.'s Supplemental Response, filed Feb. 19, 2008]; Dkt. No. 44 [Plf.'s Second Supplemental Response, filed March 19, 2008].)

dispute);[206] and (3) Plaintiff's request is not supported by a showing the admissible evidence in the record supports an entry of summary judgment in his favor.

As a result, I recommend that the Court deny Plaintiff's cross-motion for summary judgment.

### B.    Plaintiff's Cross-Motion for an Order to Compel Discovery

In his Opposition Memorandum of Law, Plaintiff requests, *inter alia*, "an order to compel discovery" (and, implicitly, an Order staying the Court's decision regarding Defendants' motion for summary judgment pending Plaintiff's receipt of that discovery).  (Dkt. No. 42, Part 3, at 1 [Plf.'s Opp. Memo. of Law].)  I deny this request because Plaintiff has failed to show the sort of cause that is required to support the granting of such a request under Fed. R. Civ. P. 56(f).  Indeed, I find that Plaintiff's request is so lacking in merit as to be frivolous.

Rule 56(f) provides as follows:

> Should it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed. R. Civ. P. 56(f).  "To request discovery under Rule 56(f), a party must file an affidavit describing: (1) what facts are sought and how they are to be obtained; (2) how these facts are

---

[206]    Rather, Plaintiff sets forth these material facts in his so-called "Unsworn Declaration / 7.1 Statement of Facts / Affirmation in Support of Petition," which (1) intermingles Plaintiff's partial response to Defendants' assertion of material facts (in unmatching numbered paragraphs) with his own assertion of material facts, (2) often fails to support his own assertion of material facts with specific citations to the record where the facts asserted are established, and/or (3) often neglects to assert facts that would be necessary to support an entry of summary judgment in his favor.  (*See* Dkt. No. 42, Part 1, at 3-42.)  Thus, under Local Rule 7.1(a)(3), Defendants had no duty to file a Rule 7.1 Response to Plaintiff's purported "Rule 7.1 Statement."

reasonably expected to raise a genuine issue of material fact; (3) what efforts the affiant has made

to obtain them; and (4) why the affiant's efforts were unsuccessful." *Gualandi v. Adams*, 385

F.3d 236, 244 (2d Cir. 2004) [citation omitted]; *accord, Concourse Rehab. & Nursing Ctr. Inc. v.

Whalen*, 249 F.3d 136, 146, n.3 (2d Cir. 2001) [citation omitted].

Here, Plaintiff has failed to satisfy the first, second, and third requirements.  First, he has

failed to demonstrate precisely what information he seeks to obtain through his "motion to

compel." (*See generally* Dkt. No. 42, Part 3, at 1 [Plf.'s Opp. Memo. of Law].)  Out of special

solicitude to Plaintiff, I have *sua sponte* reviewed Plaintiff's so-called "Unsworn Declaration / 7.1

Statement of Facts / Affirmation in Support of Petition" for any indication of what information

he seeks to obtain through his "motion to compel," and I am unable to locate anywhere within

that forty-page document an indication of such information. (*See generally* Dkt. No. 42, Part 1,

at 3-42 [Plf.'s Decl.].)

Second, Plaintiff has not demonstrated how the (unidentified) information sought is

reasonably expected to create a genuine issue of material fact on any of the issues presented by

Defendants' on their motion.  It must be remembered that an opposing party's "mere hope" that

further evidence may develop to create a genuine issue of fact is an insufficient basis upon which

to justify the granting of such a stay. *Contemporary Mission, Inc. v. USPS*, 648 F.2d 97, 107 (2d

Cir. 1981) [citation omitted]; *accord, Sanders v. Quickstak, Inc.*, 889 F. Supp. 128, 132

(S.D.N.Y. 1995); *Witter v. Abbell-Howe Co.*, 765 F. Supp. 1144, 1150 (W.D.N.Y. 1991); *Dixon

v. Bowen*, 126 F.R.D. 483, 486 (S.D.N.Y. 1989).

Third, the deadline for filing motions to compel discovery in this action expired on

September 30, 2007–one month after the discovery deadline expired on August 31, 2007.  (Dkt.

Nos. 21, 23, 30, 37.)  Plaintiff filed his "motion to compel discovery" when he responded to

Defendants' motion for summary judgment on January 31, 2008.  (Dkt. No. 42, Part 3, at 1 [Plf.'s

Opp. Memo. of Law]; *see also* Dkt. No. 42, Part 1, at 2 [Decl. of Service, dated Jan. 31, 2008].)

Plaintiff has failed to explain why he delayed approximately four months in seeking an Order

from the Court compelling discovery from Defendants.  (This delay has caused Defendants to go

to the effort and expense of preparing and filing a motion for summary judgment on December

28, 2007.)  Plaintiff has also failed to explained what efforts he previously made to obtain

whatever discovery he is seeking, and why those efforts were unsuccessful.

Finally, Plaintiff's implicit request for a stay of the Court's decision regarding Defendants'

motion for summary judgment (so that he may receive further discovery from Defendants that he

claims he needs to fairly oppose their motion for summary judgment) appears undermined by his

argument, in his Opposition Memorandum of Law, that not only should Defendants' motion for

summary be denied but summary judgment should actually be entered in *his* favor due to the

absence of a genuine issue of material facts regarding the issues raised by Defendants.  Simply

stated, either Plaintiff has had a fair and adequate opportunity to discover from Defendants

material facts and evidence in this action or he did not.  I have found no reason that the more-

than seven-month discovery period in this action deprived Plaintiff of that opportunity.

(*Compare* Dkt. No. 21 [Pretrial Scheduling Order, filed Jan. 23, 2007] *with* Dkt. No. 30, at 3

[Order filed July 3, 2007, extending discovery deadline to Aug. 31, 2007].)

For these reasons, I deny Plaintiff's motion for an Order to compel discovery.

### C.      Plaintiff's Cross-Motion for Leave to Amend His Complaint

In his Opposition Memorandum of Law, Plaintiff also requests, *inter alia*, an Order

granting him leave to file an Amended Complaint.  (Dkt. No. 42, Part 3, at 1 [Plf.'s Opp. Memo.

of Law].)  The purpose of the request is so that Plaintiff can (1) assert an unspecified Fifteenth

Cause of Action against all Defendants "in the event that [Plaintiff's] request for summary

judgment in [his] favor is not granted," and (2) to further identify Defendant John Doe # 3.  (Dkt.

No. 42, Part 1, ¶¶ 138, 139 [Plf.'s Decl.].)  I deny this request because Plaintiff has failed to show

the sort of cause that is required to support the granting of such a request under Fed. R. Civ. P.

15.

Because an Answer has already been filed in this case (*see* Dkt. No. 19), Plaintiff's

motion to amend is made pursuant to Fed. R. Civ. P. 15(a)(2), which provides that "the court

should freely give leave [to amend] when justice so requires."  Fed. R. Civ. Proc. 15(a)(2);

*Foman v. Davis*, 371 U.S. 178, 182 (1962); *Manson v. Stacescu*, 11 F.3rd 1127, 1133 (2d Cir.

1993).  Elaborating on this "justice so requires" standard, the Supreme Court has explained:

> In the absence of any apparent or declared reason–such as undue delay,
> bad faith or dilatory motive on the part of the movant, repeated failure
> to cure deficiencies by amendments previously allowed, undue
> prejudice to the opposing party by virtue of allowance of the
> amendment, futility of amendment, etc.–the leave sought should . . . be
> 'freely given.'

*Foman*, 371 U.S. at 182; *accord*, *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir.

2001) ("[Leave to amend] should not be denied unless there is evidence of undue delay, bad

faith, undue prejudice to the non-movant, or futility.").

## 1.      Undue Delay

The Second Circuit has held that "despite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000).

Here, the deadline for the filing of motions to amend in this action expired on March 30, 2007.  (Dkt. No. 21, at 1-2 [Pretrial Scheduling Order, filed Jan. 23, 2007].)  Plaintiff filed his motion to amend when he responded to Defendants' motion for summary judgment on January 31, 2008.  (Dkt. No. 42, Part 3, at 1 [Plf.'s Opp. Memo. of Law]; *see also* Dkt. No. 42, Part 1, at 2 [Decl. of Service, dated Jan. 31, 2008].)  In his Memorandum of Law, Plaintiff has failed to explain why he delayed approximately ten months in seeking an Order from the Court granting him leave to amend his Complaint.  (*See generally* Dkt. No. 42, Part 3, at 1 [Plf.'s Opp. Memo. of Law].)  Again, out of special solicitude to Plaintiff, I have *sua sponte* reviewed Plaintiff's so-called "Unsworn Declaration / 7.1 Statement of Facts / Affirmation in Support of Petition" for such an explanation.  As far as I can tell, the only reason Plaintiff offers (within that forty-page document) is that, because he did not have enough U.S. Marshal service-of-process forms ("USM-285 Forms") when he mailed his Complaint to the Court on or about May 1, 2006, he decided to identify one of the officers who had participated in the assault on January 5, 2005, merely as "John Doe 3" rather than by name (so he would not be forced to complete a USM-285 Form with respect to him).  (Dkt. No. 42, Part 1, ¶¶ 138-139 [Plf.'s Decl.].)

As an initial matter, this explanation is inadequate since it does not explain why Plaintiff did not seek to name Defendant John Doe # 3 in an Amended Complaint during the nearly two

years that followed May 1, 2006 (when, clearly, he did have access to more USM-285 Forms).

Furthermore, this explanation is inadequate since it does not even give Defendant John Doe # 3's

actual name.  Finally, and most important, this explanation is inadequate because it does not

explain why Plaintiff delayed in requesting the second amendment to his Complaint that he now

seeks–namely, an assertion of an unspecified Fifteenth Cause of Action against all Defendants.

Under the circumstances, it appears that there has been an undue delay on the part of

Plaintiff weighing against the issuance of an Order granting him leave to amend.

### 2.      Undue Prejudice

An example of the sort of undue prejudice that might result to an opposing party by virtue

of allowing an amendment is if the amendment alleges a "new set of operative facts" that would

be "especially prejudicial [to the defendant] given the fact that discovery had already been

completed and [defendant] had already filed a motion for summary judgment."  *Assocs., Inc. v.*

*Cola Petroleum, Ltd.*, 760 F.2d 442, 446 (2d Cir. 1985) (denying leave to amend where new

claim concerned different period of time and different theory of recovery from original claim).

Here, I cannot be certain that Plaintiff's proposed Fifteenth Cause of Action would allege

a "new set of operative facts" since Plaintiff has neglected to identify that proposed cause of

action.  Moreover, I cannot be certain that Plaintiff's proposed naming of Defendant John Doe #

3 would prejudice that Defendant since Plaintiff has, again, neglected to name him.  However,

the test is not whether I am certain of those things, but whether Plaintiff has met his burden of

persuading me (on his motion to amend) that such undue prejudice would *not* result from the

Court's granting of his motion.  I am not so persuaded since, clearly, discovery in this action is

complete (in this more-than two-year-old case), and Defendants have gone to the expense of

108

filing a voluminous motion for summary judgment.  (Dkt. No. 39, Parts 1-50 [Defs.' Motion, totaling some 348 pages in length].)

Under the circumstances, it appears that such an amendment at this late stage of the proceeding would likely cause undue prejudice to Defendants, weighing against the issuance of an Order granting him leave to amend.

### 3.      Futility

Because two independent reasons already exist not to freely grant Plaintiff's motion to amend, I need not, and do not, address the issue of whether Plaintiff's proposed amendment would be futile, except to note that I would not even be able to address that issue, since Plaintiff has not specifically described his proposed amendments.

Before concluding this section, I would like to make only one point: many of the flaws contained in Plaintiff's motion to amend would have been cured had he complied with Local Rule 7.1(a)(4) of the Local Rules of Practice of this District, which provides, in pertinent part as follows:

> An unsigned copy of the proposed amended pleading must be attached to a motion brought under Fed. R. Civ. P. 14, 15, 19-22. Except as the Court otherwise provides, the proposed amended pleading must be a complete pleading, which will supersede the original pleading in all respects.  No portion of the prior pleading shall be incorporated into the proposed amended pleading by reference.

> The motion must set forth specifically the proposed amendments and identify the amendments in the proposed pleading, either through the submission of a red-lined version of the original pleading or other equivalent means.

This rule is not merely technical in nature.  One of the purposes of the requirement that motions to amend be accompanied by a copy of the proposed amended complaint is to enable the Court to

109

examine the exact amendment that it is being asked to permit.  Another of the purposes is to

"ensure that all of the allegations asserted against the [defendants named therein] are contained in

a single document, thereby reducing the likelihood that a party will overlook one or more

allegations against him." *Williams v. LaClair*, 07-CV-0545, 2008 WL 2626822, at *1 (N.D.N.Y.

June 27, 2008) (Treece, M.J.).[207]  Finally, this requirement "eliminates the confusing nature of

'piecemeal' amended pleadings."  *Allen v. Brown*, 96-CV-1599, 1997 WL 610720, at *1

(N.D.N.Y. Sept. 26, 1997) (Pooler, J.) [citation omitted].  Indeed, Plaintiff's failure to comply

with Local Rule 7.1(a)(4) constitutes an independent ground upon which to deny his motion.

    For these reasons, <u>I deny Plaintiff's motion for an Order granting him leave to amend his

Complaint</u>.  I note that I find that, as a Magistrate Judge, I have the authority to make such a

decision without issuing a report-recommendation.[208]  A similar conclusion has been reached by

numerous judges in this Circuit.[209]  For example, in an appeal in which the appellant challenged

---

[207]    *Accord*, *Howard v. Potter*, 06-CV-0982, 2008 WL 495569, at *2 (N.D.N.Y. Feb. 20, 2008) (Hurd, J.); *Smith v. West*, 03-CV-1178, 2006 WL 3729316, at *2 (N.D.N.Y. Dec. 15, 2006) (Di Bianco, M.J.); Brown v. Duncan, 00-CV-0290, 2006 WL 1977469, at *6 (N.D.N.Y. July 11, 2006) (Sharpe, J., adopting, on *de novo* review, Report-Recommendation by Lowe, M.J.).

[208]    *See* 28 U.S.C. § 636(b)(1)(A) (providing that a district judge "may designate a magistrate to hear and determine any pretrial matter," with certain enumerated exceptions not relevant here); Fed. R. Civ. P. 72(a) (providing that "[a] magistrate judge to whom a pretrial matter not dispositive of a claim or defense of a party is referred to hear and determine shall . . . when appropriate enter into the record a written order setting forth the disposition of the matter.").

[209]    *See*, *e.g.*, *Northern Assurance Co. of America v. Square D. Co.*, 201 F.3d 84, 86-90 (2d Cir. 2000) (reviewing order by Hurd, M.J., N.D.N.Y., dated 2/4/98, denying motion to amend on ground of untimeliness, without questioning the magistrate judge's authority to do so); *Kilcullen v. New York State Dept. of Transp.*, 96-CV-2023, 2001 WL 1248264 (N.D.N.Y. Oct. 17, 2001) (Treece, M.J.) (denying motion to amend on ground of futility without issuing report-recommendation), *appeal dismissed*, No. 02-7616, 2003 WL 151251 (2d Cir. Jan. 15, 2003)

the authority of a magistrate judge to deny a motion to amend without issuing a report-recommendation, the Second Circuit rejected that argument based, in part, on *Maurice v. State Farm Mut. Auto. Ins. Co.*, 235 F.3d 7, 9 n.2 (1st Cir. 2000).  *Marsh v. Sheriff of Cayuga County*, 36 F. App'x 10, 11 (2d Cir. May 31, 2002).[210]

### D.    Sanction Under Fed. R. Civ. P. 11 for Making Misrepresentations to Court

As stated above in Part I.A. of this Report-Recommendation, before he signed his Complaint in this action on May 1, 2006, Plaintiff had filed at least four other federal or state court actions or appeals relating to his imprisonment.[211]  Plaintiff failed to disclose any of these cases in Paragraph 5 of his *sworn* Complaint, where he checked the box labeled "No" next to the question "Have you ever filed any other lawsuits in any state or federal court relating to your imprisonment?"  (Dkt. No. 1, ¶ 5[a] [Plf.'s Verified Compl.].)

Generally, such information is material in prisoner civil rights actions since it enables the Court to determine one or more of the following issues: (1) whether any of the issues in the

---

(unpublished opinion); *Chapdelaine v. Keller*, 95-CV-1126, 2000 U.S. Dist. LEXIS 14816, *2-3 (N.D.N.Y. July 25, 2000) (holding that motions to amend are nondispositive motions), *aff'd*, 2002 U.S. App. LEXIS 1674 (2d Cir. Jan. 31, 2002) (unpublished opinion); *Marsh v. Sheriff of Cayuga County*, 95-CV-1198, Mem.-Decision & Order, Dkt. No. 39 (N.D.N.Y. July 20, 1999) (Smith, M.J.) (denying motion to amend on grounds of prejudice and delay without issuing report-recommendation), *aff'd*, No. 99-368, 2002 WL 1159631 (2d Cir. May 31, 2002) (unpublished opinion).  *See also Johnson v. Dept. of Homeless Serv.*, 00-CV-3920, 2001 WL 246370 (S.D.N.Y. March 12, 2001) (Fox, M.J.) (denying motion to amend on ground of futility without issuing report-recommendation), *aff'd sub nom. Johnson v. Doe*, No. 01-7522, 2002 WL 730849 (2d Cir. Apr. 25, 2002) (unpublished opinion).

[210]    Although this summary affirmance by the Second Circuit is not itself precedential authority, *see* Rules of the United States Court of Appeals for the Second Circuit, § 0.23, it clearly acknowledges the persuasive effect of *Maurice* in this Circuit.  *See Khan v. Ashcroft*, 352 F.3d 521, 525 (2d Cir. 2003) (relying on summary affirmance for similar purpose).

[211]    *See*, *supra*, note 6 of this Report-Recommendation.

111

action have been previously litigated and decided (for purposes of the doctrines of res judicata and collateral estoppel); (2) whether the plaintiff had, prior to being granted *in forma pauperis status* in this action, earned "three strikes" for purposes of 28 U.S.C. § 1915(g);[212] (3) whether the plaintiff had a record of frivolous litigation sufficient to warrant a "bar order" (i.e., an order barring him from litigating further in that court without meeting certain preconditions) pursuant to 28 U.S.C. § 1651(a); and (4) whether the plaintiff's litigation experience was so extraordinary that it effectively dispenses with the need to afford him special solicitude.  While a plaintiff is under no duty to provide this information in order to state an actionable civil rights claim, here, Plaintiff *chose* to answer a question on a form complaint calling for such information, and *swore* to the truthfulness of his answer.

In addition, when Plaintiff signed his Complaint, he did so as "Anthony Cusamano." (Dkt. No. 1, at 27 [Plf.'s Verified Compl.].)  He now states that "Anthony Cusamano" is not his "true name," which is "Michael Bonano."  (Dkt. Nos. 22, 31, 43, 44, 45.)  If "Anthony Cusamano" is in fact not Plaintiff's true name, then he violated Fed. R. Civ. P. 10 and Fed. R. Civ. P. 11 when he filed his Complaint.[213]  If "Anthony Cusamano" is in fact Plaintiff's true

---

[212]     For example, Plaintiff had earned at least one such strike before filing this action. *See Armatullo v. Vasquez*, 03-CV-8189, Order of Dismissal (S.D.N.Y. filed Oct. 16, 2003) (Mukasey, J.) (*sua sponte* dismissing prisoner civil rights action for failure to state claim pursuant to 28 U.S.C. § 1915[e][2]).  Due to Plaintiff's lack of candor, the Court can only speculate as to what state court actions Plaintiff has filed, under one of the four names he uses, that have been dismissed for failure to state a claim.

[213]     *See* Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties."); Fed. R. Civ. P. 11(a),(b) ("Every pleading . . . must be signed by . . . a party personally if the party is unrepresented. . . .  By presenting to the court a pleading . . . an . . . unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . it is not being presented for any improper purpose . . . [and] the factual contentions have evidentiary support . . . .").

name, then he violated Fed. R. Civ. P. 11 when he subsequently represented to the Court that his

true name is "Michael Bonano."[214]   Finally, to make matters worse, Plaintiff *verified* his

Complaint, swearing under penalty of perjury that the allegations contained therein (including, of

course, his name) were true and correct.  (*Id*. at 1, 27.)

A plaintiff's true name is, of course, material to his action for several reasons.  First,

"[t]he public has a right to know who is using the courts."[215]   Second, a defendant (who has been

hailed into court by the plaintiff) "ought not have to search for [the plaintiff's] true identity"[216]

Third, and perhaps most importantly, such a lie "tampers with the judicial machinery and

subverts the integrity of the court itself."[217]

---

[214]      *See* Fed. R. Civ. P. 11(a),(b) ("Every . . . written motion, and other paper must be
signed by . . . a party personally if the party is unrepresented. . . .  By presenting to the court a . . .
written motion, or other paper . . . an . . . unrepresented party certifies that to the best of the
person's knowledge, information, and belief, formed after an inquiry reasonable under the
circumstances . . . it is not being presented for any improper purpose . . . [and] the factual
contentions have evidentiary support . . . .").

[215]      *Dotson v. Bravo*, 321 F.3d 663, 668, n.4 (7th Cir. 2003) [citation omitted].

[216]      *Zocaras v. Castro*, 465 F.3d 479, 484 (11th Cir. 2006) (dismissing plaintiff's action
as sanction for lying about his true name, observing, "A trial is not a masquerade party nor is it a
game of judicial hide-n-seek where the plaintiff may offer the defendant the added challenge of
uncovering his real name.  We sometimes speak of litigation as a search for the truth, but the
parties ought not have to search for each other's true identity.").

[217]      *Prince v. Delaware County Bar Ass'n*, 92-CV-1942, 1993 WL 141711, at *2
(E.D. Pa. May 3, 1993) (dismissing *pro se* plaintiff's civil rights action as sanction because
"Plaintiff in the case at bar has filed this suit using a false name.  This court finds that this
conduct is the type that constitutes fraud on the court because it clearly tampers with the judicial
machinery and subverts the integrity of the court itself."); *see also Dotson* , 321 F.3d at 668
(dismissing plaintiff's action as sanction for lying about his true name, observing, "Filing a case
under a false name, deliberately, and without sufficient justification, certainly qualifies as
flagrant contempt for the judicial process and amounts to behavior that transcends the interests of
the parties in the underlying action.") [citations omitted];

There is simply no excuse for knowingly making such sworn and material misrepresentations to the Court (especially considering that Plaintiff was, when he made the misrepresentations, a certified paralegal with at least some litigation experience).[218]  District Judges from this Court have repeatedly indicated a willingness to sanction *pro se* litigants for making such misrepresentations.[219]  Certainly, numerous other federal courts have so sanctioned *pro se* litigants.[220]

---

[218]    *See*, *supra*, notes 6 and 7 of this Report-Recommendation.

[219]    *See, e.g., Crum v. Dodrill*, 06-CV-0586, 2008 WL 2357074, at *10 (N.D.N.Y. June 4, 2008) (Hurd, J., adopting, on *de novo* review, Report-Recommendation premised on alternative ground that the plaintiff should be sanctioned for making a material misrepresentation to the Court in his complaint); *McCloud v. Tureglio*, 07-CV-0650, 2008 WL 1772305, at *16 (N.D.N.Y. Apr. 15, 2008) (Mordue, C.J., adopting, on plain-error review, Report-Recommendation premised on alternative ground that the plaintiff should be sanctioned for making a material misrepresentation to the Court in his complaint); *Johnson v. Connolly*, 07-CV-0158, 2008 WL 724167, at *12 (N.D.N.Y. March 17, 2008) (Kahn, J., adopting, on *de novo* review, Report-Recommendation premised on alternative ground that the plaintiff should be sanctioned for making a material misrepresentation to the Court in his complaint); *Standley v. Dennison*, 05-CV-1033, 2007 WL 2406909, at *13-14 (N.D.N.Y. Aug. 21, 2007) (Sharpe, J., adopting, on *de novo* review, Report-Recommendation premised on alternative ground that the plaintiff should be sanctioned for making a material misrepresentation to the Court in his complaint); *Muniz v. Goord*, 04-CV-0479, 2007 WL 2027912, at *6 & n.32 (N.D.N.Y. July 11, 2007) (McAvoy, J., adopting, on plain-error review, Report-Recommendation premised on alternative ground that the plaintiff should be sanctioned for making a material misrepresentation to the Court in his complaint) [collecting cases].

[220]    *See*, *supra*, notes 216 and 217 of this Report-Recommendation; *see also, e.g., Greer v. Schriro,* No. 06-15537, 2007 WL 4163413, at *1 (9th Cir. Nov. 26, 2007) (affirming district court dismissal that was based on this ground); *Mathis v. Smith*, No. 05-13124, 181 Fed. App'x 808, 809-10 (11th Cir. May 17, 2006) (affirming district court dismissal that was based partially on this ground); *Hudson v. Fuller,* No. 02-1396, 59 Fed. App'x 855, 856-57 (7th Cir. Feb. 25, 2003) (affirming district court dismissal that was based on this ground); *Albright v. Holden,* , 99 F.3d 1145, 1145 (9th Cir. 1996) (affirming district court dismissal that was based on this ground); *see also Hood v. Tompkins*, No. 05-16358, 197 Fed. App'x 818, 819 (11th Cir. Aug. 7, 2006) (affirming district court dismissal on this ground); *accord, Dinkins v. Smalley*, 07-CV-0043, 2008 WL 160699, at *3 & n.3 (S.D. Ga. Jan. 14, 2008) (adopting, on *de novo* review, magistrate judge's recommendation that plaintiff's complaint should be dismissed on this ground)

I have carefully considered all less drastic sanctions (such as admonishing Plaintiff or fining Plaintiff) and found them to be inadequate and inappropriate remedies to curb this particular litigation abuse, given the circumstances of this case.

For these reasons, I deny Plaintiff's three cross-motions on the alternative ground that he should be sanctioned for knowingly making material misrepresentations to the Court. In addition, I recommend that the Court dismiss all of the claims whose dismissal I recommend above on the alternative ground that Plaintiff should be sanctioned for knowingly making material misrepresentations to the Court.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 39) be **GRANTED in part and DENIED in part** as set forth above at the end of Parts III.A., III.B. III.C., III.D. III.E., III.F., III.G.1. III.G.2., III.G.3., III.G.4., III.H., III.I., III.J., III.K., and III.L. of this Report-Recommendation; and it is further

**RECOMMENDED** that the Court deny any request by Plaintiff to supplement the record on appeal from this Report-Recommendation; and it is further

**RECOMMENDED** that Plaintiff's cross-motion for summary judgment (Dkt. No. 42) be **DENIED**; and it is further

**ORDERED** that Plaintiff's cross-motion for an Order compelling discovery (Dkt. No. 42) is **DENIED**; and it is further

---

[citing cases].

115

**ORDERED** that Plaintiff's cross-motion for leave to file an Amended Complaint (Dkt. No. 42) is **DENIED**.

**ANY OBJECTIONS to this Report-Recommendation must be filed with the Clerk of this Court within TEN (10) WORKING DAYS, PLUS THREE (3) CALENDAR DAYS from the date of this Report-Recommendation (unless the third calendar day is a legal holiday, in which case add a fourth calendar day).** *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); N.D.N.Y. L.R. 72.1(c); Fed. R. Civ. P. 6(a)(2), (d).

**BE ADVISED that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material that could have been, but were not, presented to the Magistrate Judge in the first instance.**[221]

**BE ALSO ADVISED that the failure to file timely objections to this Report-Recommendation will PRECLUDE LATER APPELLATE REVIEW of any Order of judgment that will be entered.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of H.H.S.*, 892 F.2d 15 [2d Cir. 1989]).

Dated: September 19, 2008
      Syracuse, New York

George H. Lowe
United States Magistrate Judge

---

[221]    *See*, *supra*, note 204 of this Report-Recommendation (citing cases).