UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ANTHONY CUSAMANO,

                             Plaintiff,

                                                        9:06-CV-0623
v.                                                      (GTS/GHL)

MR. SOBEK, Correctional Officer, *et al.*,

                             Defendants.

_____

APPEARANCES:                                 OF COUNSEL:

ANTHONY CUSAMANO
   Plaintiff, *Pro Se*
520 Gates Avenue, Apt. #B6
Brooklyn, NY 11216

HON. ANDREW M. CUOMO                          JAMES SEAMAN, ESQ.
Attorney General for the State of New York    Assistant Attorney General
   Counsel for Defendants
The Capitol
New York, NY 12224

GLENN T. SUDDABY, United States District Judge

<u>**MEMORANDUM-DECISION and ORDER**</u>

        Plaintiff filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, against thirteen

(13) employees of the New York State Department of Corrections ("DOCS"), alleging that they

violated his rights under the First, Eighth and Fourteenth Amendments of the United States

Constitution as well as his rights under Article 1, Section 6 of the New York Constitution.  (Dkt.

No. 1 [Plf.'s Compl.].)  Currently pending before the Court are (1) Defendants' motion for

summary judgment pursuant to Fed. R. Civ. P. 56, (2) Plaintiff's cross-motion for summary

judgment, (3) Plaintiff's cross-motion for an Order to stay decision on Defendants' motion, and to

compel discovery, and (4) Plaintiff's cross-motion for leave to amend his Complaint.  (Dkt. Nos. 39, 42.)

On September 19, 2008, United States Magistrate Judge George H. Lowe filed a Report-Recommendation recommending that Defendants' motion for summary judgment be granted in part and denied in part, and that Plaintiff's three cross-motions be denied.  (Dkt. No. 47.)  On October 3, 2008, Plaintiff filed Objections to that Report-Recommendation.  (Dkt. No. 49.)  For the reasons set forth below, Magistrate Judge Lowe's Report-Recommendation is accepted as modified by the withdrawal of certain of Plaintiff's claims and his introduction of new evidence on appeal.

## I.       STANDARD OF REVIEW

When specific objections to a magistrate judge's Report-Recommendation are made, the Court makes a "de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  *See* 28 U.S.C. § 636(b)(1)(C).[1] When only general objections are made, the Court reviews for clear error or manifest injustice. *See Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *2-3 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) [collecting cases], *aff'd without opinion*, 175 F.3d 1007 (2d Cir. 1999).  Similarly, when a

---

[1]       On *de novo* review, a district court will ordinarily refuse to consider arguments, case law and/or evidentiary material that could have been, but was not, presented to the Magistrate Judge in the first instance. *See, e.g., Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137-38 (2d Cir. 1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters*, 894 F.2d 36, 40, n.3 (2d Cir. 1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate").

party makes no objection to a portion of a Report-Recommendation, the Court reviews that portion for clear error or manifest injustice.  *See Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) [citations omitted]; Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition [citations omitted].  After conducting the appropriate review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).

## II.    LEGAL STANDARD ON MOTION FOR SUMMARY JUDGMENT

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  In addition, "[the moving party] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate the absence of any genuine issue of material fact."  *Celotex v. Catrett*, 477 U.S. 317, 323 (1986).  However, when the moving party has met this initial responsibility, the nonmoving party must come forward with "specific facts showing a genuine issue [of material fact] for trial."  Fed. R. Civ. P. 56(e)(2).

A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.  As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact."  *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted]; *see*

*also* Fed. R. Civ. P. 56(e)(2).  As the Supreme Court has famously explained, "[The nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts" [citations omitted].  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law."  *Anderson*, 477 U.S. at 248.  "Factual disputes that are irrelevant or unnecessary will not be counted."  *Id.* [citation omitted].

Implied in the above-stated burden-shifting standard is the fact that, where a nonmoving party fails to adequately respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute–even if that nonmoving party is proceeding *pro se*.[2]  (This is because the Court extends special solicitude to the *pro se* litigant in part by ensuring that he or she has received notice of the consequences of failing to properly respond to the motion for summary judgment.)[3]  As has often been recognized

---

[2]     *Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470 (2d Cir. 2002) [citations omitted]; *accord*, *Lee v. Alfonso*, No. 04-1921, 2004 U.S. App. LEXIS 21432 (2d Cir. Oct. 14, 2004), *aff'g*, 97-CV-1741, 2004 U.S. Dist. LEXIS 20746, at *12-13 (N.D.N.Y. Feb. 10, 2004) (Scullin, J.) (granting motion for summary judgment); *Fox v. Amtrak*, 04-CV-1144, 2006 U.S. Dist. LEXIS 9147, at *1-4 (N.D.N.Y. Feb. 16, 2006) (McAvoy, J.) (granting motion for summary judgment); *Govan v. Campbell*, 289 F. Supp.2d 289, 295 (N.D.N.Y. 2003) (Sharpe, M.J.) (granting motion for summary judgment); *Prestopnik v. Whelan*, 253 F. Supp.2d 369, 371-372 (N.D.N.Y. 2003) (Hurd, J.).

[3]     *Krug v. County of Rennselaer*, 04-CV-0640, 2006 WL 2669122, at *3 (N.D.N.Y. Sept. 18, 2006) (McAvoy, J.) ("When dealing with a *pro se* party, certain procedural rules apply so as to insure that the *pro se* litigant in not disadvantaged by the lack of legal training.  In this regard, the Local Rules require that [a *pro se* party be informed of the consequences of failing to respond to a motion for summary judgment, before those consequences may be imposed].");  *see also Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996) ("This Court has also held that summary judgment should not be entered by default against a *pro se* plaintiff who has not been given any notice that failure to respond will be deemed a default.") [citations omitted];  *see also*

by both the Supreme Court and Second Circuit, even *pro se* litigants must obey a district court's procedural rules.[4]  For this reason, this Court has often enforced Local Rule 7.1(a)(3) by deeming facts set forth in a moving party's statement to have been admitted where the nonmoving party has failed to properly respond to that statement[5]–even where the nonmoving

---

Jessica Case, "*Pro Se* Litigants at the Summary Judgment Stage: Is Ignorance of the Law an Excuse?" 90 Ky. L.J. 701, 704, n.24 (Spring 2001) ("The Second, Fourth, Seventh, Tenth, Eleventh, and D.C. Circuit Courts of Appeals mandate that notice of summary judgment requirements be given to *pro se* litigants. . . .  The Ninth Circuit requires notice of summary judgment requirements for pro se prisoner litigants only.") [citations omitted].

[4]     *See McNeil v. U.S.,* 508 U.S. 106, 113 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed . . .  we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *McKaskle v. Wiggins*, 465 U.S. 168, 184 (1984) ("Nor does the Constitution require judges to take over chores for a *pro se* [litigant] that would normally be attended to by trained counsel as a matter of course."); *Mohasco Corp. v. Silver*, 447 U.S. 807, 826 (1980) ("[I]in the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law [even when that strict adherence inures to the detriment of a *pro se* litigant]."); *Faretta v. California*, 422 U.S. 806, 834, n.46 (1975) ("The right of self-representation is not a license . . .  not to comply with relevant rules of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *LoSacco v. City of Middletown*, 71 F.3d 88, 92 (2d Cir. 1995) ("Although *pro se* litigants should be afforded latitude, . . . they generally are required to inform themselves regarding procedural rules and to comply with them . . . .  This is especially true in civil litigation.") [internal quotation marks and citations omitted]; *Edwards v. I.N.S.*, 69 F.3d 5, 8 (2d Cir. 1995) ("[W]hile a *pro se* litigant's pleadings must be construed liberally, . . . *pro se* litigants generally are required to inform themselves regarding procedural rules and to comply with them.") [citations omitted]; *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) ("[T]he right [to benefit from reasonable allowances as a *pro se* litigant] does not exempt [the *pro se*] party from compliance with relevant rules of procedural and substantive law.") [internal quotation marks and citations omitted].

[5]     Among other things, Local Rule 7.1(a)(3) requires that the nonmoving party file a response to the moving party's Statement of Material Facts, which admits or denies each of the moving party's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises.  N.D.N.Y. L. R. 7.1(a)(3).

party was proceeding *pro se* in a civil rights case.[6]

## III.   ANALYSIS OF DEFENDANTS' MOTION

In his lengthy Objections to Magistrate Judge Lowe's Report-Recommendation, Plaintiff

offers specific objections to the majority of Magistrate Judge Lowe's recommendations.

(*Compare* Dkt. No. 47 *with* Dkt. No. 49.)  The only recommendations to which Plaintiff does not

object are as follows: (1) the recommendation that Plaintiff's excessive-force claim against

Defendant McAdam not be dismissed at this time; (2) the recommendation that Plaintiff's failure-

to-protect claim against Defendant Snyder not be dismissed at this time; (3) the recommendation

that Plaintiff's claim under Article 1, Section 6 of the New York State Constitution be dismissed;

and (4) the recommendation that Plaintiff's access-to-courts claims against Defendants Emrich

and Don be dismissed.  (Dkt. No. 47, at 23-24, 40, 95-99.)  As a result, the Court reviews these

last four recommendations for clear error, and it reviews the remaining recommendations *de*

*novo*.  After applying the relevant standard of review, and conducting a careful review of all of

---

[6]       *See*, *e.g.*, *Hassig v. N.Y.S. Dep't of Environmental Conservation*, 01-CV-0284, Decision and Order, at 7 (N.D.N.Y. filed March 4, 2004) (McAvoy, J.), *aff'd*, No. 04-1773, 2005 WL 290210 (2d Cir. Feb. 2, 2005); *Lee*, 2004 U.S. Dist. LEXIS 20746, at *12-13, 15, *aff'd*, No. 04-1921, 2004 U.S. App. LEXIS 21432; *Harvey v. Morabito,* 99-CV-1913, 2003 WL 21402561, at *1, 3-4 (N.D.N.Y. June 17, 2003) (Sharpe, M.J.), *adopted by* 99-CV-1913, Order, at 2-3 (N.D.N.Y. filed Jan. 15, 2004) (Munson, J.), *aff'd*, No. 04-1008, 115 F. App'x 521 (2d Cir. Dec. 23, 2004); *Krug*, 2006 WL 2669122, at *2-3; *Fox*, 2006 U.S. Dist. LEXIS 9147, at *2-3; *Singleton v. Caron*, 03-CV-0455, 2005 WL 2179402, at *3-4 (N.D.N.Y. Sept. 5, 2005) (Peebles, M.J.), *adopted by* 03-CV-0455*, 2006 WL 2023000, at *3 (N.D.N.Y. July 18, 2006) (Sharpe, J.); *Govan*, 289 F. Supp.2d at 295; *Butler v. Weissman*, 00-CV-1240, 2002 WL 31309347, at *3 (N.D.N.Y. June 20, 2002) (Sharpe, M.J.), *adopted by* 00-CV-1240, Decision and Order, at 1-2 (N.D.N.Y. filed July 22, 2002) (Kahn, J.); *DeMar v. Car-Freshner Corp.*, 49 F. Supp.2d 84, 86 & n.1 (N.D.N.Y. 1999) (McAvoy, C.J.); *Costello v. Norton*, 96-CV-1634, 1998 WL 743710, at *1, n.2 (N.D.N.Y. Oct. 21, 1998) (McAvoy, C.J.); *Squair v. O'Brien & Gere Eng'rs, Inc*., 96-CV-1812, 1998 WL 566773, at *1, n.2 (N.D.N.Y. Aug. 21, 1998) (Scullin, J.); *see also Monahan v. N.Y. City Dep't of Corr.*, 214 F.3d 275, 292 (2d Cir. 2000) (discussing, in *pro se* civil rights case, district courts' discretion to adopt local rules like 7.1[a][3] "to carry out the conduct of its business").

the papers in this action (including Magistrate Judge Lowe's Report-Recommendation and

Plaintiff's Objections),[7] the Court adopts Magistrate Judge Lowe's Report-Recommendation as

modified by Plaintiff's withdrawal of certain of his claims and his introduction of new evidence

in his objections.  More specifically, the Court issues the following 21 rulings.

**Excessive Force Claims**

1.       Plaintiff's excessive-force claim against Defendant Cushman is *not* dismissed.

Although Plaintiff admits that he did not hear or see Defendant Cushman as he was actually

being frisked or subjected to the use of force,[8] the Court finds that there is a genuine issue of

material fact as to whether or not Defendant Cushman was present during and/or participated in

the (alleged) assault.[9]  This is largely because, in his Objections, Plaintiff adequately brings to

---

[7]       Familiarity with the facts and background of this matter as set forth in Magistrate Judge Lowe's Report-Recommendation is assumed, and thus shall not be repeated in this Memorandum-Decision and Order.  Only those facts necessary to the discussion are set forth.

[8]       (*See* Dkt. No. 39, Part 44, ¶ 28 [Defs.' Stmt of Material Facts]; Dkt. No. 39, Part 4, at 31, 35 [Ex. A to Seaman Affid., attaching pages 119-20 and 137 of Plf.'s Depo. Trans.]; Dkt. No. 39, Part 12, at 4, 5, 9 [Ex. 8 to Seaman Affid., attaching Disciplinary Hearing Trans.]; Dkt. No. 1, ¶ 6, Attached Page 7 [Plf.'s Verified Compl.].)

[9]       It is worth noting that "[a]n officer's failure to intervene during another officer's use of excessive force can itself constitute excessive force." *Lorenzo v. Moore*, 06-CV-2717, 2008 WL 314570, at *4 (D.N.J. Jan. 30, 2008); *see also Jeffreys v. Rossi*, 275 F. Supp.2d 463, 474 (S.D.N.Y. 2003); *Garza v. United States Marshals Service*, 07-CV-052, 2008 WL 501292, at *3 (S.D.Tex. Feb. 21, 2008); *Parker v. Fogg*, 85-CV-0177, 1994 WL 49696, at *8 (N.D.N.Y. Feb. 17, 1994) (McCurn, J.) (extending such a rule to corrections officers).  This is because "[a] corrections officer bears an affirmative duty to intercede on behalf of an inmate when the officer witnesses other officers maliciously beating that inmate in violation of the inmate's Eighth Amendment rights." *Jones v. Huff*, 789 F. Supp. 526, 535 (N.D.N.Y. 1992) (Munson, J.) [citations omitted; *see also Morris v. New York City Dept. of Corr.*, 94-CV-2534, 1996 WL 331103, at *3 (S.D.N.Y. June 17, 1996) ("[A]ll law enforcement officers have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence") [internal quotation marks and citation omitted].  However, an officer is excused from liability, despite his presence, if the assault is "sudden and brief," such that there is no real opportunity to prevent it.  *Brown v. Mravintz*, 04-CV-30J, 2006

7

the Court's attention the portion of his deposition transcript in which he testified that, *after* the use of force was complete, he turned around and saw that "all of the officers" were present in the room. (Dkt. No. 49, at 13.)

As an initial matter, the manner in which Plaintiff presented the citation to this evidence to Magistrate Judge Lowe was to bury it in a 40-page, 139-paragraph, single-spaced, handwritten document that attempted to serve as the following four things at the same time: (1) a *partial* Rule 7.1 Response (and counter-statement of facts);[10] (2) a Rule 7.1 Statement of Material Facts (in support of Plaintiff's cross-motion for summary judgment); (3) a declaration; and (4) a document containing legal arguments (including *ad hominem* attacks on defense counsel). (*See* Dkt. No. 42, Part 1.) Such a document is in blatant violation of numerous local rules that function to separate argument from factual assertions, and factual assertions from factual denials, and factual

---

WL 3717417, at *6 (W.D.Pa. Dec. 14, 2006); *see also Jeffreys*, 275 F. Supp.2d at 474; *Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997); *Fogg*, 1994 WL 49696, at *8.

[10]     It should be noted that Plaintiff's Rule 7.1 Response is partial because Plaintiff *intentionally* did not respond to the majority of the factual assertions contained in Defendants' Rule 7.1 Statement because he felt that those factual assertions "were very similar to the facts which [Plaintiff] presented in [his] initial complaint [in this action] and/or [his] disciplinary hearing testimonies and/or [his] deposition testimony . . . ." (Dkt. No. 49, at 1-2.) More specifically, Plaintiff felt that it would have been "ridiculous" to require him to admit or deny his own factual assertions, especially in paragraphs that mirrored Defendants' paragraphs. (*Id*. at 9.) As a result, he attempted to respond to only "fourteen (14) factual details" asserted throughout Defendants' Rule 7.1 Statement. (Dkt. No. 42, Part 1, at 33 [attaching Paragraph 96 of Plf.'s Rule 7.1 Response]; *see also* Dkt. No. 49, at 8, 10.) However, his attempted response to these "fourteen . . . factual details" possessed the following characteristics: (1) it did not mirror the paragraphs of Defendants' Rule 7.1 Statement setting forth the "fourteen . . . factual details" in question; (2) it did not expressly admit or deny each and every factual assertion contained in the aforementioned paragraphs of Defendants' Rule 7.1 Statement; (3) it did not support each and every factual assertion (contained in the attempted response) with a record citation; and (4) rather, it addressed various of Defendants' factual assertions in a topical, and often rambling, manner. (*See generally* Dkt. No. 42, Part 1.)

denials from record evidence (in order to enable the Court to fairly and efficiently decide the

motion for summary judgment before it).[11]  Plaintiff had adequate notice of Local Rule 7.1

before he violated it.[12]  In addition, Plaintiff clearly understood the consequences of failing to

properly oppose Defendants' motion because he applied for (and was granted) an extension of

time by which to file his response to Defendants' motion for summary judgment.  (Dkt. No. 40.)[13]

Under the circumstances, Magistrate Judge Lowe did not abuse his discretion in refusing

to excuse Plaintiff's rule violations given (1) the prior notice that Plaintiff had received about the

---

[11]      *See*, *e.g.*, N.D.N.Y. L.R. 7.1(a)(3) ("The opposing party shall file a response to the Statement of Material Facts.  The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs.  Each denial shall set forth a specific citation to the record where the factual issue arises.  The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute in separately numbered paragraphs."); N.D.N.Y. L.R. 7.1(a)(2) ("An affidavit must not contain legal arguments . . . ."); N.D.N.Y. L.R. 7.1(a)(1) ("No party shall file or serve a memorandum of law that exceeds twenty-five (25) pages in length . . . ."); *see also Zimmerman v. Burge*, 06-CV-0176, 2008 WL 850677, at *14, n.64 (N.D.N.Y. March 28, 2008) (Sharpe, J., adopting Report-Recommendation of Lowe, M.J., recommending that plaintiff's motion for partial summary judgment be denied) ("Plaintiff's attachment of a (self-serving) affirmation at the end of his Rule 7.1 Statement, pursuant to 28 U.S.C. § 1746, is not sufficient to transform the factual assertions therein into factual assertions supported by record citations, as required by Local Rule 7.1.") [citation omitted].

[12]      (Dkt. No. 39, Part 1, at 1-2 [Defs.' Notice of Motion, describing consequences of failing to properly respond to summary judgment motion]; Dkt. No. 39, Part 2 [Local Rule 56.2 Notification of Consequences of Failing to Respond to Summary Judgment Motion].)  *See also* N.D.N.Y. L.R. 7.1(a)(3). U.S. District Court for the Northern District of New York, *Pro Se* Handbook, at 16, 41, http://www.nynd.uscourts.gov/documents/ProSeHandbook2008.pdf.  To assist *pro se* litigants, the Clerk of the Court for the Northern District of New York has provided to all correctional facilities in New York State, including Plaintiff's correctional facility at the time in question, copies of the Northern District's Local Rules of Practice and the Northern District's *Pro Se* Handbook.

[13]      In addition, it is worth noting that Plaintiff was permitted to file two supplemental responses to his initial response.  (Dkt. Nos. 41, 42, 44.)

consequences of failing to properly oppose Defendants' motion for summary judgment, (2) the

extension of time that Plaintiff received to file his response to Defendants' motion for summary

judgment, (3) Plaintiff's prior experience informally helping other inmates with their legal work

since 2001, and formally helping other inmates with their legal work as a clerk in multiple prison

law libraries,[14] (4) Plaintiff's prior experience as a *pro se* litigant in federal court (which he

acquired while using one or more of four aliases),[15] (5) the volume of the record evidence that

Magistrate Judge Lowe would have had to sift through, and the opportunity to reply that he

would have had to afford Defendants, had he chosen to overlook Plaintiff's failure,[16] and (6) the

delay that would have resulted to the proceedings of other *pro se* civil rights litigants with cases

pending on the Court's docket.[17]   As a result, Plaintiff's Rule 7.1 Response was, and is, properly

---

[14]      (Dkt. No. 1, ¶ 6, Attached Page 2 [Plf.'s Verified Compl.]; Dkt. No. 39, Part 4, at 11-12 [Ex. A to Seaman Affid., attaching pages 40-43, 45 of Plf.'s Depo. Trans.].)  It is worth noting that Plaintiff has had formal legal training as a paralegal assistant, and has informally studied the law since 2001.  (Dkt. No. 49, at 3-4 [Plf.'s Obj.].)

[15]      *See*, *e.g.*, *Armatullo v. Vasquez*, 03-CV-8189 (S.D.N.Y.) (prisoner civil rights action); *Armatullo v. Taylor*, 04-CV-5357 (S.D.N.Y.) (habeas corpus proceeding); *Armatullo v. Taylor*, 04-CV-0654 (N.D.N.Y.) (habeas corpus proceeding); *Armatullo v. Taylor*, 04-CV-7821 (S.D.N.Y.) (habeas corpus proceeding); *Cusamano v. Donelli*, 06-CV-6047 (S.D.N.Y.) (habeas corpus proceeding).

[16]      A review of the docket indicates that the record on Defendants' motion for summary judgment consisted of approximately 322 pages.  (Dkt. No. 1 [Plf.'s Verified Compl., totaling 27 pages]; Dkt. No. 39, Parts 3-43 [Affidavits and Exhibits in support of Defs.' Motion, totaling approximately 240 pages]; Dkt. No. 41 [Plf.'s Response, totaling 4 pages]; Dkt. No. 42 [Plf.'s Suppl. Response, totaling approximately 49 pages]; Dkt. No. 43 [Plf.'s Second Suppl. Response, totaling 2 pages].)

[17]      *See Hassig v. N.Y.S. Dep't of Environmental Conservation*, 01-CV-0284, Decision and Order, at 7 (N.D.N.Y. filed March 4, 2004) (McAvoy, J.) (granting defendants' motions for summary judgment, in large part because plaintiffs effectively "admitted" defendants' factual assertions in their Rule 7.1 Statement by submitting a Rule 7.1 Response that "does not mirror either defendants' Statements of Facts in form or substance; does not specifically deny or admit most of the allegations contained in the defendants' Statements of Facts; contains no citations to

disregarded by the Court.

However, the Court need not excuse the myriad deficiencies in Plaintiff's 7.1 Response in order to conclude that a genuine issue of material fact exists as to whether or not Defendant Cushman was present during and/or participated in the (alleged) assault.  This is because, in his Objections, Plaintiff brings squarely before the Court a citation to the portion of his deposition transcript in which he testified that, *after* the use of force was complete, he turned around and saw that "all of the officers" were present in the room.  (Dkt. No. 49, at 13.)  While the Court is not inclined to consider evidentiary material that was not adequately presented to a magistrate judge in the first instance, the Court will not turn a blind eye to such evidentiary material.  This is especially true when that material is consistent with other evidentiary material that the Court has come across in its review of this matter, such as the following: (1) the fact that Defendant Cushman escorted Plaintiff to the "frisk room";[18] (2) Plaintiff's statement, during his disciplinary hearing, that "Officer Cushman [was present in the room as Plaintiff was going into the room]";[19] (3) Plaintiff's sworn allegation that Defendant Cushman "'witnessed'" and "perpetrated" the (alleged) assault;[20] and (4) Plaintiff's testimony, in his deposition, that "[n]o, I cannot identify by

---

the record on many points . . . .; and[] consists largely of supposition, hyperbole, legal conclusions, and broad conclusory allegations"), *aff'd*, No. 04-1773, 2005 WL 290210 (2d Cir. Feb. 2, 2005); *see also*, *supra*, notes 2 and 6 of this Memorandum-Decision and Order [collecting other cases].

[18]    (Dkt. No. 39, Part 44, ¶ 24 [Defs.' Stmt of Material Facts]; *see also* Dkt. No. 1, ¶ 6, Attached Page 4 [Plf.s' Verified Compl.].)

[19]    (Dkt. No. 39, Part 12, at 4, 6 [Ex. 8 to Seaman Affid., attaching Disciplinary Hearing Trans.].)

[20]    (Dkt. No. 1, ¶ 6, Attached Pages 10 and 12 [Plf.s' Verified Compl.] [internal quotation marks in original].)

11

name anyone else in [the] frisk room as [I] entered [except Defendant McAdam].  Now, mind

you, one of the officers I identified as having been in the room and participating in this was

Officer Cushman, but he escorted me. . . . [At the end of the alleged assault] all of the officers

and Sergeant Snyder [were] still present."[21]

Simply stated, the Court concludes that there is a genuine issue of material fact as to

whether or not Defendant Cushman was present during and/or participated in the (alleged)

assault, due to Plaintiff's citation (in his Objections to Magistrate Judge Lowe's Report-

Recommendation) to what is effectively "new" record evidence, which the Court considers under

the special circumstances of this case.[22]

2.      Plaintiff's excessive-force claim against Defendant McAdam is *not* dismissed, for

the reasons stated by Magistrate Judge Lowe in Part III.A. of his Report-Recommendation.

(Dkt. No. 47, at 34-38, 40.)

**Failure-to-Protect Claims**

3.      Plaintiff's failure-to-protect claim against Defendant Cushman is deemed

withdrawn under Fed. R. Civ. P. 41(a)(2), given Plaintiff's representation, in his Objections, that

he never intended to assert that claim in his Complaint.  (Dkt. No. 49, at 6, 13-14.)  The Court

will add only that it in no way faults Magistrate Judge Lowe for reading this claim into Plaintiff's

Complaint, since this liberal construction was performed in an express attempt to extend Plaintiff

special solicitude as a *pro se* civil rights litigant.  (Dkt. No. 47, at 5-6, & n.8.)

---

[21]      (Dkt. No. 39, Part 4, at 29, 36 [Ex. A to Seaman Affid., attaching pages 110, 118-120, and 139 of Plf.'s Depo. Trans.].)

[22]      Plaintiff is on notice that, in the future, the Court will not be so generous in reviewing evidence that he should have made the Court aware of in the first place.

4.     Plaintiff's failure-to-protect claim against Defendant Sobek is also deemed withdrawn under Fed. R. Civ. P. 41(a)(2), given Plaintiff's representation that he never intended to assert that claim in his Complaint.  (Dkt. No. 49, at 6, 13-14.)  Again, the Court will add only that it in no way faults Magistrate Judge Lowe for reading this claim into Plaintiff's Complaint out of special solicitude.

5.     Plaintiff's failure-to-protect claim against Defendant Snyder is *not* dismissed, for the reasons stated by Magistrate Judge Lowe in Part III.A. of his Report-Recommendation. (Dkt. No. 47, at 34-38, 40-41, & n.103.)

6.     Plaintiff's failure-to-protect claim against Defendant McAdam is also deemed withdrawn under Fed. R. Civ. P. 41(a)(2), given Plaintiff's representation that he never intended to assert that claim in his Complaint.  (Dkt. No. 49, at 6, 13-14.)  Again, the Court in no way faults Magistrate Judge Lowe for reading this claim into Plaintiff's Complaint out of special solicitude.

**Conspiracy Claims**

7.     Plaintiff's Section 1983 conspiracy claims against Defendants Sobek, Snyder, Cushman, and McAdam are dismissed under Fed. R. Civ. P. 56 for failure to adduce record evidence establishing either (1) a meeting of the minds between any of these Defendants to act in concert to inflict a constitutional injury on Plaintiff, or (2) the commission of any overt act in furtherance of that goal.  The Court reaches this conclusion for the reasons stated by Magistrate Judge Lowe in Part III.B. of his Report-Recommendation.  (Dkt. No. 47, at 42-43.)

Plaintiff's Objections, which cite four different statements that "plausibly hint at a conspiracy to assault," are without merit.  (Dkt. No. 49, at 16-17.)  As an initial matter, again, the manner in which Plaintiff presented citations to this evidence to Magistrate Judge Lowe was to

bury them in a  a 40-page, 139-paragraph, single-spaced, handwritten document that attempted to

serve as the following four things at the same time: (1) a *partial* Rule 7.1 Response (and counter-

statement of facts); (2) a Rule 7.1 Statement of Material Facts (in support of Plaintiff's cross-

motion for summary judgment); (3) a declaration; and (4) a document containing legal

arguments (including *ad hominem* attacks on defense counsel).  (Dkt. No. 42, Part 1.)  Such a

document is in flagrant violation of numerous local rules.  As a result, the document in question

was, and is, properly disregarded by the Court.  In any event, evidence of a series of expressions

of a common dislike of a plaintiff by a handful of individuals is different from evidence of a

conspiratorial agreement between those individual.[23]

       Also without merit is Plaintiff's argument that Defendant Sobek "initiated the conspiracy

to assault via a phone conversation with Sgt. Snyder."  (Dkt. No. 49, at 14-18.)  This argument

by  Plaintiff ignores the following undisputed facts: (1) it was Defendant McAdam who initiated

the telephone call; (2) even assuming Defendant Sobek received the call, no record

evidence–only speculation–exists that, during the conversation that ensued, Defendant Sobek (a

correctional officer), through Officer McAdam, instructed Defendant Snyder (a correctional

sergeant and thus Sobek's superior officer) to assault Plaintiff;[24] and (3) even if Defendant Sobek

---

       [23]       *See, e.g., Franzon v. Massena Mem'l Hosp.*, 89 F. Supp.2d 270, 275
(N.D.N.Y. 2000) (McAvoy, C.J.) (noting that "while there is clear evidence of dislike between
[Defendant] and Plaintiff, that evidence alone does not necessarily rise to the level necessary to
support a finding of a conspiracy between [Defendant] and the other Defendants.") [citation
omitted]; *see also Golden Bridge Technology, Inc. v. Motorola, Inc.*, 07-CV-40954, 2008 WL
4661807, at *4 (5th Cir. Oct. 23, 2008) (stating that "common dislike is not the same as an
explicit understanding to conspire. . . .").

       [24]       In order to withstand a summary judgment motion, "plaintiff must submit
evidentiary proof in admissible form establishing an agreement between [Defendants]."  *Dawes
v. Kelly*, 01-CV-6276, 2005 WL 2245688, at *6 (W.D.N.Y. Sept. 14, 2005) [citations omitted];
*see also Spear v. Town of West Hartford*, 954 F.2d 63, 68 (2d Cir. 1992); *Salahuddin v. Cuomo*,

did issue such an instruction, no record evidence exists that–after doing so–Defendant Sobek

committed an overt act in furtherance of the conspiracy to assault Plaintiff.  With regard to this

last point, Plaintiff appears to argue that either (1) it was Defendant Sobek's meeting of minds

with Defendant Snyder that itself constituted an overt act, or (2) Defendant Sobek's overt act

somehow preceded the point in time when a meeting of the minds occurred.  However, both

arguments are without merit.[25]

     8.     Plaintiff's Section 1985 conspiracy claims against Defendants Sobek, Snyder,

Cushman, and McAdam are dismissed under Fed. R. Civ. P. 56 for failure to adduce record

evidence establishing either of the two requirements for the formation of a conspiracy, as stated

above in Paragraph 7 of Part III of this Memorandum-Decision of Order, as well as for failure to

adduce record evidence establishing that the underlying motivation for the conspiracy was racial

or other class-based animus.  The Court reaches this conclusion for the reasons stated by

---

861 F.2d 40, 43 (2d Cir. 1988).  This is because the existence of a conspiracy requires more than
mere speculation or conjecture.  *See, e.g.*, *Dawes*, 2005 WL 2245688, at *6.  Thus, speculation
about a conversation between Defendants is not enough to establish a meeting of the minds.  *Id*.
at *7.  "[T]he fact that [Defendants] could have been talking about plaintiff[] and deciding how
to [handle him] is insufficient to establish a conspiracy."  *Id*.

     [25]     In the alternative, the Court finds that Plaintiff's Section 1983 conspiracy claims
are barred by the intra-corporate conspiracy doctrine, for the five reasons articulated by
Magistrate Judge Lowe in Part III.B. of his Report-Recommendation.  (Dkt. No. 46, at 44-45.)
Plaintiff argues that the assault (allegedly) perpetrated upon him was committed in pursuit of a
personal interest wholly separate and apart from the interests of New York State.  (Dkt. No. 49,
at 19.)  However, the Court finds that charging an inmate with holding up a correctional officer's
count of inmates, and transporting him to a "frisk room" prior to his admission to the facility's
SHU, is *not* an interest wholly separate and apart from the interests of New York State
(specifically, the interest of maintaining order and safety in a medium-security correctional
facility).  Just because the frisk escalated into an (alleged) assault does not mean that the
correctional officers who caused Plaintiff to be transported to the "frisk room" were pursuing
interests separate and apart from the interests of New York State.

Magistrate Judge Lowe in Part III.B. of his Report-Recommendation. (Dkt. No. 47, at 41-43.)

Plaintiff's Objections argue that (1) federal courts have improperly injected a class-based animus

requirement into Section 1985, and (2) in any event, he satisfies that requirement because he

was, during the time of the alleged assault, a felon. (Dkt. No. 49, at 18-19.) Both arguments are

patently without merit.[26]

In the alternative, the Court finds that Plaintiff's Section 1985 conspiracy claims are

barred by the intra-corporate conspiracy doctrine, for the five reasons articulated by Magistrate

Judge Lowe in Part III.B. of his Report-Recommendation. (Dkt. No. 46, at 44-45.)

**False-Misbehavior-Report Claims**

9. Plaintiff's false-misbehavior-report claim against Defendant Sobek is *sua sponte*

dismissed under Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b), for

failure to allege facts plausibly suggesting that, even assuming the misbehavior report filed

against Plaintiff was indeed false, the filing of that report somehow rose to the level of a

constitutional violation. The Court reaches this conclusion for the reasons stated by Magistrate

Judge Lowe in Parts III.D. and III.F. of his Report-Recommendation. (Dkt. No. 47, at 46-49, 56-

58.) The Court notes that granting Plaintiff leave to amend this claim would not be appropriate

---

[26] For example, incarcerated felons are not a class protected by 42 U.S.C. § 1985. *Ellibee v. Hazlett*, 122 F. App'x 932, 935 (10th Cir. 2004) ("Ellibee has asserted that the alleged conspiracy was motivated by his membership in a class consisting of 'incarcerated felons.' This is not a class protected by § 1985. Accordingly, Ellibee's federal conspiracy claim fails."); *Curtis v. Barber*, 833 F.2 1011, at *1 (6th Cir. 1987) ("Furthermore, the plaintiff's conspiracy claim [under 42 U.S.C. § 1985] fails because convicted felons do not constitute a recognized class for the purpose of this action . . . ."); *see also Farese v. Scherer*, 342 F.3d 1223, 1229, n.7 (11th Cir. 2003) ("Farese alleges that he states a claim against the Defendants under § 1985(3) because he is a member of the 'prisoner class.' . . . [W]e conclude that the district court properly dismissed Farese's § 1985(3) claim because prisoners are neither a class offered special protection under the equal protection clause nor a class that Congress intended to protect when it enacted § 1985(3).").

because the problem with this claim is substantive such that better pleading would not cure it.[27]

Plaintiff's Objections argue that (1) record evidence exists that Defendant Sobek issued the misbehavior report with "a retaliatory motive," and (2) the Court is essentially estopped from dismissing this claim under 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b), because it reviewed and accepted his Complaint on August 25, 2006, when it considered whether to grant Plaintiff's *in forma pauperis* application.  (Dkt. No. 49, at 23.)

Plaintiff's first argument lacks merit.  A review of record evidence (which is attached to, or incorporated by reference into, a complaint) is not permitted during a Fed. R. Civ. P. 12(b)(6) analysis.  A plaintiff may or may not, during discovery, adduce evidence in support of a claim, but that claim is not properly before the court if the defendant was not, through a liberal construction of the plaintiff's complaint, given fair notice of that claim and the grounds on which it rests (so as to fairly permit the defendant to shape a comprehensive defense to that claim, and to enable the court to render a proper decision on the merits of that claim).  In any event, the record evidence to which Plaintiff cites does not establish that he was engaging in any speech or activity protected by the First Amendment when Defendant Sobek took adverse action against him by issuing him the (allegedly) false misbehavior report.  (Dkt. No. 49, at 23.)[28]  Nor does the record evidence to which Plaintiff cites establish that Defendant Sobek took the adverse action against him *because* of any protected activity.  (*Id.*)

---

[27]    *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (finding that repleading would be futile) [citation omitted]; *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) [citation omitted].

[28]    Rather, Plaintiff asserts that he was "merely wrigg[ing] [his] fingers, i.e., wordlessly imitating someone shaking fearfully."  (Dkt. No. 42, Part 1, at ¶ 49.)

Plaintiff's second argument also lacks merit. The Court's Order of August 25, 2006 (granting Plaintiff's motion to proceed *in forma pauperis*), did not contain any sort of ruling that Plaintiff's Complaint was thereafter immune from attack under 28 U.S.C. § 1915(e)(2) and Fed. R. Civ. P. 12(b)(6). (*See* Dkt. No. 6.) Rather, the Order was issued after only an initial "screening" of Plaintiff's Complaint for purposes of 28 U.S.C. § 1915A.[29] In any event, even if the Order had contained such a ruling, the Court possesses the inherent authority to *sua sponte* reconsider its own orders before they become final (absent some rule or statute to the contrary).[30]

---

[29]     *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 109, n.11 (3d Cir. 2002) ("Section 1915A is applicable at the initial stage of the litigation, while § 1915(e)(2) is applicable throughout the entire litigation process. . . . Thus, the PLRA sets up a two-step dismissal process by which dismissal can occur early for the facially inadequate complaints pursuant to the screening statute or can occur later by either of the remaining provisions should it become apparent that the case satisfies one of these sections.") [internal quotation marks and citation omitted]; *see*, *e.g.*, *Rash v. Charles Town Races*, 08-CV-0054, 2008 WL 4889329, at *1-2 (N.D. W. Va. Nov. 12, 2008) (*sua sponte* dismissing plaintiff's complaint under 28 U.S.C. § 1915(e)(2) even though complaint had previously been accepted for filing under 28 U.S.C. § 1915A). Some courts find it appropriate to expressly explain that a court's initial review, and acceptance, of a complaint during the "screening" process conducted pursuant to 28 U.S.C. § 1915A does not preclude a later dismissal of that complaint under Fed. R. Civ. P. 12(b)(6); however, this rule applies in *pro se* prisoner civil rights cases regardless of whether a court recites it. *See*, *e.g.*, *Morales v. County of Westchester*, 97-CV-0498, 1997 WL 32985, at *2 (S.D.N.Y. Jan. 23, 1997) ("Nothing herein shall preclude these defendants from making any . . . motion to dismiss the complaint as may be appropriate."). It is worth noting that at least one court has found that the court's denial of a defendant's motion to dismiss under Fed. R. Civ. P. 12(b)(6) does not even preclude a later dismissal under 28 U.S.C. § 1915(e)(2)(B). *See Athans v. Starbucks Co.*, 06-CV-1841, 2007 WL 1673833, at *1 (D. Ariz. June 11, 2007) ("The Court's previous ruling [deciding not to dismiss the plaintiff's claims under Fed. R. Civ. P. 12(b)(6)] does not preclude a finding under § 1915 that this action is frivolous."); *see also Athans v. Starbucks Co.*, 06-CV-1841, Order, at 5-7 (D. Ariz. filed March 23, 2007) (denying, in part, defendant's motion to dismiss under Fed. R. Civ. P. 12[b][6]).

[30]     *See United States v. Martin*, 226 F.3d 1042, 1049 (9th Cir. 2000) ("[B]ecause the district court's order granting Martin's § 2255 motion was not final, the district court had inherent jurisdiction to modify, alter, or revoke it. . . . The authority of district courts to reconsider their own orders before they become final, absent some applicable rule or statute to the contrary, allows them to correct not only simple mistakes, but also decisions based on shifting precedent, rather than waiting for the time-consuming, costly process of appeal.") [citations omitted];

10.     Plaintiff's false-misbehavior-report claim against Defendant McAdam is dismissed under Fed. R. Civ. P. 56 for failure to adduce record evidence establishing that, even assuming the misbehavior report filed against Plaintiff was indeed false (despite the fact that it was never reversed on appeal), the filing of that report somehow rose to the level of a constitutional violation.  The Court reaches this conclusion for the reasons stated by Magistrate Judge Lowe in Part III.D. of his Report-Recommendation.  (Dkt. No. 47, at 46-49.)  Plaintiff's Objections, which merely address whether or not Defendant McAdam's misbehavior report was *false*, have no merit.  (Dkt. No. 49, at 20-23.)[31]  As explained by Magistrate Judge Lowe, a false misbehavior report requires something more (such as retaliation for having exercised a constitutional right) to constitute a violation of the United States Constitution.  (Dkt. No. 47, at 47-48.)  In any event, again, the manner in which Plaintiff presented citations to this evidence to Magistrate Judge Lowe was to bury them in a 40-page, 139-Paragraph, single-spaced,

---

*Qualcomm Inc. v. Broadcom Corp.*, 05-CV-1958, 2008 WL 2705161, at *1 (S.D. Cal. July 7, 2008) ("[T]he Court will exercise its inherent authority to reconsider its own orders before they become final . . . .") [citation omitted]; *F.T.C. v. QT, Inc.*, 249 F.R.D. 305, 312 (N.D. Ill. 2008) ("This Court has the inherent power to reconsider rulings until a final judgment is entered.") [internal quotation marks and citation omitted]; *R.M.S. Titanic, Inc. v. Wrecked and Abandoned Vessel*, 924 F. Supp. 714, 716 (E.D.Va.1996) (stating the court has the power "to reconsider its prior Order either *sua sponte* under Rule 60(b) of the Federal Rules of Civil Procedure or under its inherent power to modify and interpret its original order").

[31]     For example, Plaintiff argues that, if a question of fact exists as to whether or not Defendant McAdam used excessive force against Plaintiff, then it must be true, as a matter of logic, that a question of fact exists as to whether or not Defendant McAdam's subsequent misbehavior report against Plaintiff arising from the incident was false.  (Dkt. No. 49, at 21.) Plaintiff's argument fails to recognize the very real fact that whatever transpired between him and Defendant McAdam in the "frisk room" on January 6, 2005, could have involved both the possible use of excessive force by Defendant McAdam and the commission of a disciplinary offense by Plaintiff.  In any event, this issue is immaterial given that even the intentional filing of a false misbehavior report against an inmate, without more, does not violate of the United States Constitution.

handwritten document that violated Local Rule 7.1, and thus was, and is, properly disregarded by the Court.

**Retaliation Claims**

11.     Plaintiff's retaliation claim against Defendant Emrich, based on his issuance of a false misbehavior report, is dismissed under Fed. R. Civ. P. 56 for failure to adduce record evidence establishing a casual connection between the protected speech in which Plaintiff was engaged (the filing of a grievance) and the adverse action (the issuance of the misbehavior report).  The Court reaches this conclusion for the reasons stated by Magistrate Judge Lowe in Part III.E. of his Report-Recommendation.  (Dkt. No. 47, at 52-56.)

Plaintiff's Objections, which purport to cite record evidence establishing the retaliatory motive of Defendant Emrich, are without merit.  (Dkt. No. 49, at 21-23.)  As an initial matter, again, the manner in which Plaintiff presented citations to this evidence to Magistrate Judge Lowe was to bury them in a document that violated Local Rule 7.1, and thus was, and is, properly disregarded by the Court.  In any event, the evidence to which Plaintiff cites does not, in fact, establish a casual connection between the protected speech in which Plaintiff was engaged and the adverse action that he experienced (assuming, for the sake of brevity, that the issuance of the misbehavior report constituted such "adverse action").  Rather, the record rather clearly establishes that the misbehavior report was issued because caulk was missing from Plaintiff's cell.

12.     Plaintiff's retaliation claim against Defendant Sobek (based on his issuance of a misbehavior report) is *sua sponte* dismissed under Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b), for failure to allege facts plausibly suggesting that either (1) Plaintiff was engaging in activity protected by the First Amendment when (as a "library clerk")

he helped other inmates with their legal work *in his housing unit* at Gouverneur C.F., or (2) that it was that legal assistance and not Plaintiff's own misbehavior that caused him to receive the referenced misbehavior report.  The Court reaches this conclusion for the reasons stated by Magistrate Judge Lowe in Part III.F. of his Report-Recommendation.  (Dkt. No. 47, at 56-58.) The Court notes that granting Plaintiff leave to amend this claim would not be appropriate because the problem with this claim is substantive such that better pleading would not cure it. Plaintiff's Objections, which purport to cite record evidence establishing the retaliatory motive of Defendant Sobek, are without merit, for the same reasons as discussed above in the preceding paragraph of this Memorandum-Decision and Order.  (Dkt. No. 49, at-23.)

**Procedural Due Process Claims**

13.     Plaintiff's two procedural due process claims against Defendant Don are dismissed under Fed. R. Civ. P. 56 for failure to adduce record evidence establishing that either (1) he enjoyed (during his disciplinary hearings on January 11, 2005, and January 26, 2005) a liberty interest protected by the Fourteenth Amendment, or (2) even assuming he enjoyed such a liberty interest, he was (at those hearings) denied any of the process to which he was due under the Fourteenth Amendment.  In the alternative, this claim is dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6).[32]  The Court reaches these conclusions for the reasons stated by

---

[32]     It is important to note that, to the extent that a defendant's motion for summary judgment under Fed. R. Civ. P. 56 is based on the pleading insufficiency of the plaintiff's claims, such a motion is functionally the same as a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  *Schwartz v. Compagnise General Transatlantique*, 405 F.2d 270, 273-74 (2d Cir. 1968); *accord, Katz v. Molic*, 128 F.R.D. 35, 37-38 (S.D.N.Y. 1989).  For the sake of brevity, the Court does not recite the legal standard governing dismissals for failure to state a claim under Fed. R. Civ. P. 12(b)(6), but refers the parties to Part II.B. of Magistrate Judge Lowe's Report-Recommendation for an accurate recitation of that legal standard.  (Dkt. No. 47, at 23-32.)

Magistrate Judge Lowe in Parts III.G.1. and III.G.3. of his Report-Recommendation.  (Dkt. No. 47, at 58-61, 71-73.)

Plaintiff's Objections, which argue that he (in his Rule 7.1 Response) cited record evidence of Defendant Don's bias, are without merit.  (Dkt. No. 49, at 23-24.)  As an initial matter, again, the manner in which Plaintiff presented citations to this evidence to Magistrate Judge Lowe was to bury them in a document that violated Local Rule 7.1, and thus was, and is, properly disregarded by the Court.  In any event, the evidence to which Plaintiff cites does not, in fact, establish that Defendant Don deprived Plaintiff of any of the process to which he was due under the Fourteenth Amendment.  Nor does that evidence establish (more importantly) that Plaintiff even enjoyed a protected liberty interest in his hearing, given the brevity of the disciplinary sentence that resulted from the hearing.

14.     Plaintiff's procedural due process claim against Defendant Williams is also dismissed under Fed. R. Civ. P. 56 for failure to adduce record evidence establishing that either (1) he enjoyed (during his disciplinary hearing) a liberty interest protected by the Fourteenth Amendment, or (2) even assuming he enjoyed such a liberty interest, he was denied any of the process to which he was due under the Fourteenth Amendment.  In the alternative, this claim is dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  The Court reaches these conclusions for the reasons stated by Magistrate Judge Lowe in Part III.G.2. of his Report-Recommendation.  (Dkt. No. 47, at 62-71.)  Plaintiff's Objections are without merit.  (Dkt. No. 49, at 24-26.)  In addition to relying on record citations that were buried in a document that violated Local Rule 7.1, Plaintiff's Objections fail to refute the fact that he did not enjoy a protected liberty interest in the hearing, given the disciplinary sentence (if any) imposed as a result of the hearing.

22

**Claims Under New York Constitution**

15.     Plaintiff's claims against Defendants Williams and Don under Article 1, Section 6 of the New York State Constitution are dismissed under Fed. R. Civ. P. 12(b)(1) and 12(h)(3) because the Court declines to exercise supplemental jurisdiction over that pendent state law claim.  The Court reaches this conclusion for the reasons stated by Magistrate Judge Lowe in Part III.G.4. of his Report-Recommendation.  (Dkt. No. 47, at 73-74.)  The Court notes that Plaintiff failed to object to this recommendation.  (*See generally* Dkt. No. 49.)  The Court adds, however, that this recommendation of dismissal would survive even a *de novo* review.

**Inadequate-Prison-Conditions Claim**

16.     Plaintiff's inadequate-prison-conditions claim against Defendant Sheridan is dismissed under Fed. R. Civ. P. 56 for failure to adduce record evidence establishing that the conditions of his confinement resulted in deprivation that was sufficiently serious under the Eighth Amendment.[33]  In the alternative, this claim is dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  The Court reaches these conclusions for the reasons stated by Magistrate Judge Lowe in Part III.H. of his Report-Recommendation.  (Dkt. No. 47, at 74-78.) Plaintiff's Objections, which address only one of the several reasons Magistrate Judge Lowe recommended dismissal of this claim, are without merit.  (Dkt. No. 49, at 26-27.)

**Harassment Claim**

17.     Plaintiff's harassment claim against Defendants McAdams, Emrich and Sheridan is dismissed under Fed. R. Civ. P. 56 for failure to adduce record evidence establishing that the

---

[33]     The Court notes that, contrary to Plaintiff's implication that an "Inadequate-Prison Conditions-Claim" is a mischaracterization of his claim (Dkt. No. 49, at 26), a claim for deprivation of basic supplies falls within the scope of an Eighth Amendment claim, and specifically, an inadequate-prison-conditions claim.

conduct in question was sufficiently serious under the Eighth Amendment.  In the alternative, this claim is dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  The Court reaches these conclusions for the reasons stated by Magistrate Judge Lowe in Part III.I. of his Report-Recommendation.  (Dkt. No. 47, at 79-85.)  Plaintiff's Objections argue (for the first time) that the physical injury that accompanied the alleged verbal harassment occurred the day *before* the verbal harassment began.  (Dkt. No. 49, at 27-28.)  For the sake of brevity, the Court will not linger on the fact that, in his Complaint, Plaintiff alleged that the verbal harassment began on January 8, 2005, two days (not one day) after the occurrence of the alleged assault on January 6, 2005.[34]  The larger, more obvious problem with this argument is that it depends on a suspension of the laws of time: verbal harassment in the future cannot cause a physical assault in the past.  Plaintiff's argument has no merit.

### Inadequate-Medical-Care Claim

18.   Plaintiff's inadequate-medical-care claim against Defendant Kasulke is dismissed under Fed. R. Civ. P. 56 for failure to adduce record evidence establishing that Defendant Kasulke acted with a sufficiently culpable mental state (for purposes of the Eighth Amendment) with regard to any serious medical need Plaintiff may have possessed.[35]  The Court reaches this conclusion for the reasons stated by Magistrate Judge Lowe in Part III.J. of his Report-Recommendation.  (Dkt. No. 47, at 88-91.)  Plaintiff's Objections assert several arguments, including (1) an argument that, if the Court were to conduct a true *de novo* review of this Report-

---

[34]   (Dkt. No. 1, ¶ 7, "Fifth Cause of Action" [Plf.'s Compl.]; Dkt. No. 1, ¶ 6, Attached Pages 8-13 [Plf.'s Compl.].)

[35]   Generally, for a prisoner to prevail on a claim of inadequate medical care, he must demonstrate both that he had a sufficiently serious medical need and that the defendant was deliberately indifferent to that serious medical need.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

Recommendation, the Court would have to look beyond the deficiencies in his Rule 7.1 Response, and (2) an argument that Defendant Kasulke's Declaration was not sworn.  (Dkt. No. 49, at 28-31.)  Plaintiff's arguments have no merit.

A *de novo* review of a magistrate judge's report-recommendation does not require a district judge to excuse a *pro se* non-movant's Rule 7.1 Response that admittedly (1) does not *mirror* the movant's Statement of Facts, (2) does not admit or deny *each* of the movant's factual assertions, and (3) does not support *every* denial with a specific citation to the record where the factual issue (allegedly) arises.[36]  Moreover, Defendant Kasulke's Declaration contains a sufficient verification for purposes of 28 U.S.C. § 1746.  (Dkt. No. 39, Part 42, at 1.)  Finally, Plaintiff's arguments ignore Magistrate Judge Lowe's alternative finding that, even if Defendant Kasulke had received notice of Plaintiff's complaints, his subsequent actions would not establish that he possessed the sort of mental state (which is akin to criminal recklessness) required to be held liable under the Eighth Amendment.[37]

---

[36]  Among other things, such a rule would (1) contravene the meaning of *de novo* review, (2) eviscerate the authority conferred upon district courts to adopt and enforce local rules like Local Rule 7.1, (3) shoulder district courts with the docket-clogging task of arduously sifting through every paper placed before it by a *pro se* party when opposing a motion for summary judgment, in search for evidence of a question of fact, and (4) fly in the face of numerous Supreme Court and Second Circuit cases stating that *pro se* status does not exempt a part from complying with a court's well-justified procedural rules.

[37]  In addition to relying on the cases cited by Magistrate Judge Lowe in Part III.I. of his Report-Recommendation, the Court relies on *Nunez v. Hasty*, 04-CV-1282, 2006 WL 2589254, at *10 (E.D.N.Y. Sept. 8, 2006) ("The question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment.  At most it is medical malpractice.") [internal quotation marks and citation omitted], and *Fulmore v. Mamis*, 00-CV-2831, 2001 WL 417119, at *9, & n.26 (S.D.N.Y. Apr. 23, 2001) ("Mere disagreement in treatment does not amount to an Eighth Amendment violation.") [collecting cases].

**Access-to-Courts Claims**

19.     Plaintiff's access-to-courts claim against Defendant Cornelius is dismissed under Fed. R. Civ. P. 56 for failure to adduce record evidence establishing that either (1) Defendant Cornelius acted intentionally or recklessly in losing Plaintiff's legal materials, or (2) any such intentional or reckless loss materially prejudiced any legal action Plaintiff sought to pursue.  In the alternative, this claim is dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6). The Court reaches these conclusions for the reasons stated by Magistrate Judge Lowe in Part III.K. of his Report-Recommendation.  (Dkt. No. 47, at 91-95.)  Plaintiff's Objections argue that (1) evidence of Defendant Cornelius' culpable intent may be found from "[a] quick perusal of [Plaintiff's] factual claim set forth within [his] . . . Complaint," and (2) evidence that Plaintiff was materially prejudiced by the loss is found from the fact that the loss of the materials in question "necessarily prevent[ed] or inhibit[ed] [Plaintiff] from being able to litigate any further challenge(s) to it."  (Dkt. No. 49, at 31.)  Plaintiff's arguments lack merit.

For the sake of brevity, the Court will set aside the issue of whether Plaintiff (in his Rule 7.1 Response) properly submitted this evidence to Magistrate Judge Lowe.  In any event, even a careful review of Plaintiff's Verified Complaint fails to evidence that Defendant Cornelius acted intentionally or recklessly in losing Plaintiff's legal materials.  (Dkt. No. 1, ¶ 6, Attached Pages 16-17 [Plf.'s Compl.].)  Indeed, to the contrary, Plaintiff's Verified Complaint asserts that, when Defendant Cornelius decided to place Plaintiff's state-issued clothing in a third "draft bag" rather than place Plaintiff's remaining legal materials in that bag, he said that "he would place the rest of [Plaintiff's] legal papers in another bag once he returned to the property room."  (*Id*. at 17.) With regard to Plaintiff's "evidence" that he was materially prejudiced as a result of the loss of legal materials, Plaintiff's Objections contain no citation to any such evidence in the record.

(Dkt. No. 49, at 31.)  As explained by Magistrate Judge Lowe, Defendants met their burden of

showing the prejudice Plaintiff alleges is merely speculative in nature, and Plaintiff failed to

meet his resulting burden of showing otherwise.  (Dkt. No. 47, at 94.)

        20.     Plaintiff's access-to-courts claims against Defendants Emrich and Don are *sua*

*sponte* dismissed under Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b),

for failure to state a claim upon which relief might be granted.  Specifically, the Court agrees

with Magistrate Judge Lowe that, even liberally construed, Plaintiff's Complaint has failed to

allege facts plausibly suggesting that (1) either of those two Defendants filed a false misbehavior

report against Plaintiff with the *knowledge* that the sentence of disciplinary confinement that

Plaintiff would experience following his conviction on that misbehavior report would interfere

with his right to access the courts under the First Amendment, and/or (2) the restriction to merely

three legal materials per day, which Plaintiff experienced while in the Gouverneur C.F. S.H.U.,

*prejudiced* Plaintiff in any legal action attacking his criminal conviction or challenging the

conditions of his confinement.  (Dkt. No. 47, at 95-96, 99.)  The Court notes that Plaintiff failed

to object to this recommendation.  (*See generally* Dkt. No. 49.)  The Court adds, however, that

this recommendation would survive even a *de novo* review.  Finally, the Court notes that

granting Plaintiff leave to amend this claim would not be appropriate because the problem with

this claim is substantive such that a better pleading would not cure it.

## Claims Against John Doe Defendants

        21.     Plaintiff's claims against the Defendants designated as John Doe #1, John Doe #

2, and John Doe # 3 are dismissed without prejudice for failure to timely name and serve those

three Defendants under Fed. R. Civ. P. 41(b) and Fed. R. Civ. P. 4(m).  The Court reaches this

conclusion for the reasons stated by Magistrate Judge Lowe in Parts III.L. and IV.C. of his

Report-Recommendation.  (Dkt. No. 47, at 96-99, 106-111.)  Plaintiff's Objections argue that (1) he could not have served the John Doe Defendants because he did not know who they were, and (2) he could not know who they were because he "was denied an extension of the original discovery deadline."  (Dkt. No. 49, at 31-32.)  Plaintiff's Objections are without merit.

As an initial matter, Plaintiff's argument is factually inaccurate.  Plaintiff filed this action on May 22, 2006.  (Dkt. No. 1.)  On January 23, 2007, Magistrate Judge Lowe set the original deadline in the action as July 30, 2007.  (Dkt. No. 21.)  On April 24, 2007, Plaintiff requested an extension of the discovery deadline until September 10, 2007.  (Dkt. No. 23, at 1.)  On May 8, 2007, Magistrate Judge Lowe granted an extension of the discovery deadline until August 30, 2007.  (*Id.*)  On July 3, 2007, he extended the deadline until August 31, 2007.  (Dkt. No. 30, at 3.)  On November 23, 2007, Plaintiff requested that the Court reopen the discovery period–which had expired nearly three months before.  (Dkt. No. 37, at 1-2.)  On December 7, 2007, Magistrate Judge Lowe denied that request.  (*Id.* at 1.)  In any event, Plaintiff's argument fails to acknowledge that he had than seven months during which to learn the names and addresses of the three John Doe Defendants through discovery on the named Defendants (and he has had more than two-and-a-half-years during which to learn the names and address of the three John Doe Defendants through independent means).  Magistrate Judge Lowe properly applied Fed. R. Civ. P. 41(b) and Fed. R. Civ. P. 4(m) to the facts of Plaintiff's case.[38]

---

[38]         In addition to relying on the authorities cited by Magistrate Judge Lowe, the Court relies on the following cases: *Waldo v. Goord*, 97-CV-1385, 1998 WL 713809, at *5 (N.D.N.Y. Oct. 1, 1998) (Kahn, J.) (dismissing a claim under Fed. R. Civ. 4[m] where *pro se* plaintiff failed to serve John Doe defendants during the year that elapsed between filing of complaint and issuance of order of dismissal by court); *Thomas v. Keane*, 99-CV-4302, 2001 WL 410095, at * 1, 5 (S.D.N.Y. April 23, 2001) (dismissing claim under Fed. R. Civ. 4[m] where *pro se* plaintiff failed to serve John Doe defendants  during the year that elapsed between filing of complaint and issuance of order of dismissal by court).

**Alternative Grounds for Dismissal**

Because the Court has found adequate grounds on which to adopt Magistrate Judge Lowe's Report-Recommendation, the Court need not, and does not, address the merits of Defendants' alternative argument that Plaintiff's claims of harassment, due process violations, and inadequate medical care should be dismissed because Defendants are protected by the doctrine of qualified immunity.  (Dkt. No. 39, Part 45, at 21-23 [Defs. Memo. of Law].)

Similarly, because the Court has found adequate grounds on which to adopt Magistrate Judge Lowe's Report-Recommendation, the Court need not address the merits of Magistrate Judge Lowe's recommendation that the majority of Plaintiff's claims should be dismissed (and his three cross-motions denied) on the alternative ground that he should be sanctioned for knowingly making material misrepresentations to the Court.  (Dkt. No. 47, at 111-14.)  As a result, the Court does not address that alternative recommendation except to make two observations.

First, the Court has carefully considered–and rejected–Plaintiff's explanation for (1) making a sworn misrepresentation, in Paragraph 5 of his Verified Complaint, regarding his prior federal and state court actions relating to his imprisonment, and (2) making a sworn misrepresentation, on pages 1 and 27 of his Verified Complaint, that his legal name was "Anthony Cusamano."  (Dkt. No. 49, at 4, 35-37.)

Second, Plaintiff's submissions to this Court (at least as they relate to Defendants' motion for summary judgment) have been peppered with abusive language.  For example, even a cursory review of Plaintiff's papers in opposition to Defendants' motion for summary judgment reveal dozens of *ad hominem* attacks on Assistant Attorney General James J. Seaman (an officer of this Court), including the use of the words "pestering," "petty," "puerile," "ego[tisical],"

"vapid," "ethically challenged," "equivocal," "deceitful," and "brazenly lying."  (Dkt. No. 42, Part 3, at 5-6, 8; Dkt. No. 42, Part 1, at 5-7, 9, 12, 32.)  Plaintiff's Objections are similarly peppered with *ad hominem* attacks against the Honorable George H. Lowe, including the use of the words, "maudlin," "inane," "contrived," "phony," "Paleolithic," "hysterical," "blatant lie," "deceitful," "palpable bias," "corrupt," "court[]jester," and "buffoon[]."  (Dkt. No. 49, at 5, 7, 16, 22, 26, 29, 31, 33-37.)

While the Court is certainly sympathetic with the stress and frustrations that accompany the litigation process, the Court reminds Plaintiff that such language in submissions to the Court is *never* tolerable–by either counsel or *pro se* litigants.[39]  Although the Court does not see a need at this time to sanction Plaintiff for his abusive conduct, the Court cautions Plaintiff that he will be sanctioned without further warning for any such future abusiveness in submissions to the Court, including the striking of any submission containing such abusive language and/or the imposition of a monetary penalty against him.[40]

## IV.   ANALYSIS OF PLAINTIFF'S CROSS-MOTIONS

The Court liberally construes Plaintiff's Objections as containing specific objections to (1) Magistrate Judge Lowe's recommendation that the Court deny his cross-motion for summary judgment, and (2) Magistrate Judge Lowe's Order denying his cross-motion to compel discovery.

---

[39]     In addition to being prohibited by various procedural rules, such language violates the New York State Bar Association's guidelines on civility in litigation, which the Northern District of New York has adopted.  (General Order 25, at 1.)  The Guidelines (which are available on the Northern District's website) apply to "all participants in the litigation process, including . . . lay persons."  *Civility in Litigation: A Voluntary Commitment* (N.Y.S. Bar Ass'n).

[40]     The Court notes that, although Plaintiff is proceeding *in forma pauperis* in this action, he is deemed to be able to afford such a penalty since he has been released from prison, is living in an apartment in Brooklyn, and is studying at John Jay College of Criminal Justice. (Dkt. No. 49, at 3.)

(*See* Dkt. No. 49, at 2, 20, 31-34, 37 [Plf.'s Obj., arguing that Magistrate Judge Lowe should have entered summary judgment in Plaintiff's favor out of special solicitude to him, and that Magistrate Judge Lowe wrongfully denied Plaintiff's request to reopen discovery on November 23, 2007].)  However, the Court does not liberally construe Plaintiff's Objections as containing a specific objection to Magistrate Judge Lowe's Order denying his cross-motion for leave to amend his Complaint.  (*See generally* Dkt. No. 49.)

Reviewing *de novo* those parts of Magistrate Judge's Lowe's Report-Recommendation that addresses Plaintiff's cross-motion for summary judgment and his cross-motion to compel discovery, and reviewing for clear error the part of Magistrate Judge Lowe's Report-Recommendation that addresses Plaintiff's cross-motion for leave to amend his Complaint, the Court can find no error (clear or otherwise) in any of those parts of the Report-Recommendation.[41]  The Court reaches these conclusions for the reasons stated by Magistrate Judge Lowe in Parts IV.A., IV.B. and IV.C. of his Report-Recommendation.  (Dkt. No. 47, at 102-111.)

As a result, the Court adopts and affirms Magistrate Judge's Lowe's Report-Recommendation insofar as it addresses Plaintiff's three cross-motions.

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Lowe's Report-Recommendation (Dkt. No. 47) is **ADOPTED** as modified by Plaintiff's withdrawal of certain claims and his introduction of new evidence in his objections; and it is further

---

[41]     The Court notes that the part of Magistrate Judge Lowe's Report-Recommendation that addresses Plaintiff's cross-motion for leave to amend his Complaint would survive even a *de novo* review.

31

**ORDERED** that Defendants' Motion for Summary Judgment (Dkt. No. 39) is

**GRANTED** in part, and **DENIED** in part, in the following respects:

1.    Plaintiff's excessive-force claim against Defendant Cushman is **not dismissed**;

2.    Plaintiff's excessive-force claim against Defendant McAdam is **not dismissed**;

3.    Plaintiff's failure-to-protect claim against Defendant Cushman is voluntarily **dismissed** without prejudice under Fed. R. Civ. P. 41(a)(2);

4.    Plaintiff's failure-to-protect claim against Defendant Sobek is voluntarily **dismissed** without prejudice under Fed. R. Civ. P. 41(a)(2);

5.    Plaintiff's failure-to-protect claim against Defendant Snyder is **not dismissed**;

6.    Plaintiff's failure-to-protect claim against Defendant McAdam is voluntarily **dismissed** without prejudice under Fed. R. Civ. P. 41(a)(2);

7.    Plaintiff's Section 1983 conspiracy claims against Defendants Sobek, Snyder, Cushman, and McAdam are **dismissed** with prejudice under Fed. R. Civ. P. 56;

8.    Plaintiff's Section 1985 conspiracy claims against Defendants Sobek, Snyder, Cushman, and McAdam are **dismissed** with prejudice under Fed. R. Civ. P. 56.

9.    Plaintiff's false-misbehavior-report claim against Defendant Sobek is *sua sponte* **dismissed** without prejudice under Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b);

10.    Plaintiff's false-misbehavior-report claim against Defendant McAdam is **dismissed** with prejudice under Fed. R. Civ. P. 56;

11.    Plaintiff's retaliation claim against Defendant Emrich is **dismissed** with prejudice under Fed. R. Civ. P. 56;

12.     Plaintiff's retaliation claim against Defendant Sobek is *sua sponte* **dismissed** without prejudice under Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b);

13.     Plaintiff's two procedural due process claims against Defendant Don are **dismissed** with prejudice under Fed. R. Civ. P. 56;

14.     Plaintiff's procedural due process claim against Defendant Williams is **dismissed** with prejudice under Fed. R. Civ. P. 56;

15.     Plaintiff's claims against Defendants Williams and Don under Article 1, Section 6 of the New York State Constitution are **dismissed** without prejudice under Fed. R. Civ. P. 12(b)(1) and 12(h)(3);

16.     Plaintiff's inadequate-prison-conditions claim against Defendant Sheridan is **dismissed** with prejudice under Fed. R. Civ. P. 56;

17.     Plaintiff's harassment claim against Defendants McAdams, Emrich and Sheridan is **dismissed** with prejudice under Fed. R. Civ. P. 56;

18      Plaintiff's inadequate-medical-care claim against Defendant Kasulke is **dismissed** with prejudice under Fed. R. Civ. P. 56;

19.     Plaintiff's access-to-courts claim against Defendant Cornelius is **dismissed** under with prejudice Fed. R. Civ. P. 56;

20.     Plaintiff's access-to-courts claims against Defendants Emrich and Don are *sua sponte* **dismissed** without prejudice under Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b); and

21.     Plaintiff's claims against the Defendants designated as John Doe #1, John Doe #2, and John Doe # 3 are **dismissed** without prejudice under Fed. R. Civ. P. 41(b) and Fed. R. Civ.

P. 4(m); and it is further

ORDERED that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED** except for (1) his

claims against Defendants Cushman and McAdam alleging excessive force, and (2) his claim

against Defendant Snyder alleging failure to protect, which shall be **SET DOWN FOR TRIAL**;

and it is further

ORDERED that Plaintiff's Cross-Motion for Summary Judgment (Dkt. No. 42) is

**DENIED**; and it is further

ORDERED that Magistrate Judge Lowe's Order denying Plaintiff's Cross-Motion to

Compel Discovery and his Cross-Motion to File an Amended Complaint (Dkt. No. 42) are

**AFFIRMED**; and it is further

ORDERED that the Clerk of the Court shall serve a copy of this Order upon all parties.

Dated: January 26, 2009
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge